


RECEIVED

MAR – 9 2018

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

FILED

MAR – 9 2018

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

Appendix A - *Bivens* Complaint form

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

Carmen Johnson

56613-037

*(Enter above the full name of the plaintiff or plaintiffs in this action)*

*(Inmate Reg. # of each Plaintiff)*

v.

CIVIL ACTION NO. 1:18-CV-00416

David Wilson et. al

*(Number to be assigned by Court)*

*(Enter above the full name of the defendant or defendants in this action)*

Defendant(s).

## COMPLAINT

**I.    Parties**

    A.    Name of Plaintiff:    Carmen Johnson

          Inmate No.:    56613-037

          Address:    Glen Ray Road Box A
                    Alderson, WV 24910

B.  Additional Plaintiff(s) (provide the same information for each plaintiff as listed in Item A above).

Name of Plaintiff: _____

Inmate No.: _____

Address: _____

_____

Name of Plaintiff: _____

Inmate No.: _____

Address: _____

C.  Name of Defendant: David Wilson

Position: Warden

Place of Employment: Alderson Federal Prison Camp

_____

D.  Additional Defendant(s) (provide the same information for each defendant as listed in Item C above):

Name of Defendant: Jerrod Grimes

Position: Captain

Place of Employment: Alderson Federal Prison Camp

Name of Defendant: Barbara Rickard

Position: OID Warden

Place of Employmen: Alderson Federal Prison Camp

2

P. 2

TRULINCS  56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

------------------------------------------------------------------------------

*20 Defendants*
*Total*

Additional Defendant(s) (provide the same information for each as listed in Item C above):

Name of Defendant:      Maria Arviza
Position:               Assistant Warden
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      Ms. Wickline          *Don't Know First name or initial*
Position:               Secretary of Warden
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      Walter Ray
Position:               Case Manager
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      C. Ambler
Position:               Correction Guard/Counselor
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      R. Harvey
Position:               Case Manager/Unit Discipline Committee(UDC)
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      S. Trainum
Position:               Case Manager/Unit Discipline Committee(UDC)
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      D. Kelley
Position:               Lieutenant
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      Dorian Dickerson
Position:               Supervisor of Education
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      M. McCabe
Position:               Teacher of Education
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      Heather Spradling
Position:               Teacher of Education
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      Christine Anthony
Position:               Chief Psychologist
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      *Dana Renick*
Position:               Director of HSU
Place of Employment:    Alderson Federal Prison Camp

Name of Defendant:      *Kimberley Bailey*
Position:               Teacher/Lieutenant
Place of Employment:    Alderson Federal Prison Camp

*P. 2b*

TRULINCS  56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: 11111
DATE: 03/06/2018 06:44:37 PM

Name of Defendant:     United States
Position:              Federal Government
Place of Employment:   Washington, DC

Name of Defendant:     Evan Jenkins
Position:              Congressman
Place of Employment:   Congress

Name of Defendant:     J.F. Caraway
Position:              Regional Director
Place of Employment:   BOP-Mid Atlantic Region

Name of Defendant:     Ian Connors
Position:              Administrator
Place of Employment:     National Inmate Appeal

P 20

## II.     Place of Present Confinement

Name of Prison/Institution: Alderson Federal Prison Camp FPC

A.     Is this where the events concerning your complaint took place?

Yes X          No _____

If you answered "no," where did the events occur? _____

_____

B.     Is there a prisoner grievance procedure in this institution?

Yes X          No _____

C.     Did you present the facts relating to your complaint in the prisoner grievance procedure?   Yes X          No _____

If you answered "no," explain why not: Some of my Complaint is Deny Due Process through grievance procedure.

If you answered "yes," what was the result at level one, level two and level three (attach grievances and responses): Every-thing listed in Complaint with exhibits. All and every grievance response was Denied.

## III.    Previous Lawsuits

A.     Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise related to your imprisonments?

Yes _____          No X

B.     If your answer to A is "yes," describe the lawsuit in the space below. If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.

1.     Parties to the previous lawsuit:

Plaintiff(s): _____

Defendant(s): _____

3

P. 28

2.    Court (if federal court, name the district; if state court, name the county);

_____

3.    Docket Number: _____

4.    Name of judge to whom case was assigned: _____

5.    Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)

_____

6.    Approximate date of filing lawsuit: _____

7.    Approximate date of disposition: _____

## IV.    Statement of Claim

State here, as briefly as possible, the <u>facts</u> of your case. Describe what each defendant did to violate your constitutional rights. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets of paper if necessary.)

See attach      ⟶   20 Defendants

_____

_____

_____

_____

_____

_____

_____

_____

_____

4

P. 29

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: page 1
DATE: 03/06/2018 06:08:04 PM

1.)     DEFENDANT DAVID WILSON, is the Warden at Alderson Federal Prison Camp as of January 8, 2017. He is legally responsible for the operations of the prison and the welfare of all the inmates in the prison. The Warden is responsible for ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolutions are made in a orderly and timely manner by both the inmate and staff. The Warden may waive informal resolutions for Unit Discipline Committee (UDC) appeals, or when informal resolutions is deemed inappropriate due to sensitivity of the issues.  He also make decisions on the Second Chance Act and immediate release. January 23, 2017: Plaintiff Johnson waited in line to meet the new Warden of Alderson. Everyone was excited because he stated in visiting he was coming to make changes needed for the Women. Upon the informal meeting, Plaintiff Johnson spoke of (sensitive) matters dealing with HSU, Mental Health Disabilities, the treatment on Suicide Watch, Fraud and assault in the Education Department. Defendant Wilson had a nonbenevolent attitude. Defendant Wilson yelled and accused Plaintiff Johnson of using the suicide room for unintended use, stating suicide watch was for cutters. Defendant Wilson demanded that Plaintiff Johnson show Defendant her scares from cutting.  Plaintiff Johnson stated I am not a cutter but do have mental health and suicide issues.   Plaintiff  Johnson stated she was in the appeal process for her federal case and she was innocent and a professional. Plaintiff tried again to tell the Defendant of the infliction of mental suffering by conduct of the flagrant character and treatment of the staff and guards. Defendant Wilson started yelling at Plaintiff in front of everyone stating you are a criminal say it, say it. Defendant continued to yell in Plaintiffs face, stating you are not a victim of your circumstance."You are a criminal" in front of everyone in the line. Plaintiff Johnson stated "I repudiate your offer, it is not true." Defendant Wilson stated "a Federal Judge and Jury found you guilty on Federal crimes and now you are in my Federal Prison doing Federal time, you was a professional out there but to me, you are a Junkie or a thief in my prison." Defendant Wilson continued with masochistic tones and auto suggestion with verbal insults to Plaintiff Johnson with witnesses looking on. Plaintiff was humiliated and walked away crying. Information Plaintiff Johnson gave to Defendant Wilson, Defendant should have exercised his authority in taking action to investigate and ratify the condition. The Defendant participated directly with deliberate indifference in the alleged constitutional violate by signing off on the Administrative BP-9's denial. Defendant was grossly negligent in supervising subordinates who committed the wrongful act. Defendant knew about the conduct and violations, and helped facilitate it, approve it, condone it or turn a blind eye. Plaintiff was traumatized beyond measures because of the deliberate indifference and excessive denial of providing mental and medical health care, assault, retaliation, investigations of FRAUD in Education Department is an example of this wide spread, long standing embedded practice. Defendant acted maliciously and sadistically with the infliction of cruel and unusual punishment on the Plaintiff. There was evidence of deliberate indifference by repeated failure to make investigation into charges by Plaintiff.

Commit: Defendant Wilson and other staff are currently under investigation for Obstructing Justice with Misappropriation of Government Funds etc. The FED's have been occupying space at Alderson Federal Prison for a few weeks and Warden Saad is acting warden as of March 4, 2018.

Administrative Remedy:
Filed BP-9, BP-10, BP-11
Congressional Emergency Inquiry for Retaliation, Abuse, no mental health treatment and Protection, Misappropriation of Government Funds etc.
2.)     DEFENDANT BARBARA RICKARD, was Warden in 2016 and was legally responsible for all operations of Alderson FPC. May 31, 2016 Plaintiff sent a cop out and affidavit of truth asking for mental health treatment for not feeling well. 2 weeks before Plaintiff went on suicide watch. Defendant disregarded the urgency of Plaintiff's cry for help. Defendant showed deliberate indifferent to Plaintiff by notifying Defendant(s) of mental help needed. By this knowledge, serious risk and failed to act reasonable to get the mental health help Plaintiff requested. Defendants conduct showed reckless or callus indifference to the rights of others and Defendant failed to act to prevent further injuries.

3.)     DEFENDANT MARIE ARVIZA, Assistant Warden at Alderson as of January 2017.  Defendant is responsible legally for the operations and the welfare of the inmates at Alderson. BP-9 was signed and denied for due process by Defendant Arviza in reference to the Fraud, abuse and assault in the Education Department on the Plaintiff. Defendant failed to act and report abuse communicated by the Plaintiff by the BP-9 Administrative Grievance process. This communication was sufficient notice of constitutional violation by the grievance process to alert Defendant of violation of Plaintiff's rights and have an investigation started. It was deliberate indifference when Defendant fail to respond to Plaintiff request for help.

4.)     DEFENDANT WICKLINE, (first name or initial unknown) Secretary of Warden, Administrative Remedy Coordinator and Recipient signer of the BP-9 and contact for BP-10's from Regional Office which is a conflict of interest. Defendant monitor the program operations and notified all staff when BP-9's, BP-10's and BP-11's come on office or entered in system to

P 2a

REQUEST FOR ADMINISTRATIVE REMEDY

#892326-F1



This is in response to your Request for Administrative Remedy, receipted on February 10, 2017, in which you are appealing Incident Report #2940902 conducted on January 20, 2017. Specifically, you are requesting the incident report you received for Code 306, Refusing to Program and Code 307, Refusing to Obey an Order voided from your records and file.

According to your records, on January 20, 2017, you were found guilty by the Unit Discipline Committee (UDC) of Code 306, Refusing to Program and Code 307, Refusing to Obey an Order. Specifically, on January 18, 2017, at 2:00 p.m., you were instructed by the reporting officer to complete an educational assignment during class time. At 3:00 p.m., the work was turned in incomplete with a message that you were not willing to perform the task. The writer indicates that you have stated you are incapable of performing the tasks you are given and that you refuse to try. You admitted during the UDC hearing that you are not completing any educational assignments due to pending litigation of fraud in a West Virginia court.

It is the goal of the Inmate Discipline Program to prevent or deter inmates from violating the Bureau of Prisons prohibited acts. There is no indication your incident report heard by the UDC was improperly administered by the reporting officer; therefore, your incident report will not be removed from your disciplinary record.

Accordingly, based upon the above information, your Request for Administrative Remedy is denied. If you are not satisfied with this reply, you may submit an appeal to the Regional Director, Mid-Atlantic Regional Office, 302 Sentinel Drive, Suite 200, Annapolis Junction, MD 20701 on the appropriate form (BP-10) within 20 calendar days of the date of this response.

David R. Wilson, Warden                              3-3-17
                                                     Date

DETAILS: 2nd week of Jan 2016 Ms. Spradling called me in her office and Mr. McCabe and Lt. Bailey in attendance. They held me hostage under stress, duress and attempted coercion. Mr. McCabe was threatening by blocking the entry door as Ms. Spradling yelled at me about Special Education they enrolled me in. I explain to Ms. Spradling I have mental health issues and need mental health treatment not Special Ed. I asked her to produce the fraud test and paperwork establishing I need Special Ed. I stated we should not be speaking since we are in litigation. Ms. Spradling yelled she did not care and I was going to take a test. I stated I could not aid and abet their fraud and would not submit to testing until I hear from the "JUDGE". Mr. McCabe did not move from the blocked door. The way he was standing and looking I thought he was going to hurt me. I was traumatized. I panicked and reached my arm between his arm and turned the door knob and I ran to Lt. Oaks office. Ms. Spradling was screaming I'm going to take your "good time". I told Lt. Oaks what happen and he called Education. I was shaking, nervous and sweating. He walked me to Dr. Anthony's office and she stated no one was going to hurt me but my options was Suicide watch or R&D. I told her I could not handle either because of the way I was treated on suicide watch June 2016. I called my sister and stated I was afraid and was held hostage by 3 staff.(I still feel traumatized when I see them.) The next day, I introduced myself to Warden Smith and told her everything. Warden Smith was shocked about the fake test scores and held hostage by Education Staff. Warden Smith walked me to Ms. Dickerson and Warden Smith ordered Ms. Dickerson to handle this situation with an update. The next day, I met Ms. Dickerson at Education. Ms. Dickerson apologized for her staff and stated she was removing me from the program. She stated she created a letter but had to locate it and to come back the following Monday to sign. She stated after we signed the letter it would take 3 days for her to remove me from the program and to watch the call-out. Around that same time frame I was called to Lt. Kelley's office. He stated he needed a statement on the hostage situation. As I was telling him what happen he stopped writing. I asked him why did he stop writing? Lt. Kelley stated I thought it was inmates who held you hostage. I met with Ms. Dickerson Nov 7, 2016. She stated she could not remove me from the program until Nov 30, 2016. We went to the Resource Center and Ms. Dickerson asked an inmate worker to create me a sign in/out sheet to use everyday until the end of Nov. 2016. Ms. Dickerson told me I could bring my own book to read. First week of Dec. 2016 I saw Ms. Dickerson and Ms. Wheeler at the Gym. Ms. Dickerson ask "Are you still sitting at the Resource Center?" Ms. Wheeler stated she see me there everyday. Ms. Dickerson asked me to come to her office the middle of Dec 2016. When I arrived she stated I needed 240 hours to sign out the program and she needed test scores from me. I asked her where is the test they say I took that established I need Special Ed? I reminded her she stated October 2016 she was signing me out the program because of the fraud, the hostage situation by her staff and the law suit I filed. I stated I could not take a test because it is listed in a lawsuit for fraudulent test scores by her staff and I was waiting for the Judge's ruling. I backed out her office and stated I was returning to the Resource Center. I left Ms. Dickerson's office discouraged. Jan 18, 2017 Ms. Dickerson came to the Resource Center for the first time since I was assigned there. She laid down a test with a few answers already in faint pencil. She asked the inmate staff to bring her the test when I finished. I wrote in blue ink something to the fact--"I reserve all rights and I do not know the full scope of the contract." I spoke with Ms. Dickerson Jan 23, 2017 how she was suppose to sign me out this program and how I was stressed and traumatized by this ordeal. I stated this is retaliation, discrimination, falsifications, concealment of truth and abuse of power to an inmate with mental health issues. She stated she remembered all that but she looked at me with a stoicism and canonical stare and stated "I follow policy."

**Constitution Amended 1: Freedom of Speech, A person has a right to report to the Government about a government agency with out retaliation. Since I filed the case# 1:16-CV-06206 in West VA Court I have experienced retaliation and discomfort.
**Constitution Amended 8: Unusual punishment. This unusual punishment by and employee and other staff who withheld, concealed information, lied and retaliation have me in a common corridor called the "bus stop". This bus stop has cancer causing hot fluorescent/fluorescence lights on 24 hours a day and I am on the top bunk. This practice was implemented in concentration camps in the 40's by the Germanys. I am a 50 year old woman whom has mental health and sleep disorders issues. This abuse is not human.
**fluorescence: luminescence caused by radiation absorption that cease almost immediately after the radiation has stopped.
**fluorescent lamp: ultraviolet light, material that coats the inner surface of the lamp.

**Based on "POLICY 3420.11 "Standards of Employee Conduct" issued by Office of Government Ethics I know I have been exposed to the following violations:
page 8: Employee may not use physical violence, threats or intimidation toward inmate or use force. No abusive language when in communication w/inmate. Demeaning a inmate.
page 23 item 9: threatening to inflict bodily harm injury to another.
page 23 item 10: Disrespectful conduct use of insulting abusive language to others.
page 25 item 15: Endangering the safety or causing injury to inmate thru carelessness
page 25 item 16: Giving inmate an order that is hazardous to health and safety.
page 26 item 19: mis-appropriation of funds, theft.
page 26 item 20: conversion of Government funds.
page 28 item 25: Physical abuse of an inmate.
page 30 item 33: Failure to report to mgmt violation of contact with inmate.
page 30 item 34: Falsification misstatement or concealment of facts connected with investigation or other proceeding.
page 31 item 35: Refusal to cooperate with US. Gov. inquiry or investigation, attempting to influence others involved.

page 32 item 37: dishonest and disgraceful conduct
page 37 item 56: Failure to report violation of standard of conduct,retaliation,discrimination against one made report.

