**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **CARMEN JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:18-00416** |
| | ) | |
| **DAVID WILSON,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On March 9, 2018, Plaintiff filed her Application to Proceed Without Prepayment of Fees

or Costs and a Complaint for alleged violations of her constitutional and civil rights pursuant to

Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct.

1999, 24 L.Ed.2d 619 (1971).[1] (Document Nos. 1 and 3.) Plaintiff names the following as

Defendants: (1) David Wilson, Warden; (2) Jerrod Grimes, Captain; (3) Barbara Rickard, Former

Warden; (4) Maria Arviza, Assistant Warden; (5) Ms. Wickline, Secretary of Warden; (6) Walter

Ray, Case Manager; (7) C. Ambler, Correctional Guard/Counselor; (8) R. Harvey, Case

Manager/Unit Discipline Committee (UDC); (9) S. Trainum, Case Manager/Unit Discipline

Committee (UDC); (10) D. Kelley, Lieutenant; (11) Dorian Dickerson, Supervisor of Education;

(12) M. McCabe, Teacher of Education; (13) Heather Spradling, Teacher of Education; (14)

Christine Anthony, Chief Psychologist; (15) Dana Renick, Director of HSU; (16) Kimberly

Bailey, Teacher/Lieutenant; (17) United States of America; (18) Evan Jenkins, Congressman;

(19) J.F. Caraway, Regional Director; and (20) Ian Connors, Administrator. (Document No. 3,

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a
less stringent standard than if they were prepared by a lawyer and therefore, they are construed

pp. 2 - 4.) In her Complaint, Plaintiff alleges that Defendants have violated her constitutional rights. (Id.) As to Warden Wilson, Plaintiff alleges that he subjected her to verbal abuse in violation of her Eighth Amendment right against cruel and unusual punishment. (Id., p. 7.) Plaintiff alleges that on January 23, 2017, Defendant Wilson "yell[ed] at Plaintiff in front of everyone stating that [she was] a criminal." (Id.) Plaintiff further states that Defendant Wilson stated "a Federal Judge and jury found you guilty on Federal crime and now you are in my Federal Prison doing Federal time, you were a professional out there but to me, you are a junkie or a thief in my prison." (Id.) Plaintiff claims she was "humiliated and walked away crying." (Id.) Next, Plaintiff alleges that Defendant Wilson acted with deliberate indifference to her need for mental health treatment because he denied her BP-9s. (Id.) Plaintiff concludes that Defendant Wilson was "grossly negligent in supervising subordinates who committed the wrongful acts." (Id.)

Concerning Former Warden Rickard, Plaintiff alleges that she acted with deliberate indifference to Plaintiff's need for mental help. (Id.) Plaintiff explains that she sent a "cop out" to Defendant Rickard on May 31, 2016, requesting "mental health treatment for not feeling well." (Id.) Although Plaintiff acknowledges that Defendant Rickard "notified Defendants of mental help needed," Plaintiff claims that Defendant Rickard "failed to act reasonably to get the mental health help Plaintiff's requested." (Id.)

Concerning Assistant Warden Arviza, Plaintiff alleges that Defendant Arviza violated her constitutional rights by denying Plaintiff's BP-9 concerning claims of fraud, abuse, and assault in the Education Department. (Id.) Plaintiff asserts that Defendant Arviza should have started an

---

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

investigation concerning Plaintiff's claims. (Id.)

As to Defendant Wickline, Plaintiff alleges Defendant Wickline was "grossly negligent and deliberately indifferent by violating Plaintiff's right to due process." (Id., pp. 7 and 10.) Plaintiff alleges that Defendant Wickline mishandled grievances by improperly signing and rejecting BP-9s. (Id.) Plaintiff further alleges that Defendant Wickline failed to conduct investigations before denying BP-9s. (Id.)

Concerning Defendant Ray, Plaintiff claims Defendant Ray acted with deliberate indifference to her mental condition. (Id., p. 12.) Plaintiff claims that she advised Defendant Ray that "she was being called crazy, retarded, and a nigger at the CDR work assignment." (Id.) Despite being advised of the foregoing, Plaintiff complains that Defendant Ray refused to change her work assignment. (Id.) Plaintiff states that after she again requested a change in her work assignment, she was required "to scrub three 10 feet tall freezers outside in 95 degree weather and scrub the lobby walls and floors with a small brush." (Id.) Plaintiff claims that while she was completing the above work assignment, other inmates "laughed and recited house nigger." (Id.) Based upon the foregoing, Plaintiff concludes that Defendant Ray acted with deliberate indifference to her mental health. (Id.)

