## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BLUEFIELD DIVISION

CARMEN JOHNSON,                          )
                                         )
                    Plaintiff,           )
v.                                       )          Civil Action No. 1:18-00416
                                         )
DAVID WILSON, *et al.*,                  )
                                         )
                    Defendants.          )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants Anthony and Renick's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 28), filed on August 9, 2018. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by Defendants in moving to dismiss. (Document No. 32.) On December 10, 2018, Plaintiff responded to Defendants' Motion. (Document Nos. 40 and 41.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" should be granted.

## PROCEDURAL BACKGROUND

On March 9, 2018, Plaintiff filed her Application to Proceed Without Prepayment of Fees or Costs and a Complaint for alleged violations of her constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document Nos. 1 and 3.) Plaintiff names the following as

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less

Defendants: (1) David Wilson, Warden; (2) Jerrod Grimes, Captain; (3) Barbara Rickard, Former Warden; (4) Maria Arviza, Assistant Warden; (5) Ms. Wickline, Secretary of Warden; (6) Walter Ray, Case Manager; (7) C. Ambler, Correctional Guard/Counselor; (8) R. Harvey, Case Manager/Unit Discipline Committee (UDC); (9) S. Trainum, Case Manager/Unit Discipline Committee (UDC); (10) D. Kelley, Lieutenant; (11) Dorian Dickerson, Supervisor of Education; (12) M. McCabe, Teacher of Education; (13) Heather Spradling, Teacher of Education; (14) Christine Anthony, Chief Psychologist; (15) Dana Renick, Director of HSU; (16) Kimberly Bailey, Teacher/Lieutenant; (17) United States of America; (18) Evan Jenkins, Congressman; (19) J.F. Caraway, Regional Director; and (20) Ian Connors, Administrator. (Document No. 3, pp. 2 - 4.) In her Complaint, Plaintiff alleges that Defendants have violated her constitutional rights. (Id.) As to Warden Wilson, Plaintiff alleges that he subjected her to verbal abuse in violation of her Eighth Amendment right against cruel and unusual punishment. (Id., p. 7.) Plaintiff alleges that on January 23, 2017, Defendant Wilson "yell[ed] at Plaintiff in front of everyone stating that [she was] a criminal." (Id.) Plaintiff further states that Defendant Wilson stated "a Federal Judge and jury found you guilty on Federal crime and now you are in my Federal Prison doing Federal time, you were a professional out there but to me, you are a junkie or a thief in my prison." (Id.) Plaintiff claims she was "humiliated and walked away crying." (Id.) Next, Plaintiff alleges that Defendant Wilson acted with deliberate indifference because he denied her BP-9s. (Id.) Plaintiff concludes that Defendant Wilson was "grossly negligent in supervising subordinates who committed the wrongful acts." (Id.)

---

stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Concerning Former Warden Rickard, Plaintiff alleges that she acted with deliberate indifference to Plaintiff's need for mental help. (Id.) Plaintiff explains that she sent a "cop out" to Defendant Rickard on May 31, 2016, requesting "mental health treatment for not feeling well." (Id.) Although Plaintiff acknowledges that Defendant Rickard "notified Defendants of mental help needed," Plaintiff claims that Defendant Rickard "failed to act reasonably to get the mental health help Plaintiff's requested." (Id.)

Concerning Assistant Warden Arviza, Plaintiff alleges that Defendant Arviza violated her constitutional rights by denying Plaintiff's BP-9 concerning claims of fraud, abuse, and assault in the Education Department. (Id.) Plaintiff asserts that Defendant Arviza should have started an investigation concerning Plaintiff's claims. (Id.)

As to Defendant Wickline, Plaintiff alleges Defendant Wickline was "grossly negligent and deliberately indifferent by violating Plaintiff's right to due process." (Id., pp. 7 and 10.) Plaintiff alleges that Defendant Wickline mishandled grievances by improperly signing and rejecting BP-9s. (Id.) Plaintiff further alleges that Defendant Wickline failed to conduct investigations before denying BP-9s. (Id.)

