IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

CARMEN JOHNSON,

    Plaintiff,

v.                                CIVIL ACTION NO. 1:18-00416

DAVID WILSON, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

By Standing Order, this action was referred to United
States Magistrate Judge Omar J. Aboulhosn for submission of
findings and recommendations regarding disposition pursuant to
28 U.S.C. § 636(b)(1)(B). Magistrate Judge Aboulhosn submitted
to the court his Findings and Recommendation ("PF&R") on April
11, 2018 (ECF No. 7), in which he recommended that the district
court dismiss plaintiff's complaint as to plaintiff's claims
against defendants Wilson, Grimes, Rickard, Arviza, Wickline,
Ray, Ambler, Harvey, Trainum, Kelley, Dickerson, McCabe,
Spradling, Bailey, the United States of America, Congressman
Jenkins, Caraway, and Connors, and refer this matter back to the
magistrate judge for further proceedings on plaintiff's claims
against defendants Christine Anthony and Dana Renick.

In accordance with the provisions of 28 U.S.C. § 636(b),
the parties were allotted fourteen days, plus three mailing
days, in which to file any objections to Magistrate Judge

Aboulhosn's Findings and Recommendation.  The failure of any party to file such objections constitutes a waiver of such party's right to a de novo review by this court.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989).

The defendant submitted multiple objections to Magistrate Judge Aboulhosn's Findings and Recommendation.  See ECF No. 23.

## I. Background

### A. Instant Complaint

On March 9, 2018, the plaintiff filed her complaint for alleged violations of her constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 24 L.Ed.2d 619 (1971).  ECF No.3.

### B. PF&R and Plaintiff's Objections

In his PF&R, filed on April 11, 2018, the magistrate judge proposed that the district court dismiss plaintiff's complaint as to plaintiff's claims against defendant's Wilson, Grimes, Rickard, Arviza, Wickline, Ray, Ambler, Harvey, Trainum, Kelley, Dickerson, McCabe, Spradling, Bailey, the United States of America, Congressman Jenkins, Caraway, and Connors, and refer the matter back to the magistrate judge for further proceedings on plaintiff's claims against defendant's Christine Anthony and Dana Renick.  ECF No. 7.  The plaintiff makes objections to this proposal of dismissing these plaintiffs, claiming that they

2

violated her constitutional rights regarding her administrative
remedy process, her conditions of confinement, her alleged
exposure to verbal abuse and harassment and continuous harsh
lighting, her liberty interests as they relate to attending the
literacy program, and her belief that supervisor liability
should be imposed.  See ECF No. 23.[1]

## II.  Discussion

### A. Improper Defendant:

Magistrate Judge Aboulhosn found that Bivens claims
are not actionable against the United States, and thus, the
United States must be dismissed from this action.  (ECF NO.
7) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994); Berger
v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reingold v.
Evers, 187 F.3d 348, 355 n.7 (4th Cir. 1999).  The
plaintiff objected to the magistrate judge's finding by
stating that,

> [p]laintiff is seeking relief for violations by: a.
> Constitutional rights, Civil rights, Irreparable
> Doctrine for Harm, Americans with Disability Act,
> Religious Land Use and Institutional Person's Act,
> Religious Freedom Restoration Act, Civil Rights of
> Institutionalized Person's Act, Federal Tort, State

---

[1] By Order of the court, the plaintiff's request for
appointment of counsel (ECF NO. 8) was denied.  ECF No. 45.
Thus, the defendant's request for counsel in her objection
will not be discussed.  Therefore, consistent with the
court's previous Order, Plaintiff's second Motion for
Request for Court Appointed Attorney (ECF No. 23) is also
**DENIED**.

> Torts, BIVENS, Section 504 Rehabilitation Act,
> American Federal Disability Statutes. Plaintiff is
> asking for a Judicial review and appointed counsel to
> assist with complexities and different violations in
> this case.

(ECF No. 23, p. 2).