I am requesting to be removed from this GED/ SPECIAL ED class.
Cashman/Bolo13-037  2-8-17 corrected Date        2-3-17 original Date.        P-32

TRULINCS  56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------------------

Defendant. Defendant responsible for signing and rejection of notices and data entry in the Sentry system. Matter alleged on information belief to be true by other inmates whom been at Alderson for years. Plaintiff believes all BP-9"s and BP-10's stopped with Defendant on the processing of Administration Remedy Grievances most always go with out remedy or consequences for staff or guards. February 6, 2017 Defendant entered the Administrative Remedy information in the Sentry system and rejected the first attempt by Plaintiff looking for remedy. Defendant remarks was for Plaintiff to file separate UDC, GED Program separately in order for the complaint to be accepted. Plaintiff stated this would liquidate the issues because it was all the same issues.  Defendant stated to counselor the BP-9 will be denied all together if it is not prepared the suggested way. The assault, fraud or abuse was not acknowledged by the Defendant. The coordinator should have requested an investigation per the program statement. Matters specific to staff involvement of fraud and abuse may not be investigated by either staff alleged to be involved or by staff under supervisor. Allegations of physical abuse and fraud by staff shall be referred to the Office of Internal Affairs. Where appropriate when OIA or another agency is assuming primary responsibility for investigation of the allegations.  Defendant refused to act by reporting abuse by way of requesting and investigation. Through the grievance process gave sufficient notice to alert an full investigation of the violations of law given by Plaintiff which was sufficient notice of violation of Plaintiff's rights. This was a clear persistent pattern of mishandling of Administrative Grievance for inmates causing deliberate indifference and failure to act was the moving force or direct cause behind Plaintiff's injuries. This demonstrated a custom to show persistent and widespread practice across the board.  This permanent practice is well settled as to constitute a custom of usage, long standing, deeply embedded traditional way to carrying out a course of action deliberately not favorable to the inmates.  Defendant Wickine help facilitate abuse and fraud, approved of it, condoned it, or turned a blind eye, in turn was grossly negligent and deliberately indifferent by violations of Plaintiff's to have the right to due process was ultimately denied.  This dishonest deliberate indifferent act is maliciously and sadistically cruel and unusual punishment.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 6, 2017


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      ALDERSON FPC

TO  : CARMEN JOHNSON, 56613-037
      ALDERSON FPC     UNT: 1    QTR: A01-661U
      GLEN RAY RD. BOX A
      ALDERSON,  WV 24910


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 891092-F1       ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : FEBRUARY 3, 2017
SUBJECT 1      : SECONDARY EDUCATION (GED)
SUBJECT 2      : UDC ACTION
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF THE   DHO REPORT YOU
                 WISH TO APPEAL OR    IDENTIFY THE CHARGES AND DATE
                 OF THE DHO ACTION.

REJECT REASON 2: YOU DID NOT SUBMIT THE CORRECT NO. OF COPIES OF THE
                 ATTACHMENTS (NEW DOCUMENTATION NOT CONSIDERED BY LOWER
                 LEVELS).  2 AT INSTITUTION; 3 AT REGION; AND 4 AT CENTRAL
                 OFFICE.  THE NUMBER CITED INCLUDES YOUR ORIGINAL.

REJECT REASON 3: SEE REMARKS.

REJECT REASON 4: YOU MAY RESUBMIT YOUR REQUEST IN PROPER FORM WITHIN
                 5 DAYS OF THE DATE OF THIS REJECTION NOTICE.

REJECT REASON 5: YOU RAISE MORE THAN ONE ISSUE/RELATED ISSUE OR APPEAL MORE
                 THAN ONE INCIDENT REPORT (INCIDENT NUMBER).   YOU MUST
                 FILE A SEPARATE REQUEST/APPEAL FOR EACH UNRELATED ISSUE
                 OR INCIDENT REPORT YOU WANT ADDRESSED.

REMARKS          FILE SEPARATELY FOR REMOVAL FROM GED PROGRAM AND
                 APPEAL UDC ACTION. INCLUDE COPY OF INCIDENT REPORT
                 WITH UDC ACTION. 5 DAYS TO RESUBMIT.

evaluate

WICKline
EXHIBIT

P·34

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

-----------------------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: 2
DATE: 03/06/2018 06:09:37 PM

5.)      DEFENDANT WALTER RAY, is the Case Manager at Alderson. Defendant deals with inmates in his unit with classifications, programming review and procedures, preparation for parole and release planning. Defendant is the liaison between the inmate, administration and community. Defendant handle all correspondence request, incoming calls and letters per the Alderson's handbook. Defendant hold the power to recommend early release through the Second Chance Act for highway house and home confinement. Defendant sets the tone between the Probation Officers, staff and guards for the inmate. August 2015 second week of Plaintiff's arrival, Plaintiff's attorney called, faxed and mailed letter stating the physical, mental and emotional condition Plaintiff Johnson was in and to advise, the Plaintiff must not sign anything because of her state of mind without legal or family review. Defendant Ray did not follow up with the continued calls from Plaintiff's attorney or letter. Defendant did however acknowledge something was wrong with the Plaintiff by asking the Plaintiff "Are you stupid or something?" Plaintiff stated she was unable to comprehend or mentally function. Defendant stated he never received a call from Plaintiff's attorney and he don't have to follow up with them. Defendant even looked around the room and stated, "I don't see your attorney and your sister here in this prison I only see you and you better sign this paper." The plaintiff started crying when the Defendant asked her was she retarded?  Plaintiff stated " I been through something and I cant function." Defendant stated "there is no mental health treatment here, you went through medical screening and was released by medical with no mental issues for CDR work, now get out of my office." Plaintiff went back to Defendant several times asking for help. May 2016 Plaintiff unable to function mentally and 2 weeks before suicide watch, wrote an affidavit of truth of her mental experience with request for help, and had the affidavit notarized by the prison Secretary. Plaintiff was called in Defendants office to go over the affidavit. Plaintiff stated she was being called crazy, retarded and Nigger at CDR work assignment. Defendant stated he was not going to change the work assignment. Plaintiff also stated she needed more time to locate GED information because the school was closed by FED's 27 years ago per sister. Plaintiff requested an mental health exemption for testing and GED class, just until she could deal with her situation being in prison, appeal of Federal Case, mental health issues and location of GED file. Not being in prison before, Plaintiff asked the Defendant how could she stop the abuse at CDR and get the exemption, the Defendant stated nothing can be done and HSU medical says nothing is wrong with you. Defendant stated he would not go over the CDR's head and change the job assignment. The abuse at CDR kept Plaintiff in a mental, physical, emotional, abusive, bullying and harassing situation. Plaintiff went back to Defendant's office again and stood in the middle of the Defendant's floor crying, "please help me". Defendant responded "I cant help you". Defendant ordered the Plaintiff out his office and as plaintiff was leaving the Defendant stated "Please tell Mr. Reed hello". Which was the supervisor of CDR. When Plaintiff went back to work Plaintiff was ordered to scrub (3) 10 feet tall freezers outside in 95 degree weather and scrub the lobby walls and floors with a small brush as inmates laughed and recited House Nigger. The sun was so hot it fried Plaintiff's hair, face and arms. Defendant denied Plaintiff due process when he stated there was nothing she or he could do about any of the Plaintiff situations. Nor did Defendant order an investigation on the informal complaint of abuse at CDR by Plaintiff because Defendant Ray ordered the hit on Plaintiff. 2 weeks later June 2016 Plaintiff was on Suicide Watch. After suicide watch Plaintiff went back to Defendant trying to explain the abuse on suicide watch and defendant responded by saying there is nothing you can do. Plaintiff was not aware or understood at that time about Administrative Remedy Process or the 2241 process. August 2017 Plaintiff had submitted requested several times to be released under the Second Chance Act for mental and medical health care not offered at Alderson among other extraordinary circumstances in Plaintiff's life in order to rebuild after prison. 6 months was offered at August 2017 team but when Plaintiff went to team January 2018 defendant stated to Plaintiff he was not aware of what she was speaking of with the Second Chance Act. Defendant suggested to Plaintiff to do a cop out and request to waive home confinement. Plaintiff asked the Defendant why do she need to write a cop out about refusing "Home Confinement"? Defendant would not answer and told Plaintiff to bring the cop out to the next team which is July 2018 team. Plaintiff stated that would be to late for the Second Chance Act and the Defendant said he did not care. The inmate women are afraid to speak with Defendant about anything because of his egregious, disrespectful, flagrant attitude toward the female inmates.    Defendant Ray is liable for deliberate indifference when he knowingly fail to respond to Defendant's continued request for help. Defendant acted under a history of widespread abuse by not notifying abusers and correcting or the alleged deprivation by way of and investigation or removing plaintiff from hostile situation the Defendant failed to do so. Defendant knew about the conduct and help facilitate it, approve it, condone it or turn a blind eye to it. The Defendant actions of grossly deliberate indifference by actual knowledge of something mentally being wrong with Plaintiff which created a serious risk by the Defendant acting maliciously and sadistically created a cruel and unusual environment for Plaintiff. Defendant set in motion a series of acts by others, knowingly refuse to stop abuse and inflict constitutional injuries on Plaintiff. Defendant knew and participated directly with the violations which show reckless and callus indifference to the rights of the Plaintiff.

D 2í-



**U.S. Department of Justice**

Federal Bureau of Prisons

*Office of the Director*

*Washington, DC 20534*

July 20, 2012

MEMORANDUM FOR ALL BUREAU INMATES

FROM:          Charles E. Samuels, Jr., Director

SUBJECT:      Suicide Prevention

As Director of the Federal Bureau of Prisons, I am committed to ensuring your safety, the safety of staff and the public. I am also committed to providing you with programs and services that can contribute to your ability to successfully reenter society. In this message, I would like to specifically address your state of mind, an important part of your overall well-being.

Incarceration is difficult for many people; many individuals experience a wide range of emotions – sadness, anxiety, fear, loneliness, anger, or shame. At times you may feel hopeless about your future and your thoughts may turn to suicide. If you are unable to think of solutions other than suicide, it is not because solutions do not exist; it is because you are currently unable to see them. Do not lose hope. Solutions can be found, feelings change, unanticipated positive events occur. Look for meaning and purpose in educational and treatment programs, faith, work, family, and friends.

Bureau staff are a key resource available to you. Every institution is staffed with psychologists who provide counseling and other supportive mental health services. Anytime you want to speak with a psychologist, let staff know and they will contact Psychology Services to make the necessary arrangements. Psychologists are not the only Bureau staff available to provide you support. Your unit officer, counselor or case manager, work supervisor, teacher, and treatment specialist are available to speak with you and provide assistance, as are the other staff in the institution, including recreation specialists and lieutenants. Help is available.

Every day, inmates across the Bureau find the strength and support to move ahead in a positive direction, despite their challenging circumstances. You may be reading this message while in a Special Housing Unit or Special Management Unit cell, thinking your life is moving in the wrong direction. But wherever you are, whatever your circumstances, my commitment to you is the same. I want you to succeed. I want your life to go forward in a positive direction – a direction personally fulfilling to you, but also a direction which ensures the safety of the staff and inmates who interact with you each day.

I know your road ahead is not an easy one. Be willing to request help from those around you.

"Learn from yesterday, live for today, hope for tomorrow."
~ Albert Einstein

*[handwritten: HUMBER RAY EXHIBIT]*

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------

FROM: 56613037
TO: Johnson, Xaviera
SUBJECT: Affidavit of TRUTH
DATE: 05/31/2016 06:37:53 PM

*[handwritten: TO: Mr. Ray   Ms. Spradlin   Dr. Anthony]*

*[handwritten: Page 1 of 3]*

Affidavit truth and facts
History:

I, Carmen Johnson give my word this is my affidavit of truth. I am and innocent woman whom was politically hit. I am currently going through the appeal process in the 4th circuit. I was diagnosed in Maryland by Dr. Huffer with PTSD Legal Abuse Syndrome Jan 2015 and it was filed in court where I had my trial Feb 2015. Besides from Government Misconduct and wrongful imprisonment I suffer from many distortions. On my pilgrimage to Alderson FPC from 4 county jails I lived on dirty water, rotten oranges, boiled egg whites and bread for 7 months. I lost around 40 pounds. When I arrived here I looked like a victim from a concentration camp. I did not remember my name or what happen to me. After experiencing good food, a clean facility, some nice inmates and professional staff I started physically feeling better. However, I started having flash backs of the things I encountered from the catalyst of experiences of government misconduct and transferred to 4 different county jails. Not to mention I did not see the sun while in county custody. Weekly, I witnessed fights with women using knives, chairs, food trays and phones to hit each other. I survived gas and smoke bombs. Innocent people should never witness the things I saw before I came here. My first meeting with Mr. Ray I tried to explain my mental issues to him but he did not listen. My attorney tried to call Mr. Ray for a month to explain my mental state but Mr. Ray has never returned his call. Mr. Ray is a very professional man but because of my distortions he looks and act like an FBI agent which makes me terrified of him. When I meet with him I physically and mentally shut down and stress out of fear. Mr. Garrett did listen and sent me to talk with Dr. Stuart. At that time she said she understood the legal abuse I went through but she never heard of PTSD Legal Abuse Syndrome. Her concern was all the prescribed medicine I was court ordered to take 18 plus months and the damage it may have had with me going cold turkey. I explained to her my brain felt like it was "FRIED". There is a slight head ache that never goes away and I still have it today. We talked about her signing me up with TRAUMA class but I never heard back as of today. She also explained she could not see me one on one but suggested I focus on self healing and meditation. With the help of Mr. Garrett again I met with Dr. Adams once because Dr. Stuart was not available. The mental set back for this meeting my roommate at the time was being abusive by calling me retarded, crazy and stupid. Being a community leader for over 15 years this perception of me to others has continued to devastate me. Dr. Adams did the best she could that day in the conversation but we never had a dialogue together before which made it difficult to understand my struggles. I have since then tried to focus on self help and meditation and I did manage to pull myself together where I could at least process the survival of daily life here. I have a good job whom all my bosses like me and I like them. I spend most of my free time alone because I don't trust anyone but I do feed the birds, squirrels and smell the fresh air daily. I attend Buddhism and metaphysics studies. With these studies I am working on my fears and I have made the conscious choice to open the door of my illusions that holds me confined to the darkness. I been trying to alleviate the suffering and distortion in my illusion through meditation per the advise of Dr. Stuart. But my question is how do this help my "Fried Brain Cells"? The Americans with Disabilities Amendment Act, say PTSD can not be treated with medication and I need to be receiving therapy and accommodations for my psychiatric injuries. On page 7 of Alderson's hand book it states HSU is responsible for my medical needs and provide services necessary to accommodate my medical concerns. However, I am terrified to go over there because of my past experiences with them. Page 26 the hand book states Action will be taken to have me evaluated. When I arrived at Alderson I explained to HSU of my PTSD and the fact Maryland Court sent me to Washington DC medical facility for almost 7 months. 18 months at pretrial I was prescribed Klonopin by the court therapist. The first 3 months in DC Jail I was doped up on Trizondone 375mg, Klonopin and something else. These pills had me in a zombie state, bumping into walls and slobbing from the mouth. I feel and KNOW this combination of prescribed medicine FRIED my brain cells and kept me in and hallucination state. My sisters came to visit me in DC Jail and when they saw the mental state I was in with the help of my attorneys they was able to get me off the medicine and receive one on one therapy. HSU said they did not see anything in my medical file that suggested this. I tried to explain but was told I would not get one on one therapy here and was threaten with a write up if I refused the medication at that time. I took the pills for a while but they created suicidal thoughts and made my brain hurt even though it was a low dose.

The reasons for my set backs are as follow:

Reason 1: May 2016 I was denied bond from the lower court who put me here.

Reason 2: May 2016 I was denied R-DAP. The PSI don't mention my 5 years prescription drug abuse started with the 1st of 3 raids on me. However, the J and C reflects the judge listing drug treatment. I don't remember the PSI interview.

Reason 3: May 2016 My roommate Tameka Bruce left after 8 years of imprisonment here. She was a great Alderson mentor. She taught me how to clean my chakras, meditate and sit in the silence to experience GOD. This helped to heal my mind, body and soul. However, I notice lately I can not hold my thought on the void. Also, Rita Flagg Hines was in the cube next to me and we always talked because she went through the appeal process. She was a great older lady support physically. She left a week

P.30

WALTER RAY
EXHIBIT
Page 3 of 3

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------

ago to go home. I miss both of them and they were the only 2 women I really talked too.