As to Defendant Ambler, Plaintiff claims he violated her constitutional rights by failing to provide a "sensitive BP form" and instructions for completing the grievance process. (Id., p. 17.) Plaintiff states that when she requested a "sensitive BP form" from Defendant Ambler, he informed her he had "never heard of a Sensitive BP form and he called someone on the phone, stated Plaintiff's full name, and was instructed to tell [her] there was no sensitive process." (Id.) Plaintiff states that she later "took the program statement instructions to Defendant showing that

there is in fact a BP Sensitive for abuse or retaliation by staff." (Id.) Next, Plaintiff alleges that Defendant Ambler refused to move her to a lower bunk during her placement at the "bus stop." (Id.) Plaintiff alleges that there are "fluorescent cancer causing lights" at the "bus stop" and her top bunk placed her only 3 feet away from the lights. (Id.) Plaintiff contends that even though she notified Defendant Ambler that the lights were causing burns to her skin, he refused to move her to a lower bunk. (Id.) Plaintiff complains she was required to endure the hot lights for 32 days. (Id.)

Concerning Defendants Harvey and Trainum, Plaintiff alleges that both violated his constitutional rights during disciplinary proceedings. (Id., p. 20.) Plaintiff contends that Defendants Harvey and Trainum were members of the Unit Discipline Committee. (Id.) Plaintiff states that she fainted 30 minutes prior to her disciplinary hearing and Defendants Harvey and Trainum denied her a continuance of the hearing. (Id.) Plaintiff further argues that Defendant Harvey and Trainum erred in determining that she violated Prohibited Act Codes 306 (Refusal to Program) and 307 (Refusing to Obey an Order). (Id.) Specifically, Plaintiff complains that Defendants Harvey and Trainum failed to give proper weight to her favorable witnesses' statements. (Id.)

As to Defendant Kelley, Plaintiff alleges that he violated her constitutional rights by failing to investigate her claim that she was held "hostage behind a closed blocked door" by three members of the Education Department. (Id., p. 21.) Plaintiff argues that if Defendant Kelley would have properly investigated the Incident Report prepared by Ms. Dickerson of the Education Department, he would have determined that Plaintiff did not disobey a direct order and did not refuse to turn in work assignments. (Id.) Plaintiff argues that her constitutional rights

were violated because she was found to have violated Prohibited Act Codes 306 and 307 as charged in the Incident Report. (Id.)

As to Defendants Dickerson, McCabe, and Spadlin, Plaintiff first alleges that Defendants committed fraud by misappropriation of U.S. Government funds. (Id., p. 23.) Plaintiff explains that she was improperly required to attend a G.E.D. program because already had her high school diploma. (Id.) Plaintiff states that the foregoing "destroyed Plaintiff's reputation within her BOP file." (Id.) Plaintiff further alleges that Defendants McCabe and Spadlin used bullying tactics, intimidation, and threats in attempting to force her to attend the education program. (Id.) Finally, Plaintiff claims that Defendant Spadlin caused her humiliation and mental stress by "trying to force Plaintiff to sign up for a Special Education class. (Id.) As to Defendant Bailey, Plaintiff alleges she failed to intervene when Defendants McCabe and Spradlin "held [her] hostage trying to get [Plaintiff] to sign papers of a class and test [she] never took." (Id., p. 35.)

As to Defendant Anthony, Plaintiff alleges that she violated Plaintiff's constitutional rights by acting with deliberate indifference to Plaintiff's need for mental health treatment. (Id., p. 32.) Plaintiff alleges that Defendant Anthony continuously denied her mental health treatment, which caused Plaintiff to be placed on suicide watch for five days. (Id.) Plaintiff contends that Defendant Anthony "treated [her] abusively on suicide watch by not letting Plaintiff shower, [using] abusive tones, reminding Plaintiff nothing was going to change for her, and having no consideration or compassion for Plaintiff's mental and emotional state." (Id.) Plaintiff states that Defendant Anthony "constantly humiliated" Plaintiff because she "would not come out of the suicide room." (Id.) Plaintiff complains that Defendant Anthony refused to provide her with water in the "suicide room" and instructed Plaintiff to "leave the suicide room if you are thirsty."

5

(Id.) Plaintiff further alleges that Defendant Anthony discrimination against Plaintiff because of her race. (Id.) Plaintiff claims that Defendant Anthony allowed a white inmate that was on suicide watch to shower and provided water for the inmate to drink. (Id.) Plaintiff complains that she was denied both during her placement in the "suicide room." (Id.)

Concerning Defendant Renick, Plaintiff alleges that Defendant violated her constitutional rights by denying her appropriate medical treatment on January 20, 2017. (Id., p. 33.) Plaintiff notes that Defendant Renick is the Director of HSU Medical and "instructs medical teams about clinic appointments, calls outs, physical exams, chronic care, and the daily running and administration of HSU medical." (Id.) Plaintiff alleges that she had been sick for weeks with an "unusual virus" and the commissary sold out of the medication she was using as treatment. (Id.) Plaintiff explains that she was suffering from extreme dehydration, dizziness, vomiting, and diarrhea. (Id.) Plaintiff complains that when she reported to sick call in the morning hours of January 20, 2017, the nurse inquired as to why Plaintiff did not report to sick call at 6:45 a.m. and refused to treat Plaintiff. (Id.) Plaintiff states that she fainted due to her illness as she was returning to her housing unit. (Id.) Plaintiff acknowledges that she was then taken to medical for treatment. (Id.) Plaintiff, however, claims that she was told "there was nothing wrong with [her] and all [her] test came back normal." (Id.) Plaintiff states that medical staff instructed her to "buy what [she] needed from the commissary." (Id.) Plaintiff claims that she informed medical staff that the commissary was sold out of the necessary medications, but staff disregarded her statement by stating that medical staff had not been notified of such by the commissary. (Id.)