Concerning Defendant Ray, Plaintiff claims Defendant Ray acted with deliberate indifference to her mental condition. (Id., p. 12.) Plaintiff claims that she advised Defendant Ray that "she was being called crazy, retarded, and a nigger at the CDR work assignment." (Id.) Despite being advised of the foregoing, Plaintiff complains that Defendant Ray refused to change her work assignment. (Id.) Plaintiff states that after she again requested a change in her work assignment, she was required "to scrub three 10 feet tall freezers outside in 95 degree weather and scrub the lobby walls and floors with a small brush." (Id.) Plaintiff claims that while she was

completing the above work assignment, other inmates "laughed and recited house nigger." (Id.) Based upon the foregoing, Plaintiff concludes that Defendant Ray acted with deliberate indifference to her mental health. (Id.)

As to Defendant Ambler, Plaintiff claims he violated her constitutional rights by failing to provide a "sensitive BP form" and instructions for completing the grievance process. (Id., p. 17.) Plaintiff states that when she requested a "sensitive BP form" from Defendant Ambler, he informed her he had "never heard of a Sensitive BP form and he called someone on the phone, stated Plaintiff's full name, and was instructed to tell [her] there was no sensitive process." (Id.) Plaintiff states that she later "took the program statement instructions to Defendant showing that there is in fact a BP Sensitive for abuse or retaliation by staff." (Id.) Next, Plaintiff alleges that Defendant Ambler refused to move her to a lower bunk during her placement at the "bus stop." (Id.) Plaintiff alleges that there are "fluorescent cancer causing lights" at the "bus stop" and her top bunk placed her only 3 feet away from the lights. (Id.) Plaintiff contends that even though she notified Defendant Ambler that the lights were causing burns to her skin, he refused to move her to a lower bunk. (Id.) Plaintiff complains she was required to endure the hot lights for 32 days. (Id.)

Concerning Defendants Harvey and Trainum, Plaintiff alleges that both violated his constitutional rights during disciplinary proceedings. (Id., p. 20.) Plaintiff contends that Defendants Harvey and Trainum were members of the Unit Discipline Committee. (Id.) Plaintiff states that she fainted 30 minutes prior to her disciplinary hearing and Defendants Harvey and Trainum denied her a continuance of the hearing. (Id.) Plaintiff further argues that Defendant Harvey and Trainum erred in determining that she violated Prohibited Act Codes 306 (Refusal to

4

Program) and 307 (Refusing to Obey an Order). (Id.) Specifically, Plaintiff complains that Defendants Harvey and Trainum failed to give proper weight to her favorable witnesses' statements. (Id.)

As to Defendant Kelley, Plaintiff alleges that he violated her constitutional rights by failing to investigate her claim that she was held "hostage behind a closed blocked door" by three members of the Education Department. (Id., p. 21.) Plaintiff argues that if Defendant Kelley would have properly investigated the Incident Report prepared by Ms. Dickerson of the Education Department, he would have determined that Plaintiff did not disobey a direct order and did not refuse to turn in work assignments. (Id.) Plaintiff argues that her constitutional rights were violated because she was found to have violated Prohibited Act Codes 306 and 307 as charged in the Incident Report. (Id.)

As to Defendants Dickerson, McCabe, and Spadlin, Plaintiff first alleges that Defendants committed fraud by misappropriation of U.S. Government funds. (Id., p. 23.) Plaintiff explains that she was improperly required to attend a G.E.D. program because she already had her high school diploma. (Id.) Plaintiff states that the foregoing "destroyed Plaintiff's reputation within her BOP file." (Id.) Plaintiff further alleges that Defendants McCabe and Spadlin used bullying tactics, intimidation, and threats in attempting to force her to attend the education program. (Id.) Finally, Plaintiff claims that Defendant Spadlin caused her humiliation and mental stress by "trying to force Plaintiff to sign up for a Special Education class." (Id.) As to Defendant Bailey, Plaintiff alleges she failed to intervene when Defendants McCabe and Spradlin "held [her] hostage trying to get [Plaintiff] to sign papers of a class and test [she] never took." (Id., p. 35.)