The court finds that the magistrate judge correctly concluded that well-settled law establishes that, based upon sovereign immunity, the United States of America cannot be a defendant, unless sovereign immunity is waived.

## B. Administrative Remedy Process:

The magistrate judge construed the plaintiff's complaint as alleging that defendant's Rickard, Arviza, Wickline, Ambler, Caraway, and Connors violated the plaintiff's constitutional rights by rendering the BOP's Administrative Remedy process futile. (ECF NO. 7). The magistrate judge recommended that this court dismiss the plaintiff's claim as futile. Id. The magistrate judge, citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir.), cert denied, 514 U.S. 1022, 115 S. Ct. 1371, 131 L.Ed.2d 227 (1994), and Booker v. South Carolina Dept. of Corrections, 855 F.3d 533 (4th Cir. 2017), reasoned that the plaintiff's claim was futile because federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. (ECF No. 7). The magistrate judge explained that although an inmate does not have a constitutional entitlement to or a due process interest in accessing a grievance procedure, an

inmate does have a First Amendment right to be free from retaliation when they do file a grievance.  Booker, 855 F.3d at 542; Martin v. Duffy, 858 F.3d 239 (4th Cir. June 1, 2017). The magistrate judge explains, however, that the plaintiff does not allege the defendants retaliated against plaintiff for filing administrative remedies; and therefore, the plaintiff's claims for constitutional violations are not actionable.  Id.

    In her objections, the plaintiff argues that her complaints relating to her incarceration were "pushed under the rug" and turned a "blind eye" to.  (ECF No. 23, p. 2).  The plaintiff states in her objections that "[b]ased on the Constitution a person has a right to report an [sic] government entity to another free from abuse and retaliation."  Id.  She argues that she "was deprived of basic human needs an [sic] exposed to series [sic] harm and these Defendants listed knew Plaintiff was being harmed and did not respond reasonably or report the abuse."  Id.

    While the plaintiff states that a person has a right to report a government entity and be free from retaliation, she does not allege she has been retaliated against, nor does she explain any facts or circumstances where the court could find she was retaliated against.  See ECF No. 23.  Therefore, the court adopts the magistrate judge's proposed finding that the

plaintiff's claim as to the alleged insufficiency of the

administrative remedy process is futile.  See ECF No. 7.

C. Conditions of Confinement:

In her objections, the plaintiff argues that her Eighth

Amendment constitutional rights were violated.  (ECF No. 23, p

3).  Specifically, the plaintiff contends the following

occurrences constitute cruel and unusual punishment by the

defendants in violation of the Eight Amendment:

> (a) "denial of medical care and mental health care";
> (b) "denial of sanitation, shower and clean water to
> drink and beg for sanitary napkins on suicide watch";
> (c) "plaintiff was dragged on floor by unknown nurse
> Jan 2017"; (d) "personal safety, made to scrub outside
> freezers 98 degrees being called NIGGER by guards
> May/June 2016"; (e) "held hostage in a back room with
> 3 staff being forced to sign papers Oct 2016"; and (f)
> "personal safety, made to sleep under T5 cancer
> causing hot lights at Bus Stop for 32 days, burnt
> Plaintiff skin."

(ECF No. 23, p. 3).

Prison officials have a duty under the Eight Amendment to

provide prisoners with adequate food, shelter, clothing, and

medical care.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).

Conditions which "deprive the inmates of the minimal civilized

measure of life's necessities" may amount to cruel and unusual

punishment.  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

However, conditions which are merely restrictive or even harsh,

"are part of the penalty that criminal offenders pay for their

offenses against society."  Id.  In order to establish the

6

imposition of cruel and unusual punishment, a prisoner must prove that deprivation of a basic human need was objectively sufficiently serious and that subjectively the officials acted with a sufficiently culpable state of mind. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); Jehovah v. Clarke, 798 F.3d 169, 181 (4th Cir. 2015) (citing De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003)).

a. Verbal abuse and Harassment

The plaintiff contends that defendants Wilson, Dickerson, McCabe, and Spadlin violated her constitutional rights by subjecting her to verbal abuse or harassment. (ECF No. 3, pp 7, 23).