Reason 4: May 2016 My sister says the school I attended for my GED in 1988 or 1989 was closed for FRAUD 20 something years ago. My sister did contact the Department of Education to find out what steps need to be taken to locate the archived files for my GED, Data Entry and Bookkeeping information from PTC Institute 30 years ago. However, I was told by Education at Alderson I am enrolled in the next GED class starting June 2016. Around Dec 2015 I was tested by Mr. Risnick in education. I explain to him I could not take the test because I felt my brain was fried and of my PTSD. He said I had to take the test or he would call the head officer and he kept saying "You don't want that." I did attempt to take the test but could not function. I was unable to focus or comprehend anything on the test. Not to mention the panicking, sweating, shaking and anxiety. I hand wrote on the test I can not comprehend or finish the test. Afterward, I sent 2 or 3 emails to the Education Department, The Warden and Dr. Stuart explaining I could not take the test because of my PTSD issues and medication abuse. Dr. Stuart did respond and said there was no such thing as PTSD Legal Abuse and she do not have the staff to offer me one on one therapy. I asked her if she could move pass her conceptual beliefs of legal abuse and understand I am in fact suffering from PTSD. I also explained to her at the time I had suicidal thoughts because I was starting to go through the court appeal process. She said she signed me up with the waiting list for "TRAUMA Class" and 4 weeks at the psych lab and meditation room. I never heard from Education on the test or my medical condition. At this time I am unable to function and very overwhelmed. There are to many things going on in my head and I can not focus. However, Alderson has helped me physically this far in which I can not deny. On page 55 and 56 of the handbook it states the Educational Advisor will meet with me to "PLAN" course in enrollment needs. It also states it is the inmates responsibility to verify the completion of General Education Development. I am asking for a little more help from Alderson by giving me more time to get the GED verification that is needed. I am also asking for and extension on starting this class for June 2016.
I have received the following education in the past 20 years as follow which are not mentioned on the PSI.
1) Bachelors Degree in Theology from International School of Theology, 2002
2) Certified Educator of Financial Literacy from Certification of Financial Literacy, 2008-2014
     a) certified in Debt Management
     b) certified in Residential Housing
     c) certified in Financial Literacy
     d) certified in Credit
3) Honoree PHD in Philosophy from Opus Dai, 2014

Reason 5: Dec 2015 - May 2016 Going through the appeals process trying to read the documents, comprehend and remember what I am reading has been very difficult for me. I am also having flash backs, night/day sweats, shaking, memory loss, cant retain information etc. I have to read the same page over and over again before I can go to the next page. I also experience, not pronouncing my words correct, no memory of conversations with inmates and forgetting their names. I cant remember most of the guards name, get my supervisors names mixed up. I get around this by calling everyone Madam or Sir.

Reason 6: May 2016 I signed up with chess classes at rec last month to help with my memory and strategy. I went to class on Saturday 5-28-2016 and have forgotten everything learned. I did not remember the pieces name or how they move.

Reason 7: May 2016 I started a class called "Basic cognitive Skills" in a group setting which started last week. I believe we meet every week for 8 weeks(?). The book has a prison on the front and talks mostly about issue surrounding prison life. It is difficult for me to be in a class like this when I am fighting for my life going through and appeal for my innocents. I feel this class is and oxymoron for me. But I am optimistic and will try to focus and try to comprehend the help.

Reason 8: May 2016 I been having flash backs because June 3 is the anniversary when the judge sentence me to 57 months in jail when I was told by the old attorney It would be time served. I am devastated because on Feb 20, 2016 when the jury found me guilty I was arrested immediately and never went back home. So I can not sleep, eat or stop thinking about this date coming up.

My suggested resolution:
I thank Alderson FPC for the help it has provided me this far.
1. I am respectfully asking for one on one therapy to help me walk through my problems, illusions and realty.
2. I am requesting for more time to work through the verifications that are needed in Education
3. I am requesting for a extension on starting this GED class for June 2016.
I am in no mental state ready for a class when I can't process information, comprehend or remember the basic things in Education. I know my brain has been fried with all the potent psych medication I was on. I need help to cope with my fears, anxiety, panic attacks and feeling overwhelmed (etc) with the things I am currently dealing with. I can only tell you Post Traumatic Stress Disorder is real.

Carmen — 56613-037                    5/31/16

P.38

WINTER
RAY
EXHIBIT





| 🏠 | News | Sports | Entertainment | Business | Opinion | Food | Lifestyle | Health | More ▾ |

BREAKING   NEWS VIDEO   BLOGS   PHILADELPHIA   NEW JERSEY   POLITICS   EDUCATION   OPINION   OBITUARIES   NATION/WORLD   WEATHER   TRAFFIC   LOTTERY

Collections · Trade School

# Ptc Institute Shuts Doors Owners Accused Of Misusing Funds

by Joseph R. Daughen, Daily News Staff Writer
POSTED: March 15, 1994





👍 0        0        @

👎        ↩        ⟳

A trade school accused of misusing federal education money has suddenly

closed, throwing 200 instructors out of work and depriving 1,600 students of the classes they paid to attend.

The school, PTC Career Institute, operated in Philadelphia and five other cities until it closed without notice last week. Yesterday, a group of angry students who had paid about $4,000 each for a five-month nursing assistant course gathered in frustration outside the PTC facility at 40 N. 2nd St.

"We've been hearing all kinds of rumors about the school being in debt and teachers not getting paid," said Janet Peterson, 26, of North Philadelphia. "They kept pushing the graduation back, to April 8, then April 23, then May. Last week, it was closed due to the heating system breaking down. We can't get any information."

A hand-lettered sign on the front door of the three-story structure said, "Due to a broken heater motor we will be closed until further notice." The sign was dated March 7.

The students said they were instructed to call the school for further information, only to hear a message that said: "PTC is temporarily closed. As soon as we have further information we will contact all students and staff."

The Philadelphia PTC employed about 50 instructors in nursing assistance, private security, building maintenance and various aspects of computer operation. About 300 students were enrolled.

Joel Sweet, an attorney for PTC, said the company closed its six schools

because the U.S. Department of Education had cut off funds "without justification." Those funds, in the form of grants and loans, helped students pay for their classes.

Almost all of PTC's students here and in Atlanta, Baltimore, Newark, Detroit and Chicago received some sort of government tuition aid. Sweet said that without the assistance, which constituted a substantial part of PTC's $16 million in annual revenues, the schools could not remain open.

In a Jan. 5 letter to PTC owners Richard and Rimona Friedberg, however, the Department of Education said it was withholding funds because of the Friedbergs' misuse of the federal money, including paying themselves salaries of $300,000 each and paying their two sons and a daughter-in-law $200,000 each.

The Freidbergs, both 52, were convicted in separate trials of evading more than $130,000 in taxes. At their trials, testimony was presented accusing them of spending that amount to fix up their $700,000 Villanova home, then writing it off as a PTC business expense. They are free pending appeals.

Stephanie Babyak, a spokeswoman for the Education Department, said her agency is contacting the states where PTC operated to enlist their help in putting together "teach-outs," in which affected students would finish their courses at other schools.

The Pennsylvania Department of Education said PTC's license here expired March 1.

## We Recommend

**Trade School Told To Pay $131,000**
June 30, 1994

**Trade School Stays Open On Appeal**
December 28, 1993

**Taking Taxpayers To School Trade-school Lobby Gets High Marks**
September 22, 1993

**Pic Schools That Didn't Make Grade**
November 5, 1992

## Find More Stories About

Trade School

P.39

TRULINCS  56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: page 3
DATE: 03/06/2018 06:10:57 PM

6.)       DEFENDANT C. AMBLER, is a correctional guard, unit team and counselor at Alderson. He conducts formal groups, individual counseling, and serves as liaison with staff members and inmates. Defendant answers inmates questions and discusses grievances, BP-9, BP-10 and BP-11 forms when requested. January 23, 2017 Defendant conducted the Administrative Remedy informal for the Incident report enforced by UDC. Defendant stated to Plaintiff that she was sanctioned and was a waste of time fighting it. The Plaintiff was order to the bus stop in corridor area within 48 hours. Plaintiff asked the Defendant for a SENSITIVE BP form because this was retaliation for filing a 2241 in 2016 on the Education Department for fraud. Defendant stated he never heard of a Sensitive BP form and he called someone on the phone, stated Plaintiff's full name and was instructed to tell me there was no Sensitive Process. January 24, 2017 Plaintiff went back to Defendant and asked for a BP-9. Plaintiff asked for instruction on the process and Defendant clearly stated there is no instructions and he was not aware of the process. Plaintiff went to inmates and located the program statement with written instruction. January 25, 2017 Plaintiff took the program statement instructions to Defendant showing that there is in fact a BP Sensitive for abuse or retaliation by staff. Plaintiff read the instructions to the Defendant. February 5, 2017 Plaintiff tried to get a BP-9 for being dragged on the floor by and unknown Nurse January 2017 when Plaintiff fainted. A few inmates wrote statement saying they saw guards circle the Plaintiff and unknown nurse tried to wake Plaintiff up by strangling and dragging Plaintiff on the floor. Defendant said he would get back with me once he found out what to do.  Plaintiff also talked to Defendant about the T5 Fluorescent cancer causing lights at the bus stop. Defendant put the 50 year of Plaintiff on the top bunk bed, lights 3 feet above her head, these hot lights stay on 24 hours a day and burnt the plaintiff skin. Defendant stated you have been sanctioned and you cant be moved. Plaintiff stated you moved other inmates and there are 10 lower bunk beds open, once again, he stated no. Plaintiff asked again can you please move me to the bottom bunk the lights are to hot and plaintiff showed him her neck, lighter then the face with scorched blotches and appearance of sun burn, affect of the T5 lights. Defendant stated it was out of his hands. After 32 days on the bus stop under hot T5 lights, Plaintiff asked to be moved to a cube facing east, she is Buddhist and need to meditation and pray 3 hours sun up and 3 hours sun down in the lotus position sitting on the bed because the concrete floor was to hard. Plaintiff stated she did not want to disturb other inmates. In the past inmates did cop outs stating Plaintiff looked spooky sitting on bed, silently for 2-3 hours not moving in the middle of the night and called Plaintiff a witch. Defendant stated "I have nothing to do with your religion, grab your rug and go to chapel to pray. Plaintiff stated the chapel is not open in the middle of the night. Defendant denied the religious request and placed Plaintiff in the middle of range surrounded by inmates all the way around, even with other cubes available to accommodate the plaintiff's religious request. Defendant stated "I can't help or do nothing for you" as he packed up his items and walked out his office leaving Plaintiff standing there. Defendant participated directly in the alleged constitutional violations after being informed  through informal request for help by Plaintiff. Defendant exhibited deliberate indifference to the right of inmate by failing to act on information indicated that unconstitutional violation are occurring, knowingly failed to act. Defendant failed to remedy the wrong by requesting and investigation which made Defendant grossly negligent by not reporting the wrong, helped conduct and facilitate the act, approved of the act, condoned the act or turned a blind eye.

C. AMBLER
EXHIBIT

STAFF   CDFRM   I request

**FEDERAL BUREAU OF PRISONS**

Name and Title (of Staff Member)

Mr. Ambler

CARMEN JOHNSON

| | |
|---|---|
| DATE: | 2-6-2017 |
| REGISTER NO.: | 56613-037 |

ASSIGNMENT:   GYM

UNIT:   A1

Briefly state your question or concern and the solution you are requesting.
on back, if necessary. Your failure to be specific may result in this form being
it necessary, you will be interviewed in order to successfully respond to your

For Health reasons I am requesting to please Be
removed From under these Fluorescent Hot cancer
Causing lights that stay on 24 hours a Day. This
practice was implemented in concentration Camps.
I am 50 years old and cancer run in my Family. Its un humane to be punish
For a lie
I have Been subjected to this abuse Because
Staff has concealed and withheld information. Under
Policy 3420.11    Page 30 Item 34
Page 23 Item 9
Page 25 Item 15
Page 25 Item 16
Page 28 Item 25

(Do not write below this line)

Signature Staff Member                    Date

P. 41

EXHIBIT
C. AMBLER ✓

BP-S148.055  INMATE REQUEST TO STAFF  CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Dr. Wright | 3-3-2017 |
| FROM: | REGISTER NO.: |
| Carmen Johnson | 06013-037 |
| WORK ASSIGNMENT: | UNIT: |
| GYM | A1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I came to sick call this morning at 6:45am and back
again at 8:00am Because my face is 5/6 times Darker
then my neck, chest and rest of my body. My face has
Dark Brown over Tan spots/blotches all over it. It is very itchy
and tight. I was told to use lotion with no sea scent. I been using
this and my face is ~~worse~~. This infection or recictum
happen after being on the Bus stop on the top Bunk under
Directly under the T5 Fluorescence light. For a total of
31 Days. These lights stay on most of the time. I asked
Mr. Ambler to move me to bottom bunk 3 Times and was
Told "IF I Do This For you I have to do For all." Now my
FACE is messed up. May I Please Be examed by Dr. Wright or
                    (Do not write below this line)  Doctor on Staff

DISPOSITION:

I was given this lotion by my roommate at the time. Which made it work.

Appt. Scheduled

No Eucerin or non-scented lotion purchased
within last 30 days. Need to try lotion prior
to appt.

| Signature Staff Member   Caitlin Stover, RN   FPC Alderson, WV | Date 3/4/17 |
|---|---|

Record Copy - File; Copy - Inmate              This form replaces BP-148.070 dated Oct 86
(This form may be replicated via WP)           and BP-S148.070 APR 94

P. 42

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

---------------------------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: page 4
DATE: 03/06/2018 06:18:52 PM

7.)      DEFENDANT R. HARVEY, is Unit Manager and Chairwoman of Unit Discipline Committee(UDC) with responsibilities for implemental and operations of the Administrative Remedy Program and Unit Manager at Alderson. UDC conduct hearing for incidental reports. At the UDC hearing the inmate can make a statement, witnesses and present documents of evidence. The UDC hearing either resolve the issue formally or can request an extension or refer the incident to Discipline hearing Officer (DHO) higher level for probable causes.

8.)      DEFENDANT S.TRAINUM, is Case Manager and member of Unit Discipline Committee(UDC). Defendant is responsible for implemental, operations and hearings for the Administrative Remedy Program and other duties as a case manager an present at UDC hearings.

Defendant Harvey and Defendant Trainum had the UDC hearing January 18, 2017. (30) minutes before the untimely UDC hearing, Plaintiff fainted and was strangled and dragged on floor by unknown nurse with witnesses present. Plaintiff was taken to HSU medical and about (5) minutes later Plaintiff was ordered to go to nurse. Medical staff stated nothing was wrong with Plaintiff because unknown nurse said she could see Plaintiff veins from across the room. Plaintiff was trying tell her the symptoms, unknown  nurse ordered Plaintiff to leave and report to counselors office. Plaintiff came in office and Defendant Harvey stated this is your UDC hearing, we been waiting for you and we want to get through this quickly. Plaintiff explain she fainted less then 30 minutes ago and just came in from HSU, can the meeting be rescheduled? Defendant Harvey said no and proceeded reading the disciplinary report and asked the Plaintiff what do she have to say. Plaintiff stated, October 2016 Plaintiff was ordered by Defendant Dickerson, Supervisor of Education, to sit at the Resource Center (NOT in a class) for over 4 months, waiting on Defendant Dickerson to exempt Plaintiff from the GED program because Defendant's staff enrolled Plaintiff in program when Plaintiff was on suicide watch, with fake scores and no evaluation. October 2016, Defendant Dickerson's staff of 3 attempted to hold the Plaintiff hostage in a close door room, by attempted force to sign the GED documents, through stress, duress and coercion. Plaintiff was stopped by Defendant Harvey saying "You were not where you was suppose to be". Plaintiff stated I was ordered by Defendant Dickerson to sit at the resource center until she finished the GED exempt documents. Defendant Harvey stated "well you refuse to do your assignments". Plaintiff stated "the only assignment was for me to bring my own book to read, until January 18, 2017, Defendant Dickerson laid a elementary school test on the table for Plaintiff in the resource center and walked out. 3 witnesses worked at Resource Center and myself examined the 1st grade test with answers already listed in pencil by Defendant Dickerson. Plaintiff stated to Defendant Harvey she was confused, why the Defendant would hand her a test with answers already listed. Plaintiff Johnson stated she wrote on test "I repudiate the offer because I don't understand the scope and terms of the contract". Plaintiff stated to Defendant Harvey to Plaintiff's understanding she was sitting at resource center waiting for Defendant Dickerson to exempt her from the GED class. Defendant Harvey stated why did you not tell Lt. Kelley the writer this whom did the investigation? Plaintiff Johnson stated "I did" but the same reason why you are not writing my statement is the same reason Lt. Kelley did not write my statement." Plaintiff went on to state "this is retaliation for the 2241 I filed in courts for fraud, assault and abuse in the Education Department". Defendant Harvey stated I don't know anything about that. Plaintiff Johnson started pulling out the court documents when Defendant Trainum yelled loudly " This is not why we are here and you been found guilty on 306 refusal to program and 307 refusing to obey an order." Plaintiff stated I have witnesses, this is not true. Defendant Trainum stated "you should have told Lt. Kelley the writer, investigator all this." Plaintiff stated I did.  Defendant Trainum stated it is not in your statement by Lt. Kelley. Plaintiff asked Defendant Trainum, what do the statement say? Defendant Harvey read the statement by Lt. Kelley and Plaintiff stated "that is not my statement, I never said this." Plaintiff asked Defendant Harvey to read to Plaintiff what Defendant Harvey wrote as Plaintiff's statement. Defendant Harvey also did not have (all) of what Plaintiff said. Which made Plaintiff look guilty of the charges. Defendant Harvey stated we are only putting you on the bus stop, we could take your commissary and phone but we decided to give you the bus stop. Plaintiff stated "this is not fair, I have witnesses, this is retaliation for the court case I filed on Education, I never disobeyed this order, I questioned it." Defendants never mention Plaintiff's good time taken. Defendants set a persistent pattern of mishandled UDC hearing by approval of deliberate indifference and failure to act an official policy of inaction, and the custom of inaction was the moving force or direct cause behind Plaintiff's constitutional injuries. This is a demonstration of custom to show persistent and wide spread practice. This long standing permanent practice is a deeply embedded traditional way to carrying out a course of actions deliberately chosen instead of reporting or investigating the violations. Defendants acted maliciously and sadistically by placing Plaintiff under cruel and unusual punishment knowing there was questions that needed to be addressed by other Defendant(s) by way of a full investigation. Instead Defendants wanted the Plaintiff to be happy for only getting 30 days on the bus stop under hot lights. Defendants help facilitate the abuse and fraud, condone it, approved of it and or turned a blind eye which is grossly negligent and deliberately violation of the Constitutional rights of the Plaintiff for due process.