Concerning Defendant Grimes, Plaintiff first alleges that he acted improperly in assisting his sister, Defendant Dickerson, in the preparation of the Incident Report against Plaintiff. (Id., p.

36.) Plaintiff further argues that Defendant Grimes would attempt to intimate Plaintiff by the following: (1) "walk[ing] around the range at night with a ski mask on and when Defendant would get to the cube Plaintiff was in, Defendant would walk really slow looking up at Plaintiff;" and (2) "Every time Defendant Grimes would see Plaintiff on the compound, he would stare at her until she was out of sight." (Id.) Plaintiff states that Defendant Grimes' actions were "creepy and scary." (Id.) Finally, Plaintiff alleges that Defendant Grimes was a Captain and was "grossly negligent with supervision of his subordinates." (Id.)

Concerning the United States, Plaintiff alleges that the United States is responsible for the violation of her constitutional rights by the foregoing Defendants. (Id., p. 37.) As to Defendant Congressman Jenkins, Plaintiff alleges that he violated her constitutional rights by failing to conduct a proper investigation of her claims of against the above Defendants. (Id.) Plaintiff further indicates that Defendant Congressman Jenkins failed to enact policies that would stop further abuse. (Id.) Thus, Plaintiff concludes that Defendant Congressman Jenkins "knowingly inflicted more constitutional injuries of Plaintiff" by failing to act on her behalf. (Id.)

As Defendant Caraway, Plaintiff alleges that Defendant Caraway participated directly in the violation of Plaintiff's constitutional rights. (Id., pp. 37 and 42.) Plaintiff explains that as the Regional Director of the Atlantic Regional Appeals, Defendant Caraway signed off on the denial of Plaintiff's BP-10s. (Id.) Plaintiff appears to argue that Defendant Caraway should have conducted an investigation and granted Plaintiff relief. (Id.)

Concerning Defendant Connors, Plaintiff alleges that Defendant Connors violated Plaintiff's constitutional rights by failing to rectify the alleged misconduct by Defendants. (Id., p. 42.) Plaintiff explains that as the Administrator of the National Appeals, Defendant Connors

improperly denied her BP-11s without conducting an investigation. (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of her administrative remedies (Document No. 3, pp. 8, 11, 18 – 19, 26 – 28, 31, 40 – 41,43 – 46); (2) A copy of a Memorandum for All Bureau Inmate regarding Suicide Prevention (Id., p. 13.); (3) A copy of Plaintiff's Affidavit (Id., pp. 14 - 15.); (4) A copy of an article entitled "PTC Institute Shuts Doors Owners Accused of Misusing Funds" (Id., p. 16.); (5) A copy of Plaintiff's Incident Report dated January 18, 2017 (Id., p. 22.); (6) A copy of Plaintiff's Student Transcript and Certificate from Blackstone Career Institute (Id., pp. 29 - 30.); and (7) A copy of correspondences from Congressman Jenkins (Id., pp. 38 – 39.).

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a person seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim

which would entitle her to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## DISCUSSION

### 1.    Improper Defendant:

Plaintiff is seeking relief for alleged violations of her constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reingold v. Evers, 187 F.3d 348,

355 n. 7 (4th Cir. 1999). Plaintiff improperly names the United States as a Defendant under Bivens. Plaintiff's Bivens action against the United States should therefore be dismissed.

2. **Administrative Remedy Process:**

In her Complaint, Plaintiff appears to allege that Defendants Rickard, Arviza, Wickline, Ambler, Caraway, and Connors violated her constitutional rights by rendering the BOP's Administrative Remedy process futile. (Document No. 3, pp. 7, 10, 17, 42.) Specifically, Plaintiff complains that Defendants violated her constitutional rights by mishandling her grievances, failing to investigate her complaints, and failing to properly grant her relief. (Id.)

Federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); also see Booker v. South Carolina Dept. of Corrections, 855 F.3d 533 (4th Cir. 2017)("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.") A BOP employee's refusal to respond to an inmate's administrative complaint, or conduct that otherwise prevents an inmate from pursuing such complaints through the administrative remedy process, making the process unavailable, is not actionable under Bivens. Rather, the legal consequence of conduct which makes the administrative remedy process unavailable to inmates is that the door

to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies. Although an inmate does not have a constitutional entitlement to or a due process interest in accessing a grievance procedure, an inmate does have a First Amendment right to be free from retaliation when they do file a grievance. Booker, 855 F.3d at 542; also see Martin v. Duffy, 858 F.3d 239 (4th Cir. June 1, 2017)("this Court held that an inmate's 'right to file a prison grievance free from retaliation was clearly established under the First Amendment' at least as far back in time as 2010")(citing Booker, 855 F.3d at 545). There, however, is no allegation that Defendants retaliated against Plaintiff for filing administrative remedies. Accordingly, the undersigned finds that Plaintiff's claim that Defendants Rickard, Arviza, Wickline, Ambler, Caraway, and Connors violated her constitutional rights by rendering the BOP's Administrative Remedy process futile should be dismissed.

**3.     Conditions of Confinement:**

As a general matter, the Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976,

128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.")(quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard, and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself;

absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [her] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

In addition to the above, Plaintiff's claim are governed by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(e). The PLRA expressly prohibits the filing of civil actions by

prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. See Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002); Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997); Zehner v. Trigg, 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir. 2001)(quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)(internal quotation marks omitted)). In light of the foregoing governing standards and principles, the undersigned will consider Plaintiff's claims of verbal abuse and exposure to excessive light.

A.    *Verbal Abuse and Harassment.*

Plaintiff contends that Defendants Wilson, Dickerson, McCabe, and Spadlin violated her constitutional rights by subjecting her to verbal abuse or harassment. (Document No. 3, pp. 7, 23.) As to Defendant Ray, Plaintiff alleges that Defendant Ray failed to protect Plaintiff from verbal abuse from other inmates. (Id., p. 12.) As to Defendant Bailey, Plaintiff alleges that she failed to intervene to stop the verbal harassment from Defendants Dickerson, McCabe, and Spadlin. (Id., p. 35.) Plaintiff states that the foregoing constitutional cruel and unusual

punishment. (Id.)

Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim of failure to protect. In order to establish a claim of failure to protect, "the inmate must show that she is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. First, Plaintiff fails to allege that she was incarcerated under conditions imposing a substantial risk of serious harm. Plaintiff does not claim that she was assaulted or that her life was threatened by other inmates. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to her. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that Defendants Ray and Bailey knew of and disregarded an excessive risk to her health or safety. Furthermore, Plaintiff does not indicate that she suffered any serious injury as a result of Defendants Ray and Bailey's failure to stop the alleged verbal abuse or harassment. See Henslee v. Lewis, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); Langston v. Fleming, 38 F.3d 1213 (4th Cir. 1994)(unpublished opinion)(Prisoner failed to state a claim where he merely alleged that guards endangered his life by informing other inmates that he was charged with rape). As to that Defendants Wilson, Dickerson, McCabe, and Spadlin, Plaintiff alleges that Defendants subjected her to verbal abuse and humiliation. The verbal harassment or verbal abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson,

832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff's claims of verbal abuse/harassment and failure to protect from verbal abuse/harassment fail to state a cognizable claim under the Eighth Amendment for which relief can be granted.

### B.    *Continuous Lighting:*

Plaintiff contends that the conditions of her confinement were cruel and unusual based upon her exposure to continuous lighting at the "bus stop" for 32 days. (Document No. 3, p. 17.) Plaintiff claims that she advised Defendant Ambler that the continuous, fluorescent light was causing burns to her skin. (Id.) Plaintiff further appears to complain that she was denied sleep because there was continuous lighting at the "bus stop" and she was placed on a top bunk, approximately three feet from the lights. (Id.)

Although sleep constitutes a basic human need, Plaintiff fails to demonstrate an "extreme deprivation." See Murry v. Edwards County Sheriff's Dep't., 248 Fed.Appx. 993, 998 - 99 (10th Cir. Oct. 1, 2007)(finding that occasional disturbance of sleep by continual lighting, leading sometimes to mild physical symptoms, was not sufficiently serious to result in an Eighth Amendment violation); Nikirk v. Rodriquez, 129 Fed.Appx. 103, 104 (5th Cir. Apr. 20, 2005)(holding that the District Court properly dismissed inmate's claim as frivolous where inmate alleged an Eighth Amendment violation based upon a denial of sleep due to nighttime

head-counts where inmate failed to allege serious physical or psychological damage); Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(stating that "sleep undoubtedly counts as one of life's basic needs); Hunnewell v. Warden, 19 F.3d 7 (1st Cir. 1994)(*unpublished decision*)(holding that inmate's claim that "cell lights are on during the night making it difficult to sleep" and "the ventilation system blows dust and fibers into his cell causing him to have headaches and bloody noses" was insufficient to state a claim under the Eighth Amendment); Ajaj v. United States, 479 F.Supp.2d 501, 512 (D.S.C. 2007)(citing Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994)("Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare."); Spivey v. Doria, 1994 WL 97756, * 11 (N.D.Ill.)(finding no constitutional violation where inmate alleged that the noise level caused him to lose sleep and made him irritable; reasoning that "federal courts are not the forums to determine proper lighting and noise levels in jails"); Hutching v. Corum, 501 F.Supp. 1276, 1293(D.Mo. 1980)(finding no constitutional violation despite all-night illumination and high noise levels at night, where inmates failed to allege "evidence indicating that the inmates are unable to sleep at all or that they have developed psychological or physiological problems). To demonstrate an "extreme deprivation," a plaintiff must allege facts of a serious or significant physical or emotional injury. Strickler, 989 F.2d at 1381(an inmate "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."); see also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993)(prisoner's Eighth Amendment claim should be dismissed if he fails to allege a serious physical or mental injury resulting from the conditions of confinement). Plaintiff alleges that the challenged condition caused her to suffer skin burns and mental distress. Such allegations,