As to Defendant Anthony, Plaintiff alleges that she violated Plaintiff's constitutional

rights by acting with deliberate indifference to Plaintiff's need for mental health treatment. (Id., p. 32.) Plaintiff alleges that Defendant Anthony continuously denied her mental health treatment, which caused Plaintiff to be placed on suicide watch for five days. (Id.) Plaintiff contends that Defendant Anthony "treated [her] abusively on suicide watch by not letting Plaintiff shower, [using] abusive tones, reminding Plaintiff nothing was going to change for her, and having no consideration or compassion for Plaintiff's mental and emotional state." (Id.) Plaintiff states that Defendant Anthony "constantly humiliated" Plaintiff because she "would not come out of the suicide room." (Id.) Plaintiff complains that Defendant Anthony refused to provide her with water in the "suicide room" and instructed Plaintiff to "leave the suicide room if you are thirsty." (Id.) Plaintiff further alleges that Defendant Anthony discrimination against Plaintiff because of her race. (Id.) Plaintiff claims that Defendant Anthony allowed a white inmate that was on suicide watch to shower and provided water for the inmate to drink. (Id.) Plaintiff complains that she was denied both during her placement in the "suicide room." (Id.)

Concerning Defendant Renick, Plaintiff alleges that Defendant violated her constitutional rights by denying her appropriate medical treatment on January 20, 2017. (Id., p. 33.) Plaintiff notes that Defendant Renick is the Director of HSU Medical and "instructs medical teams about clinic appointments, calls outs, physical exams, chronic care, and the daily running and administration of HSU medical." (Id.) Plaintiff alleges that she had been sick for weeks with an "unusual virus" and the commissary sold out of the medication she was using as treatment. (Id.) Plaintiff explains that she was suffering from extreme dehydration, dizziness, vomiting, and diarrhea. (Id.) Plaintiff complains that when she reported to sick call in the morning hours of January 20, 2017, the nurse inquired as to why Plaintiff did not report to sick call at 6:45 a.m.

6

and refused to treat Plaintiff. (Id.) Plaintiff states that she fainted due to her illness as she was returning to her housing unit. (Id.) Plaintiff acknowledges that she was then taken to medical for treatment. (Id.) Plaintiff, however, claims that she was told "there was nothing wrong with [her] and all [her] test came back normal." (Id.) Plaintiff states that medical staff instructed her to "buy what [she] needed from the commissary." (Id.) Plaintiff claims that she informed medical staff that the commissary was sold out of the necessary medications, but staff disregarded her statement by stating that medical staff had not been notified of such by the commissary. (Id.)

Concerning Defendant Grimes, Plaintiff first alleges that he acted improperly in assisting his sister, Defendant Dickerson, in the preparation of the Incident Report against Plaintiff. (Id., p. 36.) Plaintiff further argues that Defendant Grimes would attempt to intimidate Plaintiff by the following: (1) "walk[ing] around the range at night with a ski mask on and when Defendant would get to the cube Plaintiff was in, Defendant would walk really slow looking up at Plaintiff;" and (2) "Every time Defendant Grimes would see Plaintiff on the compound, he would stare at her until she was out of sight." (Id.) Plaintiff states that Defendant Grimes' actions were "creepy and scary." (Id.) Finally, Plaintiff alleges that Defendant Grimes was a Captain and was "grossly negligent with supervision of his subordinates." (Id.)

Concerning the United States, Plaintiff alleges that the United States is responsible for the violation of her constitutional rights by the foregoing Defendants. (Id., p. 37.) As to Defendant Congressman Jenkins, Plaintiff alleges that he violated her constitutional rights by failing to conduct a proper investigation of her claims of against the above Defendants. (Id.) Plaintiff further indicates that Defendant Congressman Jenkins failed to enact policies that would stop further abuse. (Id.) Thus, Plaintiff concludes that Defendant Congressman Jenkins "knowingly

inflicted more constitutional injuries of Plaintiff" by failing to act on her behalf. (Id.)

As Defendant Caraway, Plaintiff alleges that Defendant Caraway participated directly in the violation of Plaintiff's constitutional rights. (Id., pp. 37 and 42.) Plaintiff explains that as the Regional Director of the Atlantic Regional Appeals, Defendant Caraway signed off on the denial of Plaintiff's BP-10s. (Id.) Plaintiff appears to argue that Defendant Caraway should have conducted an investigation and granted Plaintiff relief. (Id.)