The magistrate judge determined that the plaintiff's claims of verbal abuse/harassment and failure to protect from verbal abuse/harassment fail to state a cognizable claim under the Eight Amendment for which relief can be granted. (ECF No. 7, p. 16).

The court agrees with the magistrate judge and finds that the plaintiffs' argument that being required to scrub freezers outside in warm weather, while being called names does not satisfy the threshold requirement for establishing cruel and unusual punishment. See ECF No. 23, p.3. While the conditions could be categorized as "harsh," as previously stated, the eight amendment does not protect against harsh treatment. Rhodes, 452

7

U.S. at 347 (explaining that conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society). Thus, the court does not find this circumstance rose to the level of depriving the plaintiff of a basic human need that was objectively sufficiently serious, nor that, subjectively, the officials acted with a sufficiently culpable state of mind. <u>See Shakka</u>, 71 F.3d at 166.

Regarding defendant Ray, in the plaintiff's objections to the PF&R, under the heading "Verbal Abuse and Harassment Objections," the plaintiff states that she never argued that defendant Ray did not protect her from verbal abuse from inmates but, rather, makes the following allegation:

> Plaintiff accused Defendant Ray of verbal abuse and the start of retaliation and abuse with other staff on Plaintiff because he ordered the hit. As the Case Manager the suicide letter from the BOP state [sic] if you are having mental health issues go to staff to seek help. Plaintiff asked Defendant for mental health treatment and help and was refused. Defendant Ray met Plaintiff 4 days after she arrived at Alderson and he knew she had Mental Health disability and to make matter more sufficiently articulated, Plaintiff's attorney mailed, faxed and called Defendant Ray to advise him of the Plaintiff's Mental Health.

(ECF NO. 23, p. 4). Furthermore, the plaintiff contends that defendant Ray "knew there was something mentally wrong with her" because he allegedly asked her is "she was crazy or retarded." (ECF No. 23, p. 5).

8

To state a claim for denial of medical care or inadequate medical treatment under the Eight Amendment, an inmate must allege facts sufficient to demonstrate deliberate indifference to a serious need.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); see also DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, prison staff was aware of the need for medical attention but failed either to provide it or ensure it was available.  Farmer v. Brennan, 511 U.S. 825, 834-7 (1994); Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209-10 (4th Cir. 2017); King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).[2]  "'A serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Heyer, 849 F.3d at 210 (quoting Iko, 553 F.3d at 241).  The subjective component has two slightly different aspects: (1) the official must have "actual knowledge of the risk of harm to the inmate," and (2) the official must have "recognized that his actions were

---

[2] There is no essential distinction between the right to medical care for a physical ailment and the right to psychiatric or psychological care for mental ailments.  See Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir. 1977).

insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Iko, 535 F.3d at 241 (4th Cir. 2008) (citations omitted)

Here, the plaintiff has failed to demonstrate sufficient facts that the objective and subjective standards of denying medical treatment were present. Specifically, the plaintiff's allegation that defendant "knew there was something mentally wrong with her" based upon the fact that he allegedly called her "stupid" and "retarded," does not rise to the level of demonstrating that the plaintiff had a medical need that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Heyer, 849 F.3d at 210 (internal quotations omitted). Furthermore, the plaintiff never alleged that she has been diagnosed by a physician for a mental disorder needing medical treatment.

Regarding defendant Bailey, the plaintiff objects to the magistrate judge's PF&R recommendation to dismiss Bailey. (ECF No. 23, p. 5). The plaintiff continues to argue that defendant Bailey's requiring of her to make a written statement against her wishes, and allegedly untruthfully, subjected her to verbal abuse and humiliation and amounts to cruel and unusual punishment in violation of the Eight Amendment.

The court finds that being required to make a written statement against her will, without any application of physical force or use of serious threats, does not demonstrate that the plaintiff was deprived of a basic human need objectively sufficiently serious and that subjectively the officials acted with a sufficiently culpable state of mind.  See Shakka, 71 F.3d at 166 (4th Cir. 1995).  Therefore, the court adopts the magistrate judge's findings on this issue.