P.U2

TRULINCS  56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------

9.)      DEFENDANT D. KELLEY, is Lieutenant at Alderson whom investigates incident reports, take statement and recommend to enforce the report or not. The Defendant interviews the inmate and decide if the informal resolution was accomplished or not. If not, the incident report is sent to the UDC committee for an initial hearing. October 2016, Plaintiff Johnson was called to the Lieutenant's Office and was met by Defendant Kelley. Defendant Kelley ordered Plaintiff Johnson to tell him about the hostage and assault and battery situation. Plaintiff proceeded to tell him about the 3 staff at Education held her hostage behind a close blocked door and how she ran to Lt. Oaks office for protection and Lt. Oaks walked Plaintiff over to the Psychologist office. Plaintiff could only assume the Psychologist or Lt. Oaks documented what happen and asked SIS to do a report. As Plaintiff was explaining the abuse, fraud and hostage situation, Defendant Kelley stopped writing and put his pen down. Plaintiff asked him why did he stop writing and he clearly stated "I thought it was inmates whom held you hostage". Plaintiff asked are you going to finish the investigation? But Defendant Kelley ordered Plaintiff back to the housing unit. On January 18, 2017, Defendant Kelley called Plaintiff Johnson to Lieutenant's office. When Defendant arrived the Captain was standing over Defendant Kelley's shoulders telling him what to write. Defendant Grimes(Captain) left the office, Defendant stated you have been issued and incident report by Ms. Dickerson in Education for disobeying a direct order and not turning in work assignments. Defendant asked Plaintiff what was her statement. Plaintiff reminded him of the fake test scores, no evaluation, assault, battery and hostage situation October 2016 by 3 staff members and how this had to do with me filing a 2241 in West VA court on the Education Department for fraud. Plaintiff went on to explain Defendant Dickerson had Plaintiff sitting at the Resource Center while Defendant prepared the exemption from the program, it was 4 months since the wait to be removed.  Defendant Kelley stopped Plaintiff and, stared at her and stated "I have to enforce this shot, You can try and appeal it but it wont work". Plaintiff was ordered back to the housing unit. Defendant participated directly in the alleged constitutional violations by Plaintiff informing Defendant, he failed to remedy the wrong. Defendant acted under unconstitutional due process practices by knowing whom committed the wrong and knew about the conduct of Defendant(s) and helped facilitate it, approve it, condone it or turn a blind eye which was grossly negligent and deliberate indifference.

P. 44

U.S. DEPARTMENT OF JUSTICE                              FEDERAL BUREAU OF PRISONS

### Part I - Incident Report

| 1. Institution: FPC Alderson | | # 2940902 |
|---|---|---|

| 2. Inmate's Name Johnson, Carmen | 3. Register Number 56613-037 | 4. Date of Incident 01/18/2017 | 5. Time 3:00 pm |
|---|---|---|---|

| 6. Place of Incident Main Education/Resource Center | 7. Assignment Recreation | 8. Unit 1 / HOUSE A/RANGE 01/BED 391U |
|---|---|---|

| 9. Incident 306 REFUSING TO PROGRAM/307 REFUSING TO OBEY AN ORDER | 10. Prohibited Act Code(s) 306 AND 307 |
|---|---|

11. Description Of Incident (Date: 01/18/2017   Time: 3:00 pm   Staff became aware of incident)
On 1/18/2017 at 2:00 pm, I assigned work for Inmate Johnson, Carmen, Reg. # 56613-037 to complete during her assigned class time. At 3:00 pm her work was turned incomplete with a message that she was not willing to perform the task. Inmate Johnson has constantly refused work after being given several opportunities to do so. She has stated that she in incapable of performing the tasks she is given and refuses to try.

| 12. Typed Name/Signature of Reporting Employee D. Dickerson, SOE | 13. Date And Time 1/18/2017 3:10 pm |
|---|---|

| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature) D. Kelley / D. Kelley | 15. Date Incident Report Delivered 1/18/17 | 16. Time Incident Report Delivered 6:48pm |
|---|---|---|

### Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident
Ms. Dickerson was supposed to have signed me out of classes. I have been sitting in the Resource Center for the last 3 class months. I read my books. There are no assignments. I can't do any work when we are in litigation about fraud. Everyday I go down to the Resource Center. I'm not sitting in a class. Each time I went to class she was denied & I was being thrown out. I feel this is retaliation

18. A. The finding of the committee is that you:
✓ Committed the Prohibited Act as charged.
__ Did not Commit a Prohibited Act.
__ Committed Prohibited Act Code(s) 306/307

B. __ The Committee is referring the Charge(s) to the DHO for further Hearing.
C. __ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:
Based on the written statement of the writer and evidence submitted & inmates admission she didn't do the assignment.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)
Sanctioned to 30 days move to bus stop beginning date of move.

| 21. Date And Time Of Action 1/20/17 1pm | (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.) | |
|---|---|---|
| Harvey / Harvey Chairman (Typed Name/Signature) | Trainum Member (Typed Name) | Member (Typed Name) |

INSTRUCTIONS: All items outside heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.
DISTRIBUTE:   ORIGINAL-Central File record; COPY-1- DHO; COPY-2- Inmate After UDC Action; COPY-3- Inmate within 24 hours of Part I Preparation.

LEGAL CLAIM,

10. Defendant Dorian Dickerson is Supervisor of Education: Aided and Abetted with staff on concealment of facts. Conspiring by understanding and covering up the violations with no consideration to human rights. Abuse of power. Violations of the US Constitution and Administrative Remedies with unfair due process. Disability discrimination by concealing facts and not reporting physical, mental and emotional abuse by staff. Defendant did not call and out side agency (OIA) to do a full investigation on her staff. Defendant spoke to staff herself and made decision based under color of State and or Federal Law, and violating Employee policy by Office of Government Ethics. Aiding and Abetting misappropriation of Government funds and continued fraud in the Education Department. Knowingly and willingly continue to destroy Plaintiff's reputation with BOP file. Defendant continue to force Plaintiff to conspire to commit fraud with US Government Funding in Defendant's Education Department. Defendant continue to ignore the fact Plaintiff filed a case in West VA court on part of fraud, assault, mental health abuse and discrimination in Defendant's department which has lead to cunning retaliation on Plaintiff. Defendant continue to put Plaintiff in harms way by emotional, mental and physical abuse with intimidation, bully tactics and the twisting of BOP policy to full Defendants own agenda and cover up.

11. Defendant Michael McCabe is a teacher in Education: Defendant used abuse of power by inflicting bully tactics with threats which lead to physical, mental and emotional abuse. Disregard to mental disabilities and human and women rights. Abusive behavior with loud tones and looks that provides silent tactics that warn continued physical, emotional and mental harm. Covering up violations and aiding and abetting with concealment of facts. Violating the US Constitution by false imprisonment and Assault. Continuing to commit fraud on the US Government by mis appropriation of US Government funds. Continued force of Plaintiff to conspirer with fraud with US Government Funding. Knowingly and willingly defendant destroyed Plaintiff's reputation with BOP file.

12. Defendant Heather Spadlin is a teacher in Education: Defendant used abuse of power by inflicting bully tactics with intimidation and threats on Plaintiff with fraud, Assault, mental and emotional abuse. Defendant used the color of State and Federal law to hold Plaintiff hostage by false imprisonment and assault which violates the US Constitution. Defendant has no regards to Plaintiff's mental disabilities or human rights. Defendant took advantage of Plaintiff mental disabilities by stress, duress and attempted cohesion to cover up Defendant's fraud on US Government Funding by trying to force Plaintiff to sign up for a Special Ed class 1 day off suicide watch. Defendant even went as far as trying to convince Plaintiff to aid and abet the fraud by telling Plaintiff, that Plaintiff, took a GED test and signed a contract before Plaintiff went in Suicide Watch. This malice act openinly humiliated Plaintiff by placing Plaintiff in Special Education with no evaluation. Defendant continue to ignore the fact Plaintiff filed a case in West VA court on part of fraud and mental health abuse and discrimination. Defendant has continued to lie, cheat, mislead, conduct fraud and discriminate against Plaintiff's mental and emotional disabilities.

P. 46

I give my Statement of Truth under OATH. Jan 18, 2017 I was called to by Kelley's office for and Incident #02 by Ms. Dickerson. I stated everything listed below with Lt. Kelley. Jan 20, 2017 I met with Ms. Harvey and Mr. Trainum of UDC. I asked them to go slow because I just returned from HSU 10 minutes ago from fainting and I felt discombobulated. They proceeded with the hearing. I gave the errors of the incident report. Ms. Harvey wanted to know why the things I was speaking of was not in the statement I gave to Lt. Kelley(writer). I stated the same things I am telling you I told Lt. Kelley. Mr. Trainum stated they did not see them in the statement by Lt. Kelley(writer). I stated the same reason Ms. Harvey is not writing what I stated, Lt. Kelley (write) did not write what I stated. Ms. Harvey proceeded to write some bases of what I said at that point in the incident report. Ms. Harvey stated based on the written statement by Lt. Kelley(writer) and evidence they was enforcing the incident report. I asked what was the evidence? I stated Ms. Dickerson was concealing the full scope of the incident. I also stated this was retaliation, abuse and unusual punishment. They suggested I filed and appeal.

DETAILS: 2nd week of Oct 2016 Ms. Spradling called me in her office at Education with Mr. McCabe and Ms. Bailey in attendance. They held me hostage under stress, duress and attempted coercion. Mr. McCabe was threatening by blocking the entry door as Ms. Spradling yelled at me about Special Education they enrolled me in. I explain to Ms. Spradling I have mental health issues and need mental health treatment not Special Ed. I asked her to produce the fraud test and paperwork establishing I need Special Ed. I stated we should not be speaking since we are in litigation. Ms. Spradling yelled she did not care and I was going to take a test. I stated I could not aid and abet their fraud and would not submit to testing until I hear from the "JUDGE". Mr. McCabe would not move from the blocked door. The way he was standing and looking I thought he was going to hurt me. I was traumatized. I panicked and reached my arm between his arm and turned the door knob and I ran to Lt. Oaks office. Ms. Spradling was screaming I'm going to take your "good time". I told Lt. Oaks what happen and he called Education. I was shaking, nervous and sweating. He walked me to Dr. Anthony's office and she stated no one was going to hurt me but my options was Suicide watch or R&D. I told her I could not handle either because of the way I was treated on suicide watch June 2016. I called my sister and stated I was afraid and was held hostage by 3 staff.(I still feel traumatized when I see them.) The next day, I introduced myself to Warden Smith and told her everything. Warden Smith was shocked about the fake test scores and held hostage by Education Staff. Warden Smith walked me to Ms. Dickerson and Warden Smith ordered Ms. Dickerson to handle this situation with an update. The next day, I met Ms. Dickerson at Education. Ms. Dickerson apologized for her staff and stated she was removing me from the program. She stated she created a letter but had to locate it and to come back the following Monday to sign. She stated after we signed the letter it would take 3 days for her to remove me from the program and to watch the call-out. Around that same time frame I was called to Lt. Kelley's office. While I was telling him what happen he stopped writing. I asked him why did he stop writing? Lt. Kelley stated I thought it was inmates who held you hostage. I met with Ms. Dickerson Nov 7, 2016. She stated she could not remove me from the program until Nov 30, 2016. We went to the Resource Center and Ms. Dickerson asked an inmate worker to create me a sign in/out sheet to use everyday until the end of Nov. 2016. Ms. Dickerson told me I could bring my own book to read. First week of Dec. 2016 I saw Ms. Dickerson and Ms. Wheeler at the Gym. Ms. Dickerson ask "Are you still sitting at the Resource Center?" Ms. Wheeler stated she see me there everyday. Ms. Dickerson asked me to come to her office the middle of Dec 2016. When I arrived she stated I needed 240 hours to sign out the program and she needed test scores from me. I asked her where is the test they say I took that established I need Special Ed? I reminded her she stated October 2016 she was signing me out the program because of the fraud, the hostage situation by her staff and the law suit I filed. I stated I could not take a test because it is listed in a lawsuit for fraudulent test scores by her staff and I was waiting for the Judge's ruling. I backed out her office and stated I was returning to the Resource Center. I left Ms. Dickerson's office discouraged. Jan 18, 2017 Ms. Dickerson came to the Resource Center for the first time since I was assigned there. She laid down a test with a few answers already in faint pencil. She asked the inmate staff to bring her the test when I finished. I wrote in blue ink something to the fact--"I reserve all rights and I do not know the full scope of the contract." I spoke with Ms. Dickerson Jan 23, 2017 how she was suppose to sign me out this program and I was stressed and traumatized by this ordeal. I stated this is retaliation, discrimination, falsifications, concealment of truth and abuse of power to an inmate with mental health issues. She stated she remember but she follows policy. The unusual punishment have me on the bus stop under hot cancer causing lights on 24 hours a day on the top bunk. Based on "POLICY 3420.11 Standards of Employee Conduct "issued by Office of Government Ethics I know I have been exposed to the following violations:

page 23 item 9: threatening to inflict bodily harm injury to another.
page 23 item 10: Disrespectful conduct use of insulting abusive language to others.
page 25 item 15: Endangering the safety or causing injury to inmate thru carelessness
page 25 item 16: Giving inmate an order that is hazardous to health and safety.
page 28 item 25: Physical abuse of an inmate.
page 30 item 34: Falsification misstatement or concealment of facts connected with investigation or other proceeding.
page 37 item 56: Failure to report violation of standard of conduct, retaliation, discrimination against those who make the report.

EXHIBIT
D. Dickersm
M. McCabe
H. Spradlin

P.47

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: Page 5
DATE: 03/07/2018 12:50:22 PM

updated issues
Defendant Maria Arviza,
Defendant Dorian Dickerson
Defendant Heather Spradlin

February 24, 2017: Defendant Arviza signed off on Response to Administrative Remedy 891092-F2 stating there is an incident report issued and Plaintiff was found guilty, Plaintiff had to do 240 instructional hours again, because the 240 hours already accumulated was now reflecting GED SAT(unsatisfactory) because of the disciplinary action. The only way to be dropped from the program the Plaintiff needed to accumulate again 240 hours. Plaintiff Johnson was not aware she was accumulating instructional GED hours. Defendant Dickerson ordered Plaintiff Johnson to sit at the Resource Center while Defendant prepared the exemption from the program. Defendant Dickerson had to cover up her lie and fraud on the Plaintiff in order to attempt to get Plaintiff Johnson to do the 240 hours needed to clean Education's records. Also there was no mention of being held hostage, fake test scores etc in the response by Defendant Arviza, or good time being taken. Most important the response stated "YOU NEED TO BE SATISFACTORY IN ORDER TO BE REMOVED". April 4, 2017: Plaintiff Johnson was ordered to Defendant Spradlin's office. Plaintiff took a witness inmate Pete because of the nature of the fraud, mental health and physical abuse displayed by Defendant. Defendant Spradlin stated she is removing Plaintiff from the GED Program Defendant signed Plaintiff up for. Attached you will find the statement which also reflects Defendant Spradlin wrote that Plaintiff Johnson had accumulated the mandatory 240 instructional hours dated 4-4-2017. Defendant Spradlin's handwritten note don't say anything about GED unsatisfactory. But Defendant Arviza states in the Response from BP-9 that you can not be removed if you have GED unsatisfactory. However, Defendant Spradlin and Defendant Dickerson released Plaintiff from GED program without accepting liability for lying and destroying Plaintiffs file and taken away 30 days of good time, GED unsatisfactory is still listed in the BOP Sentry file for Defendant's Johnson. July 7, 2017: Plaintiff Johnson signed up for Blackstone's Career Institute Paralegal Studies Certificate Program. November 7, 2017: Plaintiff Johnson graduated with "Distinction Honors" of a 97.25 grade average, giving Education a copy of the honors and Defendant Ray a copy for the BOP Sentry File. January 24, 2018: Plaintiff Johnson went to a Unit Team Meeting with Defendant Ray. Plaintiff noticed the Blackstone Paralegal was not listed in the programming. Plaintiff Johnson asked Defendant Ray about the error and he took the Plaintiff's team paperwork and handwrote on the team paperwork the grade point average. Plaintiff asked Defendant "Are you going to add the grades to the BOP system and he said I had to notify Education Department. Plaintiff sent a cop-out asking to add the graduated class to the BOP system and to also let Defendant Dickerson know the Plaintiff had gone on to study advance paralegal Bankruptcy with Blackstone. A week later Defendant Dickerson sent a response back stating "Inmate this is not acceptable in the BOP system because you are listed as GED (unsatisfactory)". This paralegal class shows the Education Defendants lied and committed fraud by placing Plaintiff Johnson in GED stating Plaintiff qualify for "Special Education" based on Plaintiff low scores even though Plaintiff never took a test in the Education Department.