however, do not establish conditions that arise to the level of a serious or significant injury. Plaintiff alleges her exposure to the florescent light caused "blotches" similar to a sunburn and resulted in her face being darker than her neck. (Document No. 3, p. 17.) Thus, Plaintiff fails to allege facts supporting a serious or significant injury. See Cook v. United States, 2012 WL 261170, * 5 (N.D.W.Va. Jan. 30, 2012)(allegations of a minor burns did not constitute a serious or significant injury); also see White, 1 F.3d at 269(A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain; also see Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990)("A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). Further, Plaintiff's statement that the florescent lights are "cancer causing" is conclusory. Plaintiff does not allege that her exposure to the light caused her to develop cancer. The record reveals that Plaintiff sought medical treatment for her alleged burns and was merely instructed to apply over-the-counter, unscented lotion. (Document No. 3, p. 19.) Although Plaintiff alleges that the continuous lighting caused her mental health issues, Plaintiff fails to allege facts establishing that she suffered serious or significant mental injury. See Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)(finding plaintiff failed to alleged sufficiently serious injuries where plaintiff complained of breathing problems, chest pains, dizziness, sinus problems, headaches, and loss of energy); DePaola v. Ray, 2013 WL 4451236, * 10 (W.D.Va. July 22, 2013)(finding allegations of humiliation, nausea, and psychological trauma were not sufficiently serious injuries); Wade v.

Robinson, 2006 WL 1700908 (W.D.Va. June 16, 2006)(finding plaintiff's allegations of headaches, gastrointestinal distress, and exacerbation of allergies and asthma were not sufficiently serious injury). Thus, Plaintiff's allegations do to support a finding that Defendant Ambler knew of and disregarded an excessive risk to Plaintiff's health and safety. Further, Plaintiff's alleged injuries do not constitute more than a *de minimis* injury. See Chatham v. Adcock, 334 Fed.Appx. 281, 284 (11th Cir. 2009)(finding that a plaintiff's claims of anxiousness, nausea, nightmares, hallucinations, and increase in blood pressure were not enough to satisfy the Section 1997e(e) physical injury requirement); Alexander v. Tippah County, Miss., 351 F.3d 626, 631-32 (5th Cir. 2003)(finding that Section 1997e(e) precluded the plaintiffs from recovering for their emotional and mental injuries where the only physical injuries they had suffered were nausea and vomiting); Davis v. District of Columbia, 158 F.3d 1342, 1349 (D.C. Cir. 1998)(weight loss, appetite loss, and insomnia caused by emotional distress is not a "physical injury" for purposes of the PLRA); Casey v. Brockley, 2015 WL 8008728, * 9 (N.D.N.Y. Nov. 9, 2015)(stating that "numerous courts have held-correctly . . . that physical manifestations of emotional injuries (e.g. anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not 'physical injures' for purposes of the PLRA"); Lewis v. Cox, 2011 WL 3106929, * 1(W.D.La. July 25, 2011)(finding that "[n]ausea and lack of sleep are mere symptoms of the alleged emotional distress he suffered and do not, in and of themselves, constitute the type of physical injury required under the PLRA"); Grainger v. Federal Bureau of Prisons, 2009 WL 47127, * 3 (S.D.Tx. Jan. 6, 2009)(finding that plaintiff's complaints of anxiety, stress, emotional distress, loss of appetite, headaches and sleeplessness did not constitute more than a *de minimis* injury); May v. Donneli,

2009 WL 3049613, * 3 (N.D.N.Y. Sept. 18, 2009)(finding that weight loss and an increase in blood pressure did not constitute more than a *de minimis* physical injury); <u>Mitchell v. Horn</u>, 2005 WL 1060658, * 1 (E.D.Pa. May 5, 2005)(finding severe headaches, severe stomach aches, severe dehydration, weight loss, and itching were *de minimis*); <u>Cain v. Virginia</u>, 982 F.Supp. 1132, 1135 n. 3 (E.D.Va. 1997)(depression and painful headaches caused by emotional distress not "physical injury" for purposes of the PLRA). Viewing the facts in a light most favorable to Plaintiff, the undersigned finds that Plaintiff's Eighth Amendment claim should be dismissed because she fails to allege a serious physical or mental injury resulting from the challenged condition of confinement. Accordingly, the undersigned respectfully recommends that Plaintiff's claim based upon the continuous lighting at the "bus stop" be dismissed.