Concerning Defendant Connors, Plaintiff alleges that Defendant Connors violated Plaintiff's constitutional rights by failing to rectify the alleged misconduct by Defendants. (Id., p. 42.) Plaintiff explains that as the Administrator of the National Appeals, Defendant Connors improperly denied her BP-11s without conducting an investigation. (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of her administrative remedies (Document No. 3, pp. 8, 11, 18 – 19, 26 – 28, 31, 40 – 41, 43 – 46);[2] (2) A copy of a Memorandum for All Bureau Inmate regarding Suicide Prevention (Id., p. 13.); (3) A copy of Plaintiff's Affidavit (Id., pp. 14 - 15.); (4) A copy of an article entitled "PTC Institute Shuts Doors Owners Accused of Misusing Funds" (Id., p. 16.); (5) A copy of Plaintiff's Incident Report dated January 18, 2017 (Id., p. 22.); (6) A copy of Plaintiff's Student Transcript and Certificate from Blackstone Career Institute (Id., pp. 29 - 30.); and (7) A copy of correspondences from Congressman Jenkins (Id., pp. 38 – 39.).

By Proposed Findings and Recommendations entered on April 11, 2018, the undersigned recommended Plaintiff's claims against Defendants Wilson, Grimes, Rickard, Arviza, Wickline,

---

[2] The foregoing administrative remedies are unrelated to Plaintiff's claims concerning the alleged denial of adequate mental health care, racial discrimination, and denial of adequate medical care on or about January 20, 2017. (Document No. 3, pp. 8, 11, 18 – 19, 26 – 28, 31, 40 – 41, 43 – 46.)

Ray, Ambler, Harvey, Trainum, Kelley, Dickerson, McCabe, Spradling, Bailey, the United States of America, Congressman Jenkins, Caraway, and Connors be dismissed, and the District Court refer the matter back to the undersigned for further proceedings on Plaintiff's claims against Defendants Christine Anthony and Dana Renick. (Document No. 7.) By separate Order entered the same day, the undersigned granted Plaintiff's Motion to Proceed Without Prepayment of Fee as to the following claims: (1) Defendant Anthony violated Plaintiff's Eighth Amendment rights by failing to provide adequate care for Plaintiff's mental health needs; (2) Defendant Anthony violated Plaintiff's right to equal protection by discriminating against her based upon her race; and (3) Defendant Renick violated Plaintiff's Eighth Amendment rights by failing to provide adequate medical care on or about January 20, 2017. (Document No. 6.)

On August 9, 2018, Defendants Renick and Anthony filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 28 and 29.) Defendants Renick and Anthony argue that Plaintiff's claims should be dismissed based on the following: (1) "Plaintiff failed to exhaust her administrative remedies" (Document No. 29, pp. 17 – 19.); (2) "Plaintiff cannot establish an Eighth Amendment medical claim against Defendants" (Id., pp. 19 – 25.); (3) "The Supreme Court has not established a <u>Bivens</u> implied damages remedy under the Fifth Amendment for alleged racial discrimination" (Id., pp. 25 – 35.); (4) "Even if a racial discrimination claim was allowed under <u>Bivens</u>, Plaintiff's allegation of racial discrimination fails" (Id., pp. 35 – 37.); (5) "Verbal comments or threats do not violate Plaintiff's constitutional rights" (Id., p. 37 – 38.); and (6) "The Defendants are entitled to qualified immunity" (Id., pp. 38 – 40.).

As Exhibits, Defendants Renick and Anthony attach the following: (1) A copy of the

Declaration of Christine Anthony, Ph.D. (Document No. 28-1.); (2) A copy of Plaintiff's "Inmate Quarters History" (Document No. 28-2.); (3) A copy of Plaintiff's psychological records (Document No. 34.); (3) A copy of "Inmate Companions Log" for Suicide Watch (Document No. 34-1.); (4) A copy of the "Staff Suicide Watch Log" (Document No. 34-2.); (5) A copy of the Declaration of Dana Renick (Document No. 28-3.); (6) A copy of Plaintiff's medical records (Document Nos. 28-4 and 28-5.); and (7) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" as of May 9, 2018 (Document No. 28-6.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on August 10, 2018, advising her of the right to file a response to Defendants Renick and Anthony's Motion. (Document No. 32.) On August 30, 2018, Plaintiff filed a Motion for Extension of Time seeking a "151 – 180 day" extension of time in which to file a Response to the Defendants Renick and Anthony's "Motion to Dismiss, or in the Alternative, for Summary Judgment." (Document No. 36.) By Order entered on August 31, 2018, the undersigned granted in part and denied in part Plaintiff's Motion. (Document No. 37.) Specifically, the undersigned granted Plaintiff ninety (90) days extension of time. (Id.) On December 10, 2018, Plaintiff filed her Response in Opposition. (Document No. 40.) As Exhibits, Plaintiff filed the following: (1) Plaintiff's Declaration (Document No. 41, pp. 1 - 13.); (2) A copy of a letter from the Court regarding the payment of Plaintiff's filing fee (Id., p. 14.); (3) A copy of Plaintiff's BOP photo ID (Id., p. 15.); (4) A copy of an article entitled "Convicted NAACP exec Carmen Johnson was allegedly drugged and unable to defend her innocence" (Id., pp. 16 – 17.); (4) A copy of the Declaration of Inmate Teresa Lynn Fletcher (Id., pp. 18 – 19, 46, 63.); (5) A copy of the Declaration of Inmate Lisa Harrison (Id., pp. 20 – 21.); (6) A copy of the Declaration of Inmate