### b. Continuous Lighting

The plaintiff objects to the magistrate judges finding that defendant Ambler should be dismissed from the case.  (ECF No. 23, p. 5).  Defendant Ambler is allegedly who made the decision for the plaintiff to sleep in an upper bunk at the "bus stop" for 32 days.  (See ECF No. 3, p. 17).  The plaintiff claims that the lighting was very harsh on her skin, and she had to wrap towels and shirts over her head.  (ECF No. 23, p.5).  The plaintiff claims she lost sleep, was particularly uncomfortable because she suffers from PTSD, and had burns from the light.  Id.  When she went to a nurse, the nurse recommended that she purchase normal lotion and to apply it to her skin.  Id.

As explained by the magistrate judge in his PF&R, "[a]lthough sleep constitutes a basic human need, plaintiff fails to demonstrate an "extreme deprivation."  (ECF NO. 7, p.

16), citing <u>Murry v. Edwards County Sheriff's Dep't.</u>, 248 Fed. Appx. 993, 998-99 (10th Cir. Oct. 1, 2007).  At worst, the court finds that the lights caused the plaintiff to be uncomfortable while sleeping and perhaps caused her skin to be drier.  This finding, however, does not support the plaintiff's argument that she was subject the cruel and unusual punishment by being required to sleep in close proximity to a light fixture. Therefore, the court agrees with the Magistrate Judge's finding that plaintiff's claim based upon the continuous lighting at the "bus stop" be dismissed.  (<u>See</u> ECF No. 7, p. 20).

 D. <u>Challenge Concerning Plaintiff's Disciplinary Hearing:</u>

  In his PF&R, the magistrate judge made the following findings regarding the plaintiff's claim: (1) the plaintiff alleges that she was denied due process in connection with her prison disciplinary hearing; (2) her contentions imply the invalidity of the disciplinary hearings and the review and appeal process; (3) there has been no invalidation of the disciplinary hearing; and (4) her claim is therefore barred. (ECF No. 7, p. 22).

  As pointed out by the magistrate judge, the Supreme Court established the following test to determine whether a prisoner's claim for violation of due process in the context of a criminal proceeding is cognizable under 42 U.S.C. § 1983:

> In order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence
> has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. §  2254.  A claim for damages
> bearing that relationship to a conviction or sentence
> that has not been so invalidated is not cognizable
> under § 1983.  Thus, when a state prisoner seeks
> damages in a § 1983 suit, the district court must
> consider whether a judgment in favor of the plaintiff
> would necessarily imply that invalidity of his
> conviction or sentence; if it would, the complaint
> must be dismissed unless the plaintiff can demonstrate
> that the conviction or sentence has already been
> invalidated.  But if the district court determines
> that the plaintiff's action, even if successful, will
> not demonstrate the invalidity of any outstanding
> criminal judgment against the plaintiff, the action
> should be allowed to proceed, in the absence of some
> other bar to the suit.

Heck, 512 U.S. at 487; see also Poston v. Shappert, 222 Fed.

Appx. 301 (4th Cir. 2007) (applying Heck rationale to bar claims

for damages under Section 1983 and Bivens); Messer v. Kelly, 129

F.3d 1259 (4th Cir. 1997) (stating that the rationale in Heck

applies in Bivens actions).

In plaintiff's objections, she continues to maintain that

her due process rights were violated with her disciplinary

hearing.  (ECF no. 23, p. 6).  In support of her argument that

she was denied due process, the plaintiff states that "[c]ourts

have found due process violations when prisoners are disciplined

without the chance to get witness testimony, having a hear

13

[sic], or present evidence. Courts have also found due process violations when punishment is based on vague claims." Id.