10.)    DEFENDANT DORIAN DICKERSON,
11.)    DEFENDANT M. McCABE
12.)    DEFENDANT HEATHER SPRADLIN:

Defendant Dickerson was informed of the violations to Plaintiff Johnson and grossly negligent and showed deliberate indifference to Plaintiff Johnson by creating a serious risk and failed to take reasonable action to correct it, by failing to act on information indicated the unconstitutional acts occurred.There is a history of wide spread abuse and fraud in the Education Department, Plaintiff Johnson put Defendant Dickerson on notice and Defendant Dickerson failed to correct the alleged deprivation, which by not contacting outside investigation for fraud and abuse was deliberate indifference to Plaintiff Johnson by Defendant Dickerson's staff, Defendant McCabe and Defendant Spradlin whom committed the wrong act. Facts support Defendant Dickerson directed the other Defendant McCabe and Defendant Spradlin in Defendant Dickerson's department to act unlawfully or knew but would not stop them. This Deliberate indifference by the acts was maliciously and sadistically which created cruel and usual punishment for Plaintiff Johnson. Defendant Spradlin set in motion a series of acts ordered at Defendant Spradlin's command and Defendant Dickerson knowingly refused to terminate a series of acts by Defedant McCabe and Defendant Spradlin, which Defendant Dickerson knew or reasonably should have know would cause an infliction of a constitutional injury. Defendant Spradlin and Defendant McCabe have a pattern of mishandled government funds and abuse in the Education Department with tacit approval of the deliberate indifference and failure to act by policy but by a custom of inaction was the moving force or direct cause behind Plaintiff constitutional injury. This abuse of power and fraud demonstrated a custom to show a widespread practice, is well settled of deep embedded traditional ways to carry out actions of deliberately indifference and abuse.

D u0

BP-S148.055  INMATE REQUEST TO STAFF  CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FED                    PRISONS

| TO: (Name and Title of Staff Member) Psychology Unit Manager | DATE: |
|---|---|
| EDUCATION Dept Mr. Spradlin | 5/28/2016 |
| FROM: Carmen Johnson | REGISTER NO.: 50613-037 |
| WORK ASSIGNMENT: CDR | UNIT: A-1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

① ATTached you will Find My affidavit of truth Which Talks about my PTSD, mental Issues and other Distortions. ( I Explained To Mr. Bishop in 12/15)
   Mr. Bishop

② I need more Time to verify my education with Dept. of EDUCATION Because the school I went To Closed For Fraud 20 something years ago.

③ Im requesting my and extension on the GED class you have me enrolled in For the end of June. I have had 7 or 8 mental set backs For the month of May 2016 and Because of my mental Issues I am unable to Function. Please read section 4 of my Affidavit or read the whole thing.

Thank you
Carmen

※ Department of EDUCATION
have to put Archive Files

(Do not write below this line)

DISPOSITION:

IAW program statement 5350.28, you will be added to the GED waitlist. It is advised that you actively attempt to verify your GED through the state's Dept. of Ed. that the GED was earned. Please see an Education Staff member if assistance is needed. Once the GED is verified, you will be taken off the waitlist.

| Signature Staff Member | Date 6/3/16 |
|---|---|

Record Copy - File; Copy - Inmate          This form replaces BP-148.070 dated Oct 86
(This form may be replicated via WP)        and BP-S148.070 APR 94

Dickerson
McCabe    EXHIBIT
Spradlin



P.49

RESPONSE TO ADMINISTRATIVE REMEDY

#891092-F2

This is in response to your Request for Administrative Remedy, receipted on February 9, 2017, in which you indicated that you are requesting to be removed from the GED Program.

A review of your complaint reveals that you may not be eligible to drop from the GED Program until you reach at least 240 hours, per the PS5350.28, "Inmates must participate in the literacy program for one mandatory period of at least 240 instructional hours, or until they achieve a GED credential or high school diploma…" After receiving an Incident Report, due to failing to program or do the work that was provided to you, your status has been changed to GED UNSAT (unsatisfactory) status. "Once found guilty of a Prohibited Act that occurs in the literacy program, he/she will have to complete another 240 instructional hours before he/she can have a GED SAT (satisfactory) Progress Assignment" and be eligible for consideration of being dropped.

Based on this information, your Request for Administrative Remedy is denied. If you are dissatisfied with this response, you may appeal to the Regional Director, Mid-Atlantic Regional Office, 302 Sentinel Drive, Suite 200, Annapolis Junction, MD 20701. You appeal must be received in the Regional Office within twenty (20) calendar days from the date of this response.

Maria Alviza, Acting Warden

02-24-17
Date

BP-S148.055  **INMATE REQUEST TO STAFF**  CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) | DATE: 4-4-2017 |
|---|---|
| FROM: Johnson, Carmen | REGISTER NO.: 56613-037 |
| WORK ASSIGNMENT: GYM | UNIT: A1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

Inmate Johnson, 56613-037, is requesting to be
dropped from GED 2:00 Daily. Per the PS 5350.28.
Inmates must participate in the literacy program for
one Mandatory period of at least 240 instructional hours.....

Inmate Johnson understands that if dropped from the
program, it will affect GED Conduct code. This will no
longer allow student to earn 54 days of GCT a
year. 42 will be earned after dropping

*I never signed for this class.
I understand this may affect me.
However this class is not needed*
X _____ 5/11/2017

(Do not write below this line)

DISPOSITION:

Unit Manager: R Harvey        unit manager

Case Manager: _____  Case manager    5-11-17

SIS: _____

EXHIBIT
Dickerson
Spradlin

| Signature Staff Member | Date 5/11/2017 | 4/4/2017 |
|---|---|---|

Record Copy - File; Copy - Inmate          This form replaces BP-148.070 dated Oct 86
(This form may be replicated via WP)       and BP-S148.070 APR 94

PRINTED ON RECYCLED PAPER

Inmate Johnson has accumulated the mandatory 240

EX HIBIT
Dickerson

# BLACKSTONE CAREER INSTITUTE

1011 BROOKSIDE ROAD, SUITE 300, P.O. BOX 3717, ALLENTOWN, PA 18106-3717

## Student Transcript
### 31 Lesson Paralegal Studies Certificate Program
#### 915 Clock Hours

**Student:** Carmen Johnson  56613-037
**Address:** F.P.C. Alderson
Box A
Alderson  WV  24910

**Student Number:** 08036245
**Enrollment Date:** 06/22/2017
**Completion Date:** 11/07/2017

| Text/Subject | Date Completed | Grade | Text/Subject | Date Completed | Grade |
|---|---|---|---|---|---|
| **Lesson:  1** | | | **Lesson:  8** | | |
| • Introduction To Law | 07/11/2017 | 100 | • Law of Private Corporations | 10/03/2017 | 100 |
| • Contracts Part 1 | 07/11/2017 | 100 | • Law of Partnerships Part I | 10/03/2017 | 100 |
| • Contracts Part II | 07/11/2017 | 95 | • Law of Partnerships Part II | 10/03/2017 | 90 |
| • Contracts Part III | 07/11/2017 | 90 | **Lesson:  9** | | |
| **Lesson:  2** | | | • Constitutional Law Part I | 10/09/2017 | 100 |
| • Law of Torts Part I | 07/31/2017 | 95 | • Constitutional Law Part II | 10/09/2017 | 100 |
| • Law of Torts Part II | 07/31/2017 | 95 | **Lesson:  10** | | |
| • Law of Torts Part III | 08/07/2017 | 100 | • Constitutional Law Part III | 10/09/2017 | 100 |
| • Law of Torts Part IV | 08/07/2017 | 100 | **Lesson:  11** | | |
| **Lesson:  3** | | | • Legal Research Part I | 10/30/2017 | 100 |
| • Criminal Law Part I | 08/07/2017 | 100 | **Lesson:  12** | | |
| • Criminal Law Part II | 08/07/2017 | 100 | • Legal Research Part II | 10/31/2017 | 90 |
| **Lesson:  4** | | | **Lesson:  13** | | |
| • Real Property Part 1 | 08/29/2017 | 100 | • Employability Skills | 11/06/2017 | 90 |
| • Real Property Part II | 09/05/2017 | 95 | **Lesson:  14** | | |
| **Lesson:  5** | | | • Ethics | 11/06/2017 | 95 |
| • Real Property Part III | 09/11/2017 | 95 | | | |
| • Real Property Part IV | 09/11/2017 | 100 | | | |
| **Lesson:  6** | | | | | |
| • Pleadings in Civil Action Part I | 09/11/2017 | 100 | | | |
| • Pleadings in Civil Action Part II | 09/11/2017 | 95 | | | |
| • Practice in Civil Actions | 09/11/2017 | 100 | | | |
| • Criminal Procedure | 09/11/2017 | 100 | | | |
| **Lesson:  7** | | | | | |
| • Wills Part I | 09/15/2017 | 100 | | | |
| • Wills Part II | 09/15/2017 | 90 | | | |
| • Trusts | 09/27/2017 | 100 | | | |

**Student Average:**  97.25%   ** FINAL **

This Document Issued: 11/07/2017

**Blackstone Career Institute**

By: *Valerie L. Behrle* B.S., M.Ed.

Registrar



# Blackstone Career Institute

Est. 1890

### Confers this Certificate of

## Legal Assistant/Paralegal

with Distinction upon

## Carmen Ramona Johnson

who has fulfilled all the requirements prescribed by the School and is entitled to all of the honors, rights and privileges thereunto appertaining.

In Testimony Whereof this recognition of achievement is

Given this 7th day of November 2017

President

Valerie A. Schule, B.S., M.Ed.
Director of Education

EXHIBIT
Dickerson

P.53

BP-S148.055  **INMATE REQUEST TO STAFF**  CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| TO: (Name and Title of Staff Member) Ms Wheeler | DATE: 1-24-18 |
| FROM: Carmen Johnson | REGISTER NO.: 54613-037 |
| WORK ASSIGNMENT: GYM | UNIT: A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I went To Team Today and on My Team paper work
there is no mention of my Blackstone Paralegal Course Pass
97.25 with Honor.

Who do I need to speak to → To have it updated
on my team Paper work

I sent a copy to Ms. Dickerson in November as well
But it is not reflected.
                        THX's.

(Do not write below this line)

DISPOSITION: Inmate Johnson,

Without a Bureau of Prisons recognized High School Diploma or
GED, the Education Dept. can not and does not recognize your
Blackstone Participation. Therefore, we can not add any info.
to SENTRY or Team Paperwork. Dropping out of the GED
program w/in the Institution is the only update we have.

| Signature Staff Member | Date |
|---|---|
| Dickerson | 1/25/2018 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

Dickerson
Exhibit

PRINTED ON RECYCLED PAPER

13. Defendant Christine Anthony is the Chief Psychologist at Alderson Federal Prison Camp. Defendant Anthony offers psychological Services. Ethical Principals for Psychologists and code of conduct, as well as the APA, guidelines for professional practice of psychology. Psychologist is responsible for the assessment and treatment of mental disorders in the inmate population. Utilizing their clinical expertise, psychologist indentify of inmates in need of mental health care and determine the type of services to be provided.  Mental Health providers in Psychology Services make the final determination regarding who will receive psychology care, and the nature of the care the inmate will receive. Reference: Mental Health Services available BOP P5301.17. But was not provided to Plaintiff.

a) EXHIBIT TEN: Full statement submitted by Plaintiff under Oath October 18, 2016 in West Virginia Courts seeking relief and protection. This Exhibit goes into full details to the best of Plaintiff's knowledge on what happen with her and Defendant Anthony. Requesting mental heath treatment and details of what lead to suicide watch and what happen on suicide watch.

legal Claim:

13. Defendant Christine Anthony is Chief Psychologist: Conspired with Defendants by denying mental health treatment to Plaintiff which ultimately landed the Plaintiff on suicide watch for 5 days. Defendant treated the Plaintiff abusively on suicide watch by not letting plaintiff shower, abusive tones, reminding Plaintiff nothing was going to change for her, no consideration or compassion for Plaintiff's mental and emotion state. Even when Plaintiff begged Defendant could she wash because she was on her monthly cycle which was running down her legs. Defendant whom is female was not moved by Plaintiff's female time of the month or her human rights. Plaintiff was constantly humiliated by Defendant because Plaintiff would not come out the suicide room. Plaintiff begged Defendant for something to help Plaintiff sleep and was refused this as well. Plaintiff asked the Defendant can Defendant call her family and was told no. Ultimately, Defendant damaged Plaintiff by listing in Plaintiff BOP file that Plaintiff suffer from Grandiose with Entitlement issues. At one point Plaintiff told the Defendant that she was very thirsty and no one had given plaintiff water. One of the guards even went as far as spitting in open bottled water and giving Plaintiff a direct order to drink it. But, Plaintiff refused. Plaintiff told Defendant what happen but Defendant stated to Plaintiff to leave the suicide room if you are thirsty. Defendant stated "If you are thirsty drink it from the toilet over there." A Inmate suicide Companion heard Defendant say this and told the other Doctor on compound. When Defendant left the Inmate Suicide Companion ran to find Plaintiff water to drink and something to wash with. Defendant, violated Plaintiff's US Constructional rights by cruel and unusual punishment. Defendant, demonstrated Discrimination of Plaintiff's Race and Mental Health Disabilities by not taking the time to diagnose Plaintiff with mental health issues. Defendant denied Plaintiff mental health treatment and ignored all signs of mental health concerns. Defendant was fully aware of the extreme difficulty Plaintiff experienced during her legal battles, 18 months of therapy once a week in pretrial, 2 medical Jail facilities and solitaire confinement. Defendant understood Plaintiff was fighting for her life through the appeals process. Defendant thought it was odd for Plaintiff to be traumatized by being called Nigger constantly at work assignment and basically told Plaintiff to get over it.  Defendant also noted in Plaintiff's BOP file that Plaintiff had Grandiose with entitlement issues which made Plaintiff a target for racial and mental discrimination by other staff an guards. October 2016 Plaintiff was taken to Defendant's office by and officer because of being falsely imprisoned and assaulted by staff at Education Department. Defendant was aggravated because Plaintiff would not common down or consider Defendant's auto suggestion of no one was really going to hurt Plaintiff. Defendant was aggressive with her approach of stating this was not cognitive thinking. Plaintiff stated she did not trust Defendant. Plaintiff stated she could not forget when Defendant told her to drink toilet water and there was a witness whom heard her. Defendant went on to ask Plaintiff if she wanted R&D or suicide watch and Plaintiff said no and ran out office to call family and clerk at West, VA court to tell them about the assault.
 ***Matter alleged on information stating, of another inmate whom is of European race, I believe to be true. An white inmate whom has been on suicide watch several times before and after Plaintiff was able to shower and get clean water to drink.

14. Defendant Rinick is the Director of HSU medical at Alderson Federal Prison Camp. Defendant instructs medical team about clinic Appointments, call outs, physical exams, chronic care and the daily running and administration of HSU medical. Plaintiff was on suicide watch at HSU for 5 days 6-2016. Plaintiff fainted on 1-20-2017 at the housing unit and HSU was called to unit. Guards and nurses from HSU medical came. Plaintiff was dragged, strangled and yelled in face by this unknown nurse while other guards and staff watched. Inmates was ordered back to their cubes while the guards made a circle to block details. But witnesses told Plaintiff what happen. Plaintiff has been requesting medical files since 8-2016 and have not received them.
 a) EXHIBIT   | |   : Statement under Oath dated 1-20-2017. Submitted to courts for retaliation in 2-6 2017,  Submitted with BP-8, BP-9. BP-10 came back with a comment stating they need more time to respond.