4.     **Challenge Concerning Plaintiff's Disciplinary Hearing:**

Plaintiff appears to allege that her due process rights were violated because she was improperly convicted during prison disciplinary proceedings of violating Prohibited Act Codes 306 (Refusal to Program) and 307 (Refusing to Obey an Order). (Document No. 3, p. 20.) Plaintiff alleges that Defendants Harvey and Trainum erred in failing to grant her a continuance because she fainted 30 minutes prior to her hearing. (<u>Id.</u>) Plaintiff further alleges that Defendants Harvey and Trainum erred by finding that Plaintiff was guilty of violating Prohibited Act Codes 306 and 307. (<u>Id.</u>) Specifically, Plaintiff states that Defendants Harvey and Trainum erred by failing to give proper weight to her favorable witnesses' statements. (<u>Id.</u>) As to Defendant Kelley, Plaintiff alleges that if Defendant Kelley would have properly investigated the Incident Report prepared by Ms. Dickerson of the Education Department, he would have determined that

20

Plaintiff did not disobey a direct order and did not refuse to turn in work assignments.[2] (Id., p. 21.) As to Defendant Grimes, Plaintiff alleges that he acted improperly in assisting Defendant Dickerson prepare the Incident Report. (Id., p. 36.) Therefore, Plaintiff argues that her constitutional rights were violated because she was found to have violated Prohibited Act Codes 306 and 307 as charged in the Incident Report. (Id.)

In Heck v. Humphrey, 512 U.S.477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) the Supreme Court established the following test to determine whether a prisoner's claim for violation of due process in the context of a criminal proceeding is cognizable under 42 U.S.C. § 1983.

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.   A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck, 512 U.S. at 487, 114 S.Ct. at 2372-73; see also Poston v. Shappert, 222 Fed.Appx. 301 (4th Cir. 2007)(applying *Heck* rationale to bar claims for damages under Section 1983 and *Bivens*);

---

[2] Even if the charges in the Incident Report were incorrect or false, Plaintiff does not have a right to be free from disciplinary reports. *See Bates v. Saad*, 2018 WL 1287416, * 5 (N.D.W.Va. March 13, 2018)(citing *Lewis v. Viton*, 2007 WL 2362587, * 9 (D.N.J. Aug. 14, 2007)("The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.").

Messer v. Kelly, 129 F.3d 1259 (4th Cir. 1997)(stating that the rationale in *Heck* applies in *Bivens* actions).

The Supreme Court applied the <u>Heck</u> rule to prison disciplinary proceedings in <u>Edwards v. Balisok</u>, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), when it held that, in the context of prison disciplinary hearings that result in the loss of good-time credits, challenges to prison hearing procedures which necessarily imply the invalidity of the judgment must be pursued in *habeas corpus*, not in a Section 1983 action. In <u>Balisok</u>, the inmate alleged that he was denied the opportunity to put on a defense due to the deceit and bias of the hearing officer. The Court held "that [Balisok's] claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." <u>Edwards</u>, 520 U.S. at 648, 117 S.Ct. at 1589. Accordingly, the undersigned proposes that the District Court find (1) that Plaintiff alleges that she was denied due process in connection with her prison disciplinary hearing, (2) that her contentions imply the invalidity of the disciplinary hearings and the review and appeal process, (3) that there has been no invalidation of the disciplinary hearing, and (4) that her claim is therefore barred.[3]

---

[3]  The undersigned further notes that prisoner disciplinary proceedings are not part of criminal prosecution. Thus, the full panoply of rights due a defendant in criminal proceedings do not apply in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)("there must be mutual accommodation between institutional needs and objective and the provisions of the Constitution"). Inmates, however, are entitled to the following procedural safeguards during disciplinary hearings: (1) advance written notice to the inmate of the claimed violation; (2) an opportunity for the inmate to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finders of the evidence relied on and the reasons for the disciplinary action. *Id.*, at 563 - 66. If Plaintiff believes she was denied any of the above procedural safeguards, Plaintiff should file an

5.    <u>**No Constitutional Violation as to the Literacy Program**</u>:

As to Defendants Dickerson, McCabe, and Spadlin, Plaintiff alleges she was improperly required to attend a G.E.D. program because she already had her high school diploma. (Document No. 3, p. 23.) Plaintiff explains that although she obtained her high school diploma, she has been unable to provide verification of such due to the closure of the high school. (Id.) Plaintiff further alleges that the foregoing resulted in Defendants Dickerson, McCabe, and Spadlin committing fraud by misappropriation of U.S. Government funds. (Id.)