10

Chandra Padgett (<u>Id.</u>, pp. 22 – 23, 48.); (7) A copy of the Declaration of Inmate Yuette Haden (<u>Id.</u>, pp. 24 – 25.); (8) A copy of the Declaration of Inmate Veronica Cunningham (<u>Id.</u>, pp. 26 – 27.); (9) A copy of the Declaration of Inmate Wendy J. Connor (<u>Id.</u>, pp. 28 – 29.); (10) A copy of the Declaration of Inmate Shauna Bear (<u>Id.</u>, pp. 30 – 31.); (11) A copy of the Declaration of Inmate Carolyn Grant (<u>Id.</u>, pp. 32 – 33, 49, 59.); (11) A copy of Plaintiff's statement regarding "Klonopin withdrawals" (<u>Id.</u>, pp. 34 – 35.); (12) A copy of "Special Focus on Risk Factors: Incarceration" (<u>Id.</u>, p. 36.); (13) A copy of a Memorandum For All Bureau Inmates from Director Charles Samuels regarding Suicide Prevention (<u>Id.</u>, p. 37.); (14) A copy of Plaintiff's "Statement of Truth Under Oath" dated October 13, 2016 (<u>Id.</u>, p. 38.); (15) A copy of a page from "Ebony Lady and the Politics of Respectability" (<u>Id.</u>, p. 39.); (16) A copy of a Declaration from Inmate Karen Howard (<u>Id.</u>, p. 40.); (17) A copy of Inmate Kenitha Ferguson's "Inmate Request to Staff" (<u>Id.</u>, p. 41.); (18) A copy of a Declaration from Inmate Kenitha Ferguson (<u>Id.</u>, p. 42.); (19) A copy of Inmate Monika Hill's "Inmate Request to Staff" (<u>Id.</u>, pp. 43 - 44.); (20) A copy of a Declaration from Inmate Christina Carman (<u>Id.</u>, p. 45.); (21) A copy of a Declaration from Inmate Tacarro Morgan (<u>Id.</u>, p. 50.); (22) A copy of a Declaration from Inmate Suzette Allen (<u>Id.</u>, p. 51.); (23) A copy of a Declaration from Inmate Taheeda George (<u>Id.</u>, p. 52.); (24) A copy of a Declaration from Inmate Cynthia B. Holt (<u>Id.</u>, p. 53.); (25) A copy of a Declaration from Inmate Denetria Myles (<u>Id.</u>, p. 54.); (26) A copy of a Declaration from Inmate Joyce Livesay (<u>Id.</u>, p. 55.); (27) A copy of a Declaration from Inmate Tiffany Pryer (<u>Id.</u>, pp. 56.); (28) A copy of a Declaration from Inmate Patsy Adams (<u>Id.</u>, pp. 57, 64 - 65.); (29) A copy of a Declaration from Inmate Veronica C. Smith (<u>Id.</u>, p. 58.); (30) A copy of a Declaration from Inmate Jennifer Ann Champagne (<u>Id.</u>, p. 60.); (31) A copy of a Declaration from Inmate Christina Carman (<u>Id.</u>, p. 61.);

(32) A copy of a Declaration from Inmate Takisha Brown Dorey (Id., p. 62.); and (33) A copy of a "Petition/Call for Immediate Action From Inmates" as submitted to the BOP and signed by multiple inmates (Id., pp. 66 – 72.).