The court finds that the plaintiff's objection that she was denied the ability to present witness testimony or other forms of evidence fails. The Supreme Court has held that prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of rights due in a criminal proceeding do not apply. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, in accordance with the above-cited case law, the court adopts the magistrate judges finding on the issue that, regarding the plaintiff's claim: (1) the plaintiff alleges that she was denied due process in connection with her prison disciplinary hearing; (2) her contentions imply the invalidity of the disciplinary hearings and the review and appeal process; (3) there has been no invalidation of the disciplinary hearing; and thus, (4) her claim is barred.

E. No Constitutional Violation as to the Literacy Program:

The plaintiff alleges that defendants Spradling, Dickerson, and McCade improperly required her to attend a G.E.D. program against her will, thereby violating her liberty interests. (ECF No. 23, p.6). Specifically, the plaintiff argues that she should have been placed on a waiting list for the class, and not actually placed in the class because at the time, there was a waiting list for the class. Id. She states

14

that she did not want to be placed in the class at the time she was because she needed time to recover from her mental health ailments and she wanted to obtain her G.E.D. diploma from the Education archives in Washington, D.C.  Id.  The plaintiff contends that the above-named defendants wanted her in the class so they could fraudulently obtain funding.  Id.  The plaintiff alleges that being placed in the course, when she qualified for the waiting list, was a form of punishment based upon racial discrimination and her mental disabilities.  Id.

As explained in the magistrate judge's PF&R, the Attorney General requires the BOP to conduct adult literacy programs in federal prisons.  See 18 U.S.C. § 3624(f); 28 C.F.R. §§ 544.70 – 75.  Section 554.70 requires that inmates attend adult literacy programs for a minimum of 240 hours or be subject to disciplinary sanctions.  28 C.F.R. § 544.75.

As stated by the magistrate judge, the Fifth Amendment protects against deprivations of life, liberty, or property by the federal government.  U.S. Const. amdn. V.  Prisoners have a liberty interest in avoiding confine conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  In order to prevail on a due process claim, a plaintiff must show that the government has interfered with a protected liberty or property interest and that the

procedures that led to the deprivation were constitutionally sufficient. Thus, the plaintiff must first demonstrate that she had a protected liberty interest. The fact of conviction and imprisonment implies the inmate's transfer of her liberty to prison officials who in their broad discretion, administer her sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). However, inmates do not have a constitutionally protected right to "remain uneducated." Rutherford v. Hutto, 377 F. Supp. 268, 272 (E.D. Ark. June 18, 1974) (stating that "[t]he 'constitutional right to be ignorant' or 'the constitutional right to remain uneducated' which petitioner postulates, simply does not exist.").

Here, the plaintiff does not have a constitutionally protected liberty interest in not attending the literacy program. Thus, the court cannot conclude that the plaintiff's due process rights have been violated by depriving her of her alleged liberty interest. Furthermore, the plaintiff does not qualify under 28 C.F.R. § 544.71 to be "temporarily unable to participate in the literacy program," because the staff did not determine that the plaintiff was still on a waiting list for initial placement. Therefore, the court agrees with the magistrate judge's finding that plaintiff's allegations cannot be construed to implicate a constitutional right for the violation of which relief can be granted under Bivens. Thus,

16

the court dismisses the plaintiff's claim based upon the above allegations.

## F. <u>Supervisory Liability</u>

The magistrate judge found that the plaintiff's allegation against defendants Wilson and Grimes are improperly based upon a theory of respondeat superior.  (ECF No. 7, p. 27). Furthermore, the magistrate judge found that the plaintiff failed to specify any action taken by defendants Wilson, Grimes, Rickard, Arviza, Wickline, Caraway, and Connors that violated plaintiff's constitutional rights.  <u>Id.</u> at p. 28.  Thus, the magistrate judge found that the plaintiff improperly raised her claim against the foregoing defendants under the doctrine of respondeat superior and found her claims regarding supervisory liability should be dismissed.  <u>Id.</u>

In her objections, the plaintiff contends that:

> Defendant Wilson and Defendant Grimms are liable for acts of their subordinates and their owns actions which are supervisory indifference or tacit authorization of subordinates misconduct is a causative fact in the constitutional injuries they inflicted on Plaintiff whom was in their care.  This conduct directly caused the deprivation was [sic] done to effectuate an official policy of custom which is liable.  Defendant Grimms and Defendant Wilson was told by Plaintiff of the abuse, fraud, retaliation and mental health difficulties plaintiff was experiencing and they both violated Plaintiff's rights and protection of the law because it was the Job of the Warden and the Captain to investigate this or report it to an outside agency but they covered it up and let the abuse and fraud continue.  This behavior on both Defendants was wanton, grossly negligent, obdurately

and deliberately indifference that created on going
pervasive risk and harm which will affect her the rest
of her life by their staff.

ECF No. 23, p. 7.

"Government officials may not be held liable for the
unconstitutional conduct of their subordinates under a theory of
respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676
(2009) ("Because liability is inapplicable to Bivens and § 1983
suits, a plaintiff must plead that each Government-official
defendant, through the official's own individual actions, has
violated the Constitution.").  Liability, however, may attach to
a supervisory official if "conduct directly causing the
deprivation was done to effectuate an official policy or custom
for which [the official] could be liable." Fisher v. Washington
Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir.
1982), abrogated on other grounds by County of Riverside v.
McLaughlin, 500 U.S. 44, (1991).  Furthermore, supervisory
officials may be liable for acts of their subordinates where
"supervisory indifference or tacit authorization of
subordinates' misconduct may be a causative fact in the
constitutional injuries they inflict on those committed to their
care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984).
Thus, a plaintiff must show "a pervasive and unreasonable risk
of harm from some specified source and that the supervisor's
corrective inaction amounts to deliberate indifference or 'tacit

18

authorization of the offensive [practices]." Id. A
supervisor's mere knowledge of a subordinate's unconstitutional
conduct is not enough. Rather, Bivens, liability may be imposed
upon a supervisor only on the basis of purposeful "violations of
his or her supervisory responsibilities." Ashcroft, 556 U.S. at
676. Therefore, the injury for the court is whether the
defendant individually "acted wantonly, obdurately, or with
deliberate indifference to the pervasive risk of harm." Moore
v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Here, the court finds that the plaintiff's objections do
not shed any additional light on how the plaintiff was exposed
to "a pervasive and unreasonable risk of harm from some
specified sourced and that the supervisor's corrective inaction
amounts to deliberate indifference and tacit authorization of
the offensive [practices]." See Slakan v. Porter, 737 F.2d at
373. Thus, the court agrees with the magistrate judge's finding
that because the plaintiff has failed to specify any violation
of her constitutional rights by Wilson, Grimes, Rickard, Arviza,
Wickline, Caraway, and Connors, the claims against Wilson and
Grimes under the theory of respondeat superior are unsupported
and should be dismissed.

### G. Legislative Immunity

In the plaintiff's objections, she wrote that "Plaintiff
Johnson understand that Congressman Jenkins have 'Absolute or

Qualified Immunity.' With that said agrees and understand he is to be dismissed from this case." ECF No. 23, p. 7. Therefore, the plaintiff has raised no objection to dismissing Congressman Jenkins from the matter.

### III. Conclusion

Upon conducting a de novo review of the record, for the forgoing reasons, the court hereby **DISMISSES** plaintiff's complaint as to the plaintiff's claims against defendants Wilson, Grimes, Rickard, Arviza, Wickline, Ray, Ambler, Harvey, Trainum, Kelley, Dickerson, McCabe, Spradling, Bailey, the United States of America, Congressman Jenkins, Caraway, and Connors, and refers this matter back to the magistrate judge for further proceedings on plaintiff's claims against defendants Christine Anthony and Dana Renick; and **DENIES** Plaintiff's Motion for Request for Court Appointed Attorney (ECF No. 23).

The Clerk is directed to send copies of this Order to plaintiff pro se and to all counsel of record.

IT IS SO ORDERED this 29th day of March, 2019.

**ENTER:**

David A. Faber
Senior United States District Judge