---

14. Defendant Rinick is the Director of HSU Medical: No regards to Human Rights. Mental Health Discrimination by denying mental health treatment which ultimately landed the Plaintiff on HSU suicide watch for 5 days. Plaintiff's US. Constitution rights was violated by non adequate medical care, cruel and unusual punishment and was subjected to more mental, emotional and physical abuse on suicide watch. While on suicide watch a guard read Plaintiff's sensitive medical file out loud to other guards which was not assigned to the suicide room or area. This violated Plaintiff's Medical Privacy. Plaintiff's information was used for pure gossip and humiliation of Plaintiff by other staff and guards. Plaintiff was even given a bottled water where a guard spit in the bottle and she was ordered to drink it. On 1-20-17 Plaintiff was dragged, pushed and grabbed in the collar by and unknown nurse when plaintiff had fainted a few minutes earlier while other inmates was ordered to cubes by guards.  But some inmates witnessed this disgraceful treatment on Plaintiff. Plaintiff was driven to HSU Medical and was told nothing was wrong with her but was given and 1 day convalescences. The beginning intake process when Plaintiff first arrived to Anderson FPC stated to intake nurse she was mentally unable to function or comprehend what was going on and needed help. Plaintiff was unable to remember or retain information. Plaintiff went on to try and state she came from several medical jails but was told by intake nurse they have no record of this.  Plaintiff believes if this intake was completed properly a lot of subjection to mental, physical and emotional abuse would not have happen. The catalyst started here by nurses with no regard to human rights with mental disabilities hiding behind color of BOP medical policy has damaged Plaintiff tremendously. The continued denial of mental or physical medical care has gone on with no attempt to change.

---

Jan 20, 2017: The majority of the compound was sick with an unusual virus of some sort.  For weeks I was sick with a strange dry cough during night and a green/yellowish mucus cough during the day, fever, hot sweats, cold sweats, holding nothing on my stomach, dehydration, dizzy spells, white spots in vision. I knew not to go to HSU/Medical to seek treatment because the same story is always used which is buy what you need off commissary and the charge of $2.00 co-pay followed.  For weeks I was taking yellow allergy pills which are recommended by HSU/medical for "ALL" aliments you may have. I also was taking 8-10 vitamin C pills with cough drops, tea, honey, lemon and chicken flavored water to help fight this strange string virus. finally,

the store had no more of these items because so many women was sick from this virus/cold. Finally, on Jan 20, 2017 early morning I was in the bathroom so sick sitting on the toilet throwing up and dealing with the runs at the same time. I was very sick and not realizing it was the 2:15am count.  A guard knocked on the door and stated was anyone in this bathroom and I stated yes. I knew I could get a incident report for messing up their count.  I repeated to them I was very sorry but I am sick. I left the bathroom with 2 guards watching me hold on to the wall with sweat running off me. I had to go back to the bathroom several more times that night with the same symptoms. I finally went to sleep after 5:00am(?). I woke up 9:00am to a guard stating for me to get up and make the bed I sleep in. I stated I was sorry. I stated I was off work and I did not feel good.  He stated with a debauchery tone to get up and make the bed.  I acknowledged the order and got dress and went to counselor to request sick call through him.  The counselors stated why did you not get up at 6:45am to go to sick call?  I explained the medical situation he then called over to HSU/Medical and begged them to do him a favor by letting me to sick call.  As I walked over to sick call I was dizzy, sweating and still shaking. I went in and the nurse stated why did you not come to sick call at 6:45am? As I started to speak the nurse stated she would not see me and to go back to my assigned housing unit. I went back to the housing united and fainted coming in door. I don't know how long I was out but I can say when I came into focus I did not know where I was.  Inmates stated I was screaming where am I? where am I? I remember about 10-12 guards around me. I crawled to the wall screaming get away from me, who are you?  I thought I was home being raided again by the "FEDs". But, when I looked over I saw the Captain's assistant whom use to be my boss.  I stared at her as another female/guard/nurse(?) was yelling and pulling on me telling me to get up and open my eyes-------inmates stated to me they was ordered to their beds. This female/guard/nurse whom was yelling in my face to get up, was pulling me, grabbing me by my collar and pushing me over as I sat on the floor with my back on the wall, trying to focus on where I was and what was going on as (ALL) the other guards watched as they had me circled in an attack mode. I was terrified. They finally dragged me from the floor and drove me over to HSU/Medical. I went in and was seen by a nurse whom told me there was nothing wrong with me and all my test came back normal. I insisted on telling her my symptoms again. She told me to buy what I needed from commissary. I tried to explain to the nurse the store was out of everything I had been taking.  She stated again to buy what is on commissary an she went on to say commissary has not called her to tell her they are out of stock.  She gave me an 1 day condolences and yelled next inmate. I walked back to the united and when I was coming through the door the red phone was for me.  I went to the red phone and was told to come to the counselors office.  When I came in that is when I met with Ms. Harvey and Mr. Trainum about the incident report (listed at the top of this statement under oath.) This is the day I was put on the "Bus Stop" by and obscured incident report.

D. ex

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: Page 6
DATE: 03/06/2018 07:38:12 PM

13.)     DEFENDANT CHRISTINE ANTHONY
14.)     DEFENDANT   Dana Renick

July 2017: Fighting to get into R-DAP drug treatment which was denied. Plaintiff's family researched affects of Klonopin. Plaintiff had a court appointed therapist for 18 months on pre-trail once a week. The therapist had Plaintiff on Klonopin all that time. Plaintiff was also given Trizidone 375mg for 7 months in DC Jail. Plaintiff was taken off these drugs abruptly with severe withdrawal symptoms. Plaintiff experienced side affects of withdrawals with no medical help, even though the Plaintiff begged for help from the time frame of in-take of medical August 2015 through December 2016. Initially Plaintiff Johnson could have died by withdrawals or suicide, which was the thinking process of the Plaintiff in that time period. This went with out concern from HSU Medical and Psychology, even when Plaintiff Johnson continued to beg for medical and mental help. Defendant Anthony and Defendant Rinick showed excessive delay on providing mental and medical health care which was a deliberate indifference when she knew but failed to respond to Plaintiff request for help. Defendants participated directly in the alleged constitutional violates and failed to remedy the wrong. Defendants is operating under custom or policy that is unconstitutional practice. Plaintiff advised Defendant Anthony of the traditional widespread ways, long standing, deeply embedded delay of providing mental and medical health care to Plaintiff and other inmates at Alderson. This is a clear and persistent pattern of mishandled medical and mental health emergencies for Plaintiff and other inmates. Defendants showed deliberate indifferent to have actual knowledge of a serious risk and failed to take reasonable action or request an investigation. Defendants knew or conduct helped facilitate abuse, approve it, condone it, or turn a blind eye. Defendants showed grossly negligent and deliberate indifference which inflicted cruel and unusual punished me to Plaintiff. Plaintiff suffered intentional extreme infliction of mental and emotional distress while on suicide watch June 2016 with outrage of conduct which was inflicted by Defendants and unknown guards on suicide duty. This reckless, malice, highly charged racists with no duty of care affected Plaintiff with severe emotional distress. Defendants was negligent and did not use care any other medical care provider would use under similar circumstances to the point "Dr. Moore" in R-Dap opened up and emergency investigation because the inmate suicide buddy program reported the disgraceful treatment of Plaintiff. Defendants inflicted mental suffering by conduct of malicious flagrant nature which was atrocious and utterly intolerable in a civilized community. Plaintiff deserved care not abuse.

P.En

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: page 11
DATE: 03/06/2018 06:41:04 PM

15.)      DEFENDANT BAILEY (first name and intial unknown) Defendant Bailey was a Lieutenant and then teacher in Education Department at Alderson Federal Prison Camp. Around the third week of June 2016 Defendant Grimes (captain) ordered Plaintiff Johnson to his office to asked what happen on Suicide watch. Defendant Grimes stated that a staff wrote a report on the treatment on suicide watch. Plaintiff told the Defendant everything. A few days later Defendant Bailey asked Plaintiff to come to SIS. Defendant Bailey stated for Plaintiff to write a statement on what happen on Suicide Watch and left. Defendant called Plaintiff to SIS again, and asked Plaintiff to write statement again because Captain was using the report for training. Plaintiff stated "you told me yesterday this report is for how I was treated on Suicide watch?" Defendant Bailey stated, "The Captain wants you to write about how the guards did." Plaintiff wrote the statement and then the Defendant asked the Plaintiff to start a new sheet and don't write this, or write that, but add this. Defendant was dictating how the statement should read. Plaintiff asked why and Defendant stated this is how the Captain wants it. Plaintiff could not understand what was going on. October 2016, Defendant Bailey was now working in Education Department. Plaintiff was ordered to Defendant Spradlins back office with Defendant McCabe and Defendant Bailey also there. Plaintiff Spradlin stood up and stated you are going to sign these papers and Defendant McCabe walked in front of the door and blocked it. Defendant Bailey looked shocked. Plaintiff was terrified and asked what is going on? Defendant Spradlin stated you are going to sign these papers and sit in Education in a chair with a heart beat. Plaintiff stated about court papers filed for Fraud in Education and was waiting for the Judge to decide. Defendant Spradlin started yelling, she did not care about court papers, you gonna sign these papers now. Plaintiff looked over at Defendant Bailey and saw the shock on Defendant face and turn to Defendant McCabe with his hands on his waist, Plaintiff reached her hand pass Defendant's arm and pushed door opened, Defendant McCabe jumped out the way, Plaintiff started running fast with Defendant Spradlin yelling "You are going to sign these papers, I am going to take your good time." Plaintiff ran all the wall to the lieutenant's office non-stop, where Lt. Oaks was. Plaintiff was sweating, crying, shaking and breathing fast, Lt. Oaks asked Plaintiff what happen and Plaintiff told Lt. Oaks Defendant McCabe, Defendant Bailey and Defendant Spradlin blocked door, held me hostage trying to get me to sign papers of a class and test I never took. Lt. Oaks called education and asked what happen? Lt. Oaks walked Plaintiff over to Defendant Anthony's office. Defendant Bailey understood the Plaintiff was in a zone of danger when Defendant McCabe blocked the door and Defendant Spradling started yelling as they all held plaintiff hostage in Defendant's Spradlin's back office. This was an infliction of physical, emotional and mental abuse while under stress, duress and coercion while being forced to sign papers. Defendant Bailey did not stop the assault and battery. Plaintiff Johnson was owed a duty of care to be protected. Defendant Bailey participated directly in constitutional violations on the Plaintiff. Defendant Bailey did not request and investigation or inform anyone of violations she saw, nor did Defendant stop the abuse. Defendant ordered Plaintiff to change her statement on the Suicide watch at least 3 times, and watched Plaintiff being blocked at door and Defendant did nothing accept, help facilitate the abuse, hide abuse, approved of it, condoned it and or turned a blind eye. Defendant's grossly negligent act caused violation of cruel and unusual punishment and abuse to a person with mental concerns.

TRULINCS  56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

---------------------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: page 7
DATE: 03/06/2018 06:29:08 PM

16.)      DEFENDANT JERROD GRIMES, Captain of Alderson Federal Prison. Supposed to secure the safety of inmates as well as Guards with integrity and ethical practices. Defendant Grimes is also the close family member(brother) of Defendant Dickerson. Defendant aided and abetted, covered up and protected his close family member Defendant Dickerson to the point of assisting with the disciplinary action by construction of fraud with Defendant Dickerson and Defendant Kelley. January 18, 2017 Plaintiff Johnson was ordered to Defendant Kelley's office and Defendant Grimes was advising Defendant Kelley what to add to the incident report. Plaintiff Johnson heard Defendant Grimes say to Defendant Kelley "this will make it stick."  After the incident report was served, UDC hearing and sanction was executed Defendant Grimes would walk around the range at night with a ski-mask on, when Defendant would get to the cube Plaintiff was in, Defendant would walk really slow looking up at Plaintiff Johnson in the top bunk bed. This happen quite a few times between 2am and 4am of morning. Plaintiff would be up because of her lack of sleep habits, meditation or reading and Defendant Grimes knew this. Every time Defendant Grimes would see Plaintiff on the compound he would stare at her until she was out of sight.  Plaintiff Johnson believes this drastic action was an intimidation factor by Defendant Grimes to Plaintiff Johnson. Plaintiff Johnson was certainly afraid of more retaliation, assault and incident reports by the creepy and scary actions of the Defendant. Plaintiff told other inmates but the inmates thought it was funny, But Plaintiff knew this was not a joke. Plaintiff was afraid for her life with this infliction of mental suffering by Defendants conduct, flagrant character and intentional infliction of emotional distress by the Defendant and the other Defendants whom worked under Defendant Grimes by his command to protect Defendant's sister Defendant Dickerson. This conduct was atrocious and utterly intolerable in a civilized community. The Defendant participated directly in the alleged constitutional violations on Plaintiff, even after being informed of the violations filed to remedy the wrong by his Defendant sister and other Defendants. Defendant knew of the conduct and helped facilitate it, approved it, condone it and turn a blind eye. Defendant grossly negligent with supervisory of his subordinates for the abuse, fraud and wrong acts on Plaintiff Johnson was deliberate indifference, with maliciously and sadistically cruel and unusual punishment. This set the stage for a motion of a series of acts by other Defendants, or knowingly refused to terminate a series of acts by others which defendant knew but continued to inflict constitutional violations and injury to Plaintiff. Plaintiff suffered an infliction of  physical, emotional and mental impacted by a zone of danger when 8-10 unknown guards circled plaintiff while unknown nurse/staff pushed, dragged, choked and pulled Plaintiff when Plaintiff fainted, which the abuse was later verified by inmate witnesses, with no guards intervening on January 18, 2017.  Defendants owed the same duty of care to a free world patient and person as to the Plaintiff.

TRULINCS  56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

------------------------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: page 10
DATE: 03/07/2018 01:23:06 PM

17.)      DEFENDANT UNITED STATES, The United States knew of the widespread abuse and fraud at Alderson Federal Prison Camp, by way of Congress, Senate inquiries and unknown number of lawsuits for lack of Medical and Mental Health care and extreme abuse on thousands of women of Alderson, but Federal Authority continue to send women to Alderson only to be subjected to abuse. The custom is so well settled, the officials and United States had constructive knowledge of the embedded tradition, wide spread abuse, retaliation, Misappropriation of Government Funds, no mental health and lack of medical care. Yet, no one from the United States did anything to end the practice. Plaintiff hold the United State liable for abuse, discrimination of gender, race, religion, no mental health care, lack of Medical Health care, retaliation, pain and suffering with cruel and unusual punishments. A clear and persistent pattern of abuse on women inmates, tacit approval deliberate indifference and failure to act amounting to official policy of custom of inaction, was the moving force or direct cause of Plaintiff's continual injuries which is deliberately intentional, chosen from various alternatives. Plaintiff showed no delay in reporting abuse of no mental health care, fraud, abuse, retaliation by submitted evidence of informal and formal Administrative Grievance Remedy but this practice was/is so deeply embedded, well settled  and long standing, makes it hard for inmates to get help. These acts are maliciously and sadistically cruel and unusual punishment. Defendant(s) set in motion a series of acts by other Defendants, knowingly refused to terminate the series of acts, which inflicted constitutional violations, color of state and federal law and policy, abuse, religious practices denied, with refusal to control Defendants. This conduct shows reckless, callus, indifference to the rights of others. Defendant and Supervisory officials personally participated in the deprivation, or was aware of the grossly negligent and deliberate indifference to Plaintiff's constitutional rights, failed to take action to prevent further misconduct. Plaintiff tried to report all the issues repeatedly and was retaliated and abused. This history of widespread abuse put Defendant(s) on notice of the need to correct deprivations, and failed to do so. This resulted in violations of deliberate indifference to the constitutional rights of Plaintiff Johnson. Facts supported that Supervisory Defendants directed subordinates to act unlawful or knew the defendants would act unlawful and failed to stop them. Defendant knew about the conduct and helped facilitate it, approved it, condoned it, or turned a blind eye, which affected Plaintiff to the fullest. Plaintiff Johnson and hundreds of other inmates depend, rely on and use the Administrative Grievance Process to appeal incident reports or other issues seeking Justice, and to now understand the process, is human controlled by a corrupt system, excepted and approved by the Defendant, United States. Axiomatically, very few inmates, like Plaintiff Johnson, receive no remedy for abuse and or fraud in the BOP system, this practice of abuse is malicious and sadistically. Plaintiff holds the Defendant, United States and all other Defendants responsible for violations of Plaintiff Johnson's constitutional rights, with cruel and unusual punishment. This abuse was atrocious and utterly intolerable in a civilized community.