The Attorney General requires the BOP to conduct adult literacy programs in federal prisons for the benefit of inmates who are functionally illiterate. See 18 U.S.C. § 3624(f); 28 C.F.R. §§ 544.70 - 75. Section 544.70 requires that inmates attend adult literacy programs for a minimum of 240 instructional hours or until a GED is achieved, whichever occurs first. 28 C.F.R. § 544.70.[4] Inmates are required to participate in the adult literacy program for 240 instructional hours, or be subject to disciplinary sanctions. 28 C.F.R. § 544.75.[5] The BOP offers good time credit as an encouragement for an inmate to successfully complete the literacy program. 28 C.F.R. §§ 523.20 and 544.73.[6]

_____

Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody.

[4]   Section 544.70 provides that "an inmate confined in a federal institution who does not have a verified General Educational Development (GED) credential or high school diploma is required to attend an adult literacy program for a minimum of 240 instructional hours or until a GED is achieved, whichever occurs first." 28 C.F.R. § 544.70.

[5] Section 544.75 states that "staff may take disciplinary action against an inmate lacking a GED credential or high school diploma if that inmate refuses to enroll in, and to complete, the mandatory 240 instructional hours of the literacy program."

[6] Section 544.73(c) states that "[a]t the end of 240 instructional hours . . . the unit team during scheduled program review sessions shall meet with the inmate to encourage continued

Plaintiff appears to allege that her constitutional rights were violated when Defendants failed to recognize that her high school diploma as an acceptable equivalent to completing the BOP literacy program. The Fifth Amendment protects against deprivations of life, liberty, or property by the federal government. See U.S. Const. amend. V. In order to prevail on a due process claim, a plaintiff must show that the government has interfered with a protected liberty or property interest and that the procedures that led to the deprivation were constitutionally sufficient. Thus, plaintiff must first demonstrate that she had a protected liberty interest. The fact of conviction and imprisonment implies the inmate's transfer of her liberty to prison officials, who in their broad discretion, administer her sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which she has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the

---

participation in the literacy program until the inmate earns a GED credential or high school diploma."

24

conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

The undersigned finds that inmates do not have a constitutionally protected right "to remain uneducated." Rutherford v. Hutto, 377 F.Supp. 268, 272 (E.D.Ark. 1974)(stating that "[t]he 'constitutional right to be ignorant' or 'the constitutional right to remain uneducated,' which petitioner postulates, simply does not exist"). Instead of participating in and completing the BOP literacy program, Plaintiff requests that this Court require the BOP to recognize her high school diploma, which she has been unable to obtain verification. The BOP's failure to recognize a diploma without proper verification does not violate an inmate's constitutional rights. See Martin v. O'Brien, 2006 WL 1206582 (E.D.Ky. April 28, 2006), aff'd, 207 Fed.Appx. 587 (6th Cir. 2006)(finding that the BOP did not violate inmate's constitutional rights by refusing to grant inmate an exemption based upon a certificate from a correspondence school, which inmate claimed to be equivalent to a high school diploma). Additionally, it has been recognized that the BOP's literacy program serves a valid penological interest of education and rehabilitation. Burrell v. Gunja, 2001 WL 34713499, at *4 (D.Md. June 8, 2001), aff'd, 22 Fed.Appx. 225 (4th Cir. 2001)(stating that the BOP's requirement that an inmate attend the literacy program does not violate the inmate's constitutional rights because the "literacy program clearly serves the valid penological interests of education and rehabilitation"); also see Mukmuk

v. Commissioner, 529 F.2d 272 (2nd Cir. 1976)(stating that an achievement test requirement for inmates was reasonable in light of the institution's rehabilitation program); Jackson v. McLemore, 523 F.2d 838 (8th Cir. 1975)(finding that an inmate may not be punished because he fails to learn, but he may be required to participate in a literacy program because a state has a sufficient interest in eliminating illiteracy); and Rutherford, 337 F.Supp. at 272 - 73 (finding that a "state has a sufficient interest in eliminating illiteracy among its convicts to justify it in requiring illiterate convicts, including adults, to attend classes"). Furthermore, Plaintiff's claim that the BOP is violating her constitutional rights by preventing her from earning good time credit is without merit. It is well recognized that although a prisoner may have a due process right concerning good-time credit that is taken away, inmates do not have a protected liberty interest in the opportunity to earn good-time credit. Wolff, 418 U.S. at 557, 94 S.Ct. at 2975. Finally, Plaintiff's allegations of fraud and misappropriation of funds fail to state a cognizable constitutional claim. Accordingly, the undersigned finds that Plaintiff's allegations cannot be construed to implicate a constitutional right for the violation of which relief can be granted under Bivens. Plaintiff's above allegations must therefore be dismissed.