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Although the Court will view all underlying facts and inference in a light most favorable to the nonmoving party, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. Anderson, 477 U.S. at 252, 106 S.Ct. at 2505. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Id., 447 U.S. at 247-48, 106 S.Ct. at 2505. If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative

13

process may not afford them the relief they might obtain through civil proceedings.[3] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. <u>Goist v. U.S. Bureau of Prisons</u>, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), <u>aff'd</u>, 54 Fed.Appx. 159 (4th Cir. 2003), <u>cert. denied</u>, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." <u>Ross v. Blake</u>, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. <u>Id.</u> at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In <u>Ross v. Blake</u>, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement,

undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra;   Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which she did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that

the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d).

The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants Renick and Anthony argue that Plaintiff failed to exhaust her administrative remedies. (Document No. 29, pp. 17 - 19.) Specifically, Defendants Renick and Anthony contend that Plaintiff "has not filed any remedies related to the only remaining claims in this matter." (Id., p. 19.) Defendants Renick and Anthony state that Plaintiff "has not filed any administrative remedies regarding her mental health treatment, suicide watch or any racial discrimination related to suicide watch, or claims related to a January 20, 2017 medical encounter." (Id.) In support, Defendants Renick and Anthony attach a copy of Plaintiff's "Administrative Remedy Generalized Retrieval" as of May 9, 2018. (Document No. 28-6.).

18

Plaintiff fails to address Defendants Renick and Anthony's above argument in her Response in Opposition. (Document Nos. 40 and 41.) In her Complaint, Plaintiff indicated that she failed to exhaust her administrative remedies because BOP staff failed to investigate her complaints and failed to grant her relief when she filed prior grievances. (Document No. 3, pp. 7, 10, 17, 42.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust her administrative remedies pursuant to the PLRA. Having examined the record, the Court finds that the administrative remedies filed by Plaintiff relate to claims concerning Plaintiff's request to be exempt from the GED program, challenge to an incident report, request for medical records, request for longer RRC placement, and request for accommodation of her religious rituals. (Document No. 3, pp. 8, 11, 18 – 19, 26 – 28, 31, 40 – 41, 43 – 46 and Document No. 28-6.) Plaintiff fails to produce any documents indicating that she exhausted her Bivens claims concerning the alleged denial of adequate mental health care, racial discrimination, and denial of adequate medical care on or about January 20, 2017. Additionally, there is no indication or allegation by Plaintiff that the administrative remedy process was unavailable. Plaintiff was clearly able to file administrative remedies concerning other claims. (Document No. 3, pp. 8, 11, 18 – 19, 26 – 28, 31, 40 – 41, 43 – 46 and Document No. 28-6.) To the extent Plaintiff is arguing that she should be excused from exhaustion due to the futility of filing an administrative remedy, her argument is without merit. A plaintiff may not avoid the exhaustion requirement based upon plaintiff's mere speculation or anticipation that the administrative remedy process concerning the instant claims will be unsuccessful because plaintiff's past administrative remedies concerning unrelated claims were unsuccessful. The United States Supreme Court has stated that it "will not read futility or other exceptions into statutory

exhaustion requirements. . . ."[4] <u>Booth v. Churner</u>, 532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149

L.Ed.2d 958 (2001); <u>also see</u> <u>Massey</u>, 196 F.3d at 727("[T]here is no futility exception to the

PLRA's exhaustion requirement."); <u>Smith v. Boyd</u>, 2008 WL 2763841, * 1 (D.S.C. July 11,

2008)("This court cannot waive the exhaustion requirement, which was specifically mandated by

Congress, based on Plaintiff's ignorance of the requirement or any perceived futility or

inadequacy with the administrative grievance process."); <u>Jacocks v. Hedrick</u>, 2006 WL 2850639,

* 5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his

eye were not special circumstances that would excuse his failure to exhaust where he had filed

prior grievances complaining of other matters). Based on the foregoing, the undersigned

recommends that Plaintiff's <u>Bivens</u> claim be dismissed in view of her failure to exhaust the

administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. §

542.10, *et seq.*, prior to filing her Complaint. The undersigned finds it unnecessary to consider

the other reasons that the Defendants have submitted for dismissal.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court

confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED**

---

[4] Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(*citing Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark." *Wright v. Warden*, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy).

that the District Court **GRANT** Defendants Anthony and Renick's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 28) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: December 12, 2018.

Omar J. Aboulhosn
United States Magistrate Judge