18.)      DEFENDANT EVAN JENKINS was notified by Congressman Cummings to open an inquiry on behalf of Plaintiff Johnson's family because Plaintiff is in Defendant's district. The inquiry was for, retaliation, abuse, fraud, lack of mental and medical care at Alderson Federal Prison Camp. Defendant refused, the emergency inquiry was opened by Congressman Hoyer's office documented by Congressman Cummings and Congressman Conyers's office. Defendant Jenkins whom assist with delegated policy making, authority in the area and in congress, was informed and had knowledge of the extent of the wide spread established practices and existence. Defendant, responsible policy maker failed to open and inquiry of abuse received by Plaintiff's family, even after another municipal personal requested the documented breakdown of abuse to be looked into, Defendant still refused, this only showed acquiescence in the established long standing hidden practices at Alderson Federal Prison. Failure to act amounted to Deliberate Indifference to Plaintiff and policy violation, prohibiting misconduct by not enforcing policy. Plaintiff suffered a deprivation violations of US Constitution, by failure to remedy the unsafe conditions, inadequate mental and medical health care, Government Funding Fraud, retaliation by assault and battery, in order to prevent more predictable constitutional violations. Defendant Jenkins denied other request for help by hundreds of concern families of the same nature. This shows a history or custom that exist of abuse in which encouraged and allowed all Defendants to display malicious and sadistically abuse was grossly negligent, which created cruel and unusual punishment to the Plaintiff, with no concern of all the other Defendants for punishment. By Defendant Jenkins refusal to terminate a series of acts by other Defendants Jenkins knowingly inflicted more constitutional injuries Plaintiff Johnson. This showed a reckless or callus indifference to the rights of the Plaintiff and the Defendant knew about the conduct and or help facilitate it, approved of it, condoned it, or turned a blind eye to it. This conduct was atrocious and utterly intolerable in a civilized community.

19.)      DEFENDANT J.F. CARAWAY, is Regional Director of the Atlantic Region Appeals in the Administrative Remedy Grievance. Defendant signed off on denial of the BP-10 submitted by Plaintiff Johnson for UDC hearing, abuse, Fraud in Education Department, Government funds, GED fraud and assault and battery. Defendant denied the BP-10s and failed to address the issues of fraud but directed the appeal denial to the framed GED class. The Defendant participated directly in the constitutional violations by being informed of the abuse filed by Plaintiff Johnson to remedy the wrong. Plaintiff Johnson's requested an outside agency to come in to inspect and interview Plaintiff Johnson. Defendant's grossly negligence, monitoring

P. 60

ELIJAH E. CUMMINGS
7TH DISTRICT, MARYLAND

RANKING MEMBER, COMMITTEE ON
OVERSIGHT AND GOVERNMENT REFORM

RANKING MEMBER,
SELECT COMMITTEE ON BENGHAZI

COMMITTEE ON
TRANSPORTATION AND INFRASTRUCTURE
SUBCOMMITTEE ON COAST
GUARD AND MARITIME TRANSPORTATION
SUBCOMMITTEE ON
RAILROADS, PIPELINES, AND HAZARDOUS
MATERIALS

# Congress of the United States
## House of Representatives
### Washington, DC 20515

☒ 2230 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515–2007
(202) 225–4741
FAX: (202) 225–3178

DISTRICT OFFICES:
1010 PARK AVENUE
SUITE 105
BALTIMORE, MD 21201–5037
(410) 685–9199
FAX: (410) 685–9399

☐ 754 FREDERICK ROAD
CATONSVILLE, MD 21228–4504
(410) 719–8777
FAX: (410) 455–0110

☐ 8267 MAIN STREET
ROOM 102
ELLICOTT CITY, MD 21043–9903
(410) 465–8259
FAX: (410) 465–8740

www.cummings.house.gov



March 30, 2017

Ms. Carmen Johnson
Reg. No. 56613-037
Inmate Mail
FPC Alderson
Glen Ray, Road, Box A
Alderson, WV 24910

Re:  Legal

Dear Ms. Johnson:

I am in receipt of your recent letter to my office regarding your court case number 1:16-CV-06206 with the Alderson Federal Prison Camp.

Please know there is a long-standing policy in Congress that each Representative is given the opportunity to serve his or her own constituents. In keeping with that policy, I have referred correspondence to your Representative in Congress, The Honorable Evan Jenkins. Congressman Jenkin's District Office address is 601 Federal St., Suite 1003, Elizabeth Kee Federal Building, Bluefield, WV 24701 and the telephone number is 301-325-6800.  I am sure that Congressman Jenkins will do what he can to assist you.

Sincerely,

Elijah E. Cummings
Member of Congress

EEC/gc

cc:  Congressman Evan Jenkins

EXHIBIT
Jenkins

PRINTED ON RECYCLED PAPER

P 61

STENY H. HOYER
**DEMOCRATIC WHIP**
5TH DISTRICT, MARYLAND



# Congress of the United States
## House of Representatives
### Washington, DC 20515–6502

April 7, 2017

Dr. Carmen Johnson (56613-037)
Alderson Federal Prison Camp for Women
1 Glen Ray Road
Alderson, WA 24910

Dear Dr. Johnson (56613-037):

    Thank you for writing to me regarding your medical and mental health treatments at the Alderson Federal Prison Camp for Women. I am sorry to learn of your difficulties and will do my best to assist.

    The appropriate officials at Federal Bureau of Prisons have been contacted. I have requested that they review this matter and as soon as I receive a response, I will be back in touch with you. As there are often numerous steps to the review and determination process and each situation varies, we will do our best to help you find answers but can make no guarantee to the outcome or the timeframe under which this matter may be resolved.

    In the meantime, if there is anything that you need, please contact Mr. Terrance Taylor, of my staff. She may be contacted at U.S. District Court House, 6500 Cherrywood Lane, Suite 310, Greenbelt, MD 20770. The telephone number is 301-474-0119; the fax number is 301-474-4697.

    Thanking you again and with kindest regards, I am

        Sincerely yours,

        STENY H. HOYER

SHH:TT

EXHIBIT
Jenkins

**DEMOCRATIC WHIP OFFICE:**
H-148, THE CAPITOL
WASHINGTON, DC 20515
(202) 225-3130
(202) 226-0663 (FAX)
http://democraticwhip.house.gov

**WASHINGTON, DC OFFICE:**
1705 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-4131
(202) 225-4300 (FAX)
http://www.hoyer.house.gov

**GREENBELT DISTRICT OFFICE:**
U.S. DISTRICT COURT HOUSE
6500 CHERRYWOOD LANE, SUITE 310
GREENBELT, MD 20770
(301) 474-0119
(301) 474-4697 (FAX)

**WALDORF DISTRICT OFFICE:**
401 POST OFFICE ROAD, #202
WALDORF, MD 20602
(301) 843-1577
(301) 843-1331 (FAX)

PRINTED ON RECYCLED PAPER

RULING 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

----------------------------------------------------------------

FROM: 56 3037
TO: Smi Caren
SUBJE Request for Administration Remedy BP-10
DATE: 13/2017 07:20:04 PM

8923-F1 BP-9 was denied and no remedy or relief was given or granted as of 3-3-2017.

Reflecting on the BP-9 written response as follow:

1. Warden wrote refusal to program 306 and refusing to obey and order 307.
I was ordered by Ms. Dickerson to sit at the Resource Center (NOT) in a class for over 4 months. She was working on a letter to remove me from this program because her staff entered me into a program with fake test scores and no evaluation. Ms. Dickerson stated for me to watch the call out. Everyday I went to Resource Center with my own reading book. The only time I was asked to do and assignment was on 1-18-2017 almost 4 months later waiting and watching the call out to be removed. Ms. Dickerson brought in a test with answers already listed on the test. I wrote on the test "I repudiate this offer because I do not know the full terms of this contract." I also stated on the test that I was waiting for the Judge to rule on the fact because we were in litigation because of Fraud in the Education Department. I followed the direct order which was sit in the resource center until Ms. Dickerson do the letter to remove me.

2. The title (WRITER) of the incident report is Lieutenant Kelley.
Lt. Kelley called me to the office and told me and incident report was being given by Ms. Dickerson. Lt. Kelley stated he had to enforce this incident report and do I want to give a statement. I stated that I was waiting for Ms. Dickerson to remove me from this program because of Fraud and being held hostage by her staff. I had been sitting at the resource center for over 4 months waiting and watching the call out to say removed. I stated that this was all entered in the West Virginia court house and I was waiting for the Judge to rule because of the FRAUD. I never stated to Lt. Kelley(writer) that I was incapable of performing the task and I refuse to try. This is a lie and that comment don't make sense. I asked Lt. Kelley to read me what he wrote on my statement and he refused and now I understand why. Lt. Kelley did state I could appeal this but the appeal wont work.

3. I did in fact state in the UDC meeting that we are in fact in litigation because the fraud in the Education Department for fake test scores and no evaluation for Special Education. I stated to UDC that I could not aid and abet fraud and I was waiting for the Judge to rule. I tried to pull out the court documents that reflects this but was stopped by Mr. Trainum. They stated why did you not tell the writer(Lt. Kelley) this and I said I did but the same reason why you are not writing what I am saying the writer(Lt. Kelley) did the same thing. I also asked them to read me what the writer(Lt. Kelley) as my statement and they only stated "You said you are incapable of performing the tasks and I refuse to try". I stated to Ms. Harvey this is a lie I did not state this to him on 1-18-2017. I stated this is the writer(Lt. Kelley) statement not mine.

Last comments: The response by the Warden breaks my heart because he writes "It is the goal of the Inmate Discipline Program to prevent or deter inmates from violating the Bureau of Prisons prohibited acts. He go on to state there is no indication the incident report heard by UDC was improperly administered but my due process was in fact violated.

a) The violations, fraud and lies was implemented and concealed by the Warden's staff under Office of Government Ethics, US Constitution and human rights. My due process was denied. I am asking for you to please look at the full scope of this incident and please remove this incident report from my BOP file.

Carmen Johnson 56613-037


EXHIBIT
Caraway

P. 63

**REGIONAL ADMINISTRATIVE REMEDY APPEAL**
**PART B – Response**

**Date Filed:  March 15, 2017          Remedy ID No.:  891092-R1**

This is in response to your Regional Administrative Remedy
Appeal, in which you request to drop out of the GED program.

We have reviewed documentation relevant to your appeal.  The
Supervisor of Education was contacted and it was determined you
have accumulated the 240 instructional hours required by Program
Statement 5350.28, <u>Literacy Program (GED Standard)</u>.  The
Supervisor of Education further indicated your Inmate Request to
Staff Member, in which you request to drop from the GED program
was pending signatures from your Unit Team.  Once your Inmate
Request to Staff Member is returned to Education with the Unit
Team signatures, then you can be processed from the GED program.

This is for information purposes only.  If you are dissatisfied
with this response, you may appeal to the General Counsel,
Federal Bureau of Prisons, 320 First Street, NW, Washington, DC
20534.  Your appeal must be received in the General Counsel's
Office within 30 days from the date of this response.

JUN 2 0 2017

_____          _____
Date                             J. F. Caraway
                                 Regional Director
                                 Mid-Atlantic Region

TRULINCS  56613037 - JOHNSON, CARMEN - Unit: ALD-A-A
--------------------------------------------------------------------------------

the Administrative Remedy process on the Regional Level, Defendant had authority to stop the Defendants but instead Defendant Caraway supported, help facilitate, condoned, approve, or turned a blind eye of the abuse and fraud on the Plaintiff and Government, by denying Plaintiff's BP-10. These facts show Defendant Caraway knew the Defendants was acting unlawful but Defendant failed to stop them which created deliberate indifference which affected the rights of the Plaintiff's due process and continued fraud on the government. The US Constitution states, the Plaintiff had a right to report the Fraud to a Government agency and have a chance to a honest due process, but the Defendant has proven this process normally don't work for the inmates. The Defendant failed to act on the Grievance Process for the appeal and report within the prison system information to alert the appropriate people of the abuse by Plaintiff whom was requesting help. When the Defendant learned of the abuse, Defendant should have exercised his authority and reported the conditions. Plaintiff can only suggest by Defendant Caraway denying the request for appeal and investigation, this displayed a custom or usage that is persistent and widespread, long standing and deeply embedded by the Defendant. This informal custom can be proven by the large denials of BP-10's on the Regional level for inmates verses approvals of the appeals in which reflects evidence of a routine practice. This lead to intentional infliction of mental and emotional distress of suffering by the Plaintiff because of the conduct of flagrant character of the Defendant. This conduct on Plaintiff Johnson, by Defendant Caraway was atrocious and utterly intolerable in a civilized community.

20.)      DEFENDANT IAN CONNORS, is Administrator of the National Inmate Appeals in Washington DC. Defendant was informed of all the violations through a BP-11, filed by Plaintiff Johnson for UDC denial of due process, mental health abuse, fraud in Education on government funds, GED fraud, assault and battery. Defendant Connors did acknowledge numerous issues, but Defendant stated "the issues listed did not pertain to the disciplinary process." However, the issues did all tie in together and can not be separated. The Defendant exhibited deliberate indifference to Plaintiff, by failing to report the sufficient information of abuse in the prison system indicating unconstitutional acts are occurring against women at Alderson Federal Prison Camp. This was intentional infliction of emotional distress for Plaintiff with deliberate indifference when Plaintiff Johnson requested and outside agency to come in and do a full investigations but Defendant Connors turned a blind eye to the emergency request. Defendant should have investigated and rectify the deliberate indifference, but Defendant participated by maliciously helping to facilitate it, hide it, approved of it, and condoned it. Defendant acted grossly negligent by having the actual knowledge of the serious nature and risk, failed to act reasonable to avert the abuse and save Plaintiff from additional harm, but instead, let the abuse and fraud continue on Plaintiff Johnson. This practice and informal custom of process of BP-11's, we can only assume this practice may constitute a usage of persistent and wide spread, long standing, deeply embedded in the system of constitutional violations in the BOP and Defendant Connors. This conduct was atrocious and utterly intolerable in a civilized community.

P. (..

Administrative Remedy No. 892326-A2
Part B - Response

You appeal the January 20, 2017, decision of the Unit Discipline
Committee (UDC) regarding incident report #2940902, in which you
were found to have committed the prohibited acts of Code 306,
Refusing to Accept a Program Assignment, and Code 307, Refusing
to Obey an Order of a Staff Member.  You disagree with the
decisions of the Warden and Regional Director, and you claim you
did not commit the prohibited acts.  Specifically, you recite
numerous issues that do not pertain to the disciplinary process.
For relief, you request the incident report be expunged.

Our review of your disciplinary proceedings indicates compliance
with Program Statement 5270.09, Inmate Discipline Program.  The
UDC considered all evidence presented at the hearing and
documented the specific evidence relied upon to support their
decision in Section 19 of the incident report.  We find the
determination of the UDC is reasonable and fully supported by
the evidence.  As indicated in the lower level responses to this
appeal, the issues and claims you provided are not sufficient to
expunge the incident report.  You have not provided any
evidence, nor did we find any to indicate that you did not
commit the prohibited acts.  The sanctions imposed were
commensurate to the severity level of the prohibited act
committed and in compliance with policy.

Accordingly, your appeal is denied.


9|8|17
Date

Ian Connors, Administrator
National Inmate Appeals



FPC ALDERSON

SEP 1 8 2017

WARDEN'S OFFICE

EXHIBIT
Connors

P. 1.6

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: BP-11 Carmen Johnson appealing Incident Report
DATE: 06/12/2017 12:07:29 PM

EXHIBIT
Connors

Remedy ID No.: 892326-R1
My Statement of Truth:
My response is based on the return response of Regional Director Caraway w/Mid-Atlantic Region dated May 19,2017.
Please read his paragraph singularly from 1-7 and then match my statement by my paragraph responding singularly 1-6.

I am appealing the decision for Unit Discipline Committee (UDC) on Jan. 20, 2017. I am appealing refusing to accept a program assignment (code 306) and refusing to obey an order of a staff member (307). The request still stands the incident report be effaced and expunged w/any other negative remarks pertaining to this incident be removed from my BOP file

   *PARAGRAPH 1: The claim still stands being placed in Special ED program 1 day off suicide watch. No accompanying evaluation was given to determine Special Education was needed. The claim still stands that fraudulent behavior by unethical staff in the Education Department. The claim still stands I was subjected to retaliation for filing a court motion in West VA because of Fraud in the Education Department and my need for Mental Health Treatment July 2016. The claim still stand I was held hostage with attempt of assault, stress, duress, threat and coercion to sign documents for Special Education program Oct. 2016. Ultimately, lead to a deep apology by the Education Supervisor who gave her word as a ethical employee she was removing me from the program Oct. 2016. I was given a direct order by the Education Supervisor Oct. 2016 to sit at the Resource Center located in another building for my safety with my understanding of being removed from the program. I was asked to bring a personal book to read. I was unethically and deliberately lied to by the Education Supervisor continuously stating she was removing me from this program in Oct. 2016 then Nov. 2016 then Dec. 2016 and Jan. 2017.
   *PARAGRAPH 2: Program Statement 5270.09, Inmate Discipline Program, states the UDC staff shall consider all evidence presented at the hearing. The decision of the UDC staff shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. The following was not considered or refusal of acknowledgement as follow:
   a) not given the opportunity to submit evidence.
   b) not given time to prepare for UDC hearing or granted a reschedule request. I just came from HSU 5 mins before UDC hearing for fainting. I was given a convalescence by HSU for rest that day. I felt discombobulated.
   c) not given the opportunity to bring witnesses.
   d) statements I did in fact make at the hearing is not present.
   e) some statements I was making I was ordered to stop speaking of them
   f) Conflict evidence is greater than the incident report was not considered.
   g) no outside agency or SIS investigation was requested because of the nature or sever conflict of the incident(s).