**6.    Supervisory Liability:**

Plaintiff alleges that Defendants Wilson and Grimes were "grossly negligent in supervising subordinates." (Document No. 3, pp. 7, 36.)    Plaintiff further alleges that Defendants Wilson, Rickard, Arviza, Wickline, Caraway, and Connors violated her constitutional rights by denying her grievances. (Id., pp. 7, 10, 37, 42.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. at

1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, a plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Slakan, 737 F.2d at 373. A supervisor's mere knowledge of a subordinate's unconstitutional conduct is not enough. Rather, Bivens liability may be imposed upon a supervisor only on the basis of purposeful "violations of his or her supervisory responsibilities." Ashcroft, 556 U.S. at 676, 129 S.Ct. at 1949. Therefore, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Plaintiff's allegations against Defendants Wilson and Grimes are improperly based upon a theory of *respondeat superior*. Plaintiff does not allege facts establishing that Defendants

Wilson or Grimes purposefully violated their supervisory responsibilities. To the contrary, Plaintiff alleges that Defendants Wilson and Grimes were "grossly negligent in supervising subordinates." Next, Plaintiff alleges that Defendants Wilson, Rickard, Arviza, Wickline, Caraway, and Connors violated her constitutional rights in responding to her administrative remedies. Although Plaintiff disputes the correctness of Defendants' responses, Plaintiff has shown no other personal involvement by the foregoing Defendants. The dismissal of a defendant is appropriate where the defendant's sole involvement in an action is related to the administrative remedy process. See Fellove v. Heady, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); Mabry v. Ramirez, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003), aff'd, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). The undersigned therefore finds that Plaintiff has failed to specify any action taken by Defendants Wilson, Grimes, Rickard, Arviza, Wickline, Caraway, and Connors that violated Plaintiff's constitutional rights. Accordingly, Plaintiff has improperly raised her claim against the foregoing Defendants under the doctrine of *respondeat superior* and her above claims should be dismissed.

7.    **Legislative Immunity:**

Plaintiff alleges that Congressman Jenkins violated her constitutional rights by failing to conduct a proper investigation of her claims of against the above Defendants. (Document No. 3, p. 37.) Plaintiff further appears to assert that Congressman Jenkins should have enacted policies to prevent further misconduct by Defendants. (Id.) Plaintiff concludes that Congressman Jenkins "knowingly inflicted more constitutional injuries of Plaintiff" by failing to act on her behalf. (Id.)

Federal legislators have immunity pursuant to the Speech or Debate Clause. U.S. Const. Art. 1, § 6, cl. 1. Absolute immunity "attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bogan v. Scott-Harris, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998)(citations omitted)(local legislators); Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979)(regional legislators); Tenney v. Brandhove, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951)(state legislators). The determination as to whether an action is legislative, turns on the nature of the act, and not the motive or intent of the official performing it. Bogan, 523 U.S. at 54, 118 S.Ct. at 966. The Supreme Court has explained that absolute immunity "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation, as to motives." Tenney, 341 U.S. at 377, 71 S.Ct. at 788. Immunity "allows [legislators] to focus on their public duties by removing the costs and distractions attending lawsuits." E.E.O.C. v. Washington Suburban Sanitary Commission, 631 F.3d 174, 181 (4th Cir. 2011). In the instant case, Plaintiff's allegations against Congressman Jenkins are clearly asserted against Jenkins in his legislative capacity. Plaintiff contends that Congressman Jenkins

was notified of misconduct by the above Defendants and he failed to use his power and authority as a legislator to direct an investigation or implement policies prohibiting the alleged misconduct. Accordingly, the undersigned respectfully recommends that Plaintiff's claim against Congressman Jenkins be dismissed.

Based upon the foregoing, the undersigned finds that Plaintiff has failed to state a plausible claim against the following Defendants: (1) Warden Wilson; (2) Captain Grimes; (3) Former Warden Rickard; (4) Assistant Warden Arviza; (5) Ms. Wickline; (6) Walter Ray; (7) C. Ambler; (8) R. Harvey; (9) S. Trainum; (10) D. Kelley; (11) Dorian Dickerson; (12) M. McCabe; (13) Heather Spradling; (14) Kimberly Bailey; (15) United States of America; (16) Congressman Evan Jenkins; (17) Regional Director J.F. Caraway; and (18) Administrator Ian Connors. Accordingly, the undersigned respectfully recommends that the foregoing Defendants be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint as to Plaintiff's claims against Defendants Wilson, Grimes, Rickard, Arviza, Wickline, Ray, Ambler, Harvey, Trainum, Kelley, Dickerson, McCabe, Spradling, Bailey, the United States of America, Congressman Jenkins, Caraway, and Connors, and **REFER** this matter back to the undersigned for further proceedings on Plaintiff's claims against Defendants Christine Anthony and Dana Renick. [7]

---

[7] By separate Order entered this day, the undersigned has granted Plaintiff's Motion to Proceed Without Prepayment of Fee as to the following claims: (1) Defendant Anthony violated Plaintiff's Eighth Amendment rights by failing to provide adequate care for Plaintiff's mental health needs; (2) Defendant Anthony violated Plaintiff's right to equal protection by

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: April 11, 2018.

Omar J. Aboulhosn
United States Magistrate Judge

---

discriminating against her based upon her race; and (3) Defendant Renick violated Plaintiff's Eighth Amendment rights by failing to provide adequate medical care on or about January 20, 2017.