It was appropriate and conscientious to question the direct order and to ask the scope of the contract. The direct order was inscrutable and did not make sense. I was ordered by the Education Supervisor Oct. 2016, Nov. 2016, Dec. 2016, Jan.2017 to sit at the resource center because she was removing me from the program. It was not the fact denying an assignment or a direct order, it was the fact of questioning the ONE given assignment/test out the blue after 4 months of sitting at the resource center. Also trying to differentiate why answers was already listed in faint pencil on this one time presumptuous elementary school test. Any person of ethics would question what was going on opposed to relying on pragmatic perceptions. I am now left to ask another question---"Why is a person punished for asking an ethical question of concern at Alderson Federal Prison Camp for Women?" "Will I always be punished for asking questions at Alderson Federal Prison Camp for Women?"
   *PARAGRAPH 3: I disagree with being appropriately charged. I understand per policy programming may not be optional or and elective. However, on page 53 of The Anderson Federal Hand Book clearly states a program is voluntary. Page 7 of the Alderson Hand Book states the unit team will work with you, psychology, health service and education dept on classification and programming review. Page 7 also states in handbook the Educational staff will plan WITH YOU, coordinate and evaluate your academic and vocational needs and establish educational goals. This never happened and I was taken advantage of by my obvious mental health comprehensible difficulties with discriminatory aliments at the time. Aug. 2015 my attorney faxed to Case Manager a letter referencing my mental health comprehensible difficulties and his concern for me to not sign anything because of my mental state at that time. My attorney called for 3 weeks and his letter and calls went with out consideration or acknowledgement. May 2016 with the submission of my affidavit of truth explained my mental health difficulties at the time and this went without consideration by unit team. Instead I was diagnosed with grandiose with entitlement issues. This lead to free game of being called "House Nigger" on the Job at CDR. May 2016 I did receive a response back from Education Staff stating they placed me on the 4 month waiting list to handle affairs with locating the GED. 11 days later in June 2016 I was ultimately placed on Suicide Watch.
   *PARAGRAPH 4: The "14 Principals of Ethical Conduct for Federal Employees" states an Federal Employee must

P. 67

EXHIBIT
Connors ✓

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------

endeavor to avoid any actions creating the appearance that they was violating the law or the ethical standards set forth in the Standards of Ethical Conduct. It also states Employees shall adhere to all laws and regulations that provide equal opportunity for all Americans regardless of race, color, religion, sex, national origin, age and handicap. I do believe Education Staff and UDC Staff failed based on the above statement written from Department of Justice Files "Ethics". I still claim the Education and UDC Staff did violate me by using color of policy and law. May 2016, Education Staff did responded to my affidavit by placing me on a waiting list to handle my affairs. Oct. 2016 Education staff did in fact infringe on my free will.  I am a 50 year old American woman. This infringement lead to assault by holding me hostage when they understood my mental distress state. The fatalistic of disregard to their written response physically and mentally affected me. The Alderson Hand Book states Unit Team, Psychology and Education Staff will work with the inmate (TOGETHER) with achieving programming goals. My intelligence was under estimated and discriminated against by placing me in Special Education one day off suicide watch. No consideration of my mental state, no evaluation or testing was given. This aversion of complexities they created with deliberate abuse of power has traumatized me incomprehensibly. Theoretically, it was fraud and unethical to offer me a test with faint answers wrote in pencil on the test. It was assault and unethical to hold me hostage in a room with the door blocked by a huge white man attempting to force me to sign documents under stress, duress threat and coercion. Emphatically, it is incongruous, unethical and abuse of power to write me up under these proliferated circumstance without a proper ethical analysis.

   *PARAGRAPH 5: The credible evidence is the fact I did file a 2241 motion July 2016 in West VA court. The Alderson Federal Prison attorney asked the courts to dismiss the motion because it had no merit and no remedies attempted in the Sentry BOP system. Consequently, the courts wanted to hear my compelling complaint. Oct. 2016 I submitted a 68 page motion with exhibits. The middle of Oct. 2016 I filed another 9 page motion asking for protection because of retaliation and being held hostage by Education staff. Oct. 2016 my sister called the clerk of court to let them know I was held hostage by the staff in Education at Alderson Prison for Women. I stand by my claim this incident report was strategically planned, prepared and then executed under abuse of power and color of policy and law.

   *PARAGRAPH 6: Regional Office denied my appeal. Based on the complexity of the situation there is no way I received a fair UDC hearing or Appeal. I disagree with the substantial procedures was followed with Education Staff and UDC Staff hearing. Subjectively, I was signed out the Special Education/GED program May 2017 with unsatisfactory listed on my BOP file. Consequently, I am asking for the incident report and any negative marks pertaining to this incident to be removed from the BOP file.

In the 14 Principles of Ethical Conduct for Federal Employees it states in paragraph 14 the follow: Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts. "In order to provide Justice ethically you must ask yourself the following questions about this incident."
   1. Where is the evaluation and test that justified C. Johnson to be entered in Special Education and or GED?
   2. Why was C. Johnson ordered by the Education Supervisor to sit at the Resource Center in another building 4 months?
   3. Why was C. Johnson not sitting in Education Department at Annex where the GED and Special Ed class is held.
   4. Why was C. Johnson not given assignments from June 2016 - Jan. 2017?
   5. Why did UDC staff not grant a continuation because the nature of the complicated incident?
   6. Are there any other behavior issues with C. Johnson in the past at Alderson Federal Prison or in BOP file?
   7. Why did the UDC staff disregard the details stated by C. Johnson above?
Exhibits attached:
1. Jan. 2017 Incident Report
2. Regional Director Denial letter for BP 10
3. Alderson Federal Hand Book Page 7, page 53 and page 55
4. 14 Principles of Ethical Conduct for Federal Employees
5. Employee Conduct Policy Statement 3420.11 pages 30 and 31
6. May 2016 Affidavit from Carmen Johnson requesting help for mental health issues.
7. May 2016 Cop Out from Education Staff McCabe place Carmen Johnson on waiting list to locate GED.
8. BOP suicide prevention letter from Director
9. Jan 20, 2017 confined to living quarters by HSU minutes before the UDC hearing.

thank you for your professional time in this incident. I am requesting the incident report be removed and any negative notes attached to the BOP file dealing with this situation removed as well.

Carmen Johnson 56613-037

cc: Congressman Hoyer to add to inquiry opened 4-2017 at Alderson Federal Prison Camp for Women.
cc: West VA court to add to case Carmen Johnson vs. Alderson Federal Prison Camp for Women

P. 68

I. Articles of the Constitutional :
Amendment I: The right of the people peaceably to assemble, and petition the Government for redress of grievance.
Amendment V: Nor shall any person be subject for the same offence to be twice put in jeopardy of life, limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, with out due process of law.
Amendment VI: To be confronted with the witness against him; to have compulsory process for obtaining witnesses in his favor and have assistance of counsel for his defense.
Amendment VIII: nor cruel and unusual punishment inflicted.

2. The Standards of Employee Conduct Policy 3420.11 issued by Office of Government Ethics, the following policy has been ignored by staff.
Page 8: Staff may not use physical violence, threats, intimidation toward inmates or use force. No abusive language or demeaning a inmate.
Page 23 item 9: threatening to inflict bodily harm or injury to another.
Page 23 item 10: Disrespect conduct use of insulting abusive language to others.
Page 25 item 15: Endangering the safety or causing injury to inmate thru carelessness.
Page 28 item 25: Physical abuse of inmate.
Page 30 item 33: Failure to report to management violation of contact with inmate.
Page 30 item 34: Falsification misstatement or concealment of facts connected w/investigation or proceeding.
Page 31 item 35: Refusal to cooperate w.US Gov. inquiry or investigation, attempting to influence others involved.
Page 32 item 37: Dishonest and disgraceful conduct
Page 37 item 56: Failure to report violation of standard of conduct, retaliation, discrimination against person making report.

3. ADA Amendments Act 2008 PL110-325(S3406)
An Act to restore the intent and protection of Americans with Disabilities Act 1990. To carry out the ADA's objectives of providing a clear and comprehensive national mandate for the elimination of discrimination and clear, strong, consistent, enforceable standards. ADA is intended to ensure equal protection of rights of all persons with disabilities, including prisoners
with disabilities have the means with which to protect their rights.
Disability means:
    a) A Physical or mental impairment that substantially limits one or more major life activities or such individual;
    b) a record of such an impairment; or
    c) being regarded as having such an impairment

4. The Americans with Disability Act and Prisoners
    (a) section 504 of rehabilitation Act, 29 U.S.C. 794.
    (b) 28CFR15.152(a)
    (c) 42 USC 12132
Article 13 of the convention says that state parties shall ensure effective access to justice for persons with disabilities on an equal basis with others, including through the provision of procedural accommodations, in order, to facilitate their effective role as direct and direct participants, including witnesses, in all legal proceedings including at investigative and other preliminary stage.
    a) Article 14: No State can deny to any person within its jurisdiction the equal protection of the laws.

P. 109

## V.     Relief

State briefly and exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.

See Attach what I want the Court to do for me

Signed this 3 day of March , 20 18 .

_____
Signature of Plaintiff or Plaintiffs

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on March 3rd 2018 .
            (Date)

_____
Signature of Plaintiff

5

TRULINCS 56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT: page 8
DATE: 03/06/2018 06:34:17 PM

Prayer for Relief:

Wherefore, Plaintiff Johnson, respectfully prays that this court enter Judgment granting Plaintiff Johnson:

I.      A Declaration that the acts and omissions described herein violated plaintiff's US Constitution Rights, (ADA) American's and Prisoner's with Disability Act, Office of Government Ethics, Universal Declarations of Human and Women Rights, International Laws, The American Declaration on the Rights and Duties of Men and laws in the United States. Plaintiff Johnson is seeking damages under Section 1983, Bivens 403 US 388(1971), Federal Tort Claims Act and any other relief the courts see fit.

II.      Plaintiff has no plan, adequate or completed remedy at law to redress the wrong described herein above and below. Plaintiff has been in constant fear and under emotional and mental distress. Plaintiff is afraid of more retaliation and discrimination of her disabilities. Plaintiff's feel this misconduct will continue under of color of State and or Federal Law and BOP Policy.  Plaintiff feels she will continue to be irreparably harmed and injured by conduct of the Defendants unless this court grants relief the Plaintiff seeks:

    a) Requesting an appointed attorney
    b) Jury Trial on all complaints triable by Jury
    c) Plaintiff's cost in this suit paid by Defendants
    d) All legal fees paid by Defendants
    e) Plaintiff seeks,compensatory,punitive damages,and anything additional relief court deem just, proper and equitable.
    f) Retaliation stopped
    g) Physiological and mental Abuse stopped
    h) Discrimination of mental health, ethnic and racial abuse stopped
    i) removal of incident report, damages, false, slander, malice and negative items to BOP Filed reversed
    j) negligence of medical care stopped
    k) stress, duress and coercion stopped
    l) no more cruel and unusual punishment for falsified incident reports stopped
    m) interference with practicing Buddhist Religious, prayer and meditation stopped
    n) Intentional infliction of emotional pain stopped
    o) good time given back to Plaintiff which was taken through fraud
    p) accept the Blackstone Paralegal Course with 97.25 honors added to the BOP Sentry System
    q) no transfer to the county jail or other jails for falsified incident reports to inflict abuse and retaliation
    r) removal of GED UNSATISFACTORY from BOP Sentry file
    s) Report showing all FRP payment have gone to the appropriate court for payment
    t) lower of FRP payment from $181.00 to lower amount
    u) earlier release under Second Chance Act mandated by Congress for non medical and mental health offered at Alderson, Home Confinement November 2018 and Good time date is May 2019.
    v) changes in policy to ensure other inmates with mental and health issues will not go through the pain and suffering Plaintiff went through at Alderson Federal Prison CAMP (FPC)
    w) Give Government Funds back to Government that was used for Special Ed and GED under Plaintiff Johnson's name.

III.)   Plaintiff is asking courts to grant Damages from each Defendant in their Official and Individual Capacity.
1. Warden:          David Wilson Official Capacity $300,000.00 and Individual Capacity $300,000.00
2. Old Warden:      Barbara Rickard Official Capacity $50,000.00 and individual Capacity $50,000.00
3. Assistant Warden:      Maria Arviza Official Capacity $100,000.00 and Individual Capacity $100,000.00
4. Sect. of Warden & Admins.Remedy Coordinator: Wickline Official Capacity $200,000.00 individual Capacity $200,000.00
5. Case Manager:       Walter Ray Official Capacity $500,000.00 and Individual Capacity $500,000.00
6. Guard/Counselor:      C. Ambler Official Capacity $100,000.00 and individual Capacity $100,000.00
7. Unit Manager/Chairwoman UDC: R. Harvey Official Capacity $200,000.00 and Individual Capacity $200,000.00
8. Case Manager/UDC:       S. Trainum Official Capacity $200,000.00 and Individual Capacity $200,000.00
9. Officer Lieutenant:      D. Kelley Official Capacity $200,000.00 and Individual Capacity $200,000.00
10. Supervisor Education:      Dorian Dickerson Official Capacity $500,000.00 and Individual Capacity $500,000.00
11. Education Teacher:       Heather Spradlin Official Capacity $400,000.00 and Individual Capacity $400,000.00

TRULINCS  56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

--------------------------------------------------------------------------------

12. Education Teacher:       M. McCabe Official Capacity $250,000.00 and Individual Capacity $250,000.00
13. Chief Psychologist:       Christine Anthony Official Capacity $1,000,000.00 and Individual Capacity $1,000,000.00
14. Director HSU Mec Dana Benick k Official Capacity $250,000.00 and Individual Capacity $250,000.00
15. Education Teac Kimberly Bailey Official Capacity $200,000.00 and Individual Capacity $200,000.00
16. Captain:       Jerrod Grimes Official Capacity $350,000.00 and Individual $350,000.00
17. Congressman:       Evan Jenkins Official Capacity $250,000.00 and Individual $250,000.00
18. Regional Director:       J.F. Caraway Official Capacity $250,000.00 and Individual $250,000.00
19. National Inmate Appeal:   Ian Connors Official Capacity $300,000.00 and Individual $300,000.00
20. United States:       United States $10,000,000.00

Plaintiff is also asking the court to grant Punitive Damages of 1,000,000.00 from each Defendant and $1,000,000.00 Pain and Suffering from each Defendant(s) and any other additional relief this court deems just, proper and equitable.

TRULINCS  56613037 - JOHNSON, CARMEN - Unit: ALD-A-A

---------------------------------------------------------------------------

FROM: 56613037
TO: Smith, Karen
SUBJECT:
DATE: 03/07/2018 05:06:24 PM

Carmen Johnson
Reg. No 56613-037
Inmate mail
FPC Alderson
1 Glen Ray Road Box A
Alderson, WV 24910

CERTIFICATE OF SERVICE

I hereby certify on March η 2018, I, Carmen Johnson emailed and mailed a copy of this Bivens to Karen Smith for safe keeping and proof of delivery.

I hereby certify on March η, 2018, I, Carmen Johnson delivered by US mail postal box at Alderson Federal Prison Camp.

Clerk of Clerk
United States District Court
Elizabeth Kee Federal Building
601 Federal Street room 2303
Bluefield, WV 24701

Mailed out By Andrea Armentrout on March 7, 2018
Dropped in Mail Box at Alderson Federal Prison

08315 - 087 A1 24
alderson Federal prison camp
P.O. Box A Glen Ray Rd
Alderson WV 24910



<>08315-087<>
U.S District Court
601 Federal st RM.2303
Attn: Clerk of Court
Bluefield, WV 24701
United States

U.S. MARSHALS SERVICE
X-RAYED

By _____

UNITED STATES
POSTAL SERVICE

**P**

**Retail**

US POSTAGE PAID
**$0.00**

Origin: 24910
Destination: 24701
0 Lb 13.00 Oz
Mar 08, 18
6500780382-08

1006

PRIORITY MAIL 2-Day ®

Expected Delivery Day: 03/10/2018    C001

USPS TRACKING NUMBER

9605 5104 0672 8067 1